# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE PERROT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 18-CV-10147 |
| ) | |
| THOMAS KELLY, et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT FRANCIS BLOOM'S
## MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

Susanne G. Reardon (BBO No. 561669)
Assistant Attorney General
Appeals Division
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2824
(617) 573-5358 (fax)
Susanne.Reardon@state.ma.us

Dated: April 13, 2018

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 3

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 3

ARGUMENT ..................................................................................................................... 5

I.     The Standard of Review ................................................................................. 5

II.    Defendant Bloom is Immune from Suit. ........................................................ 7

      A.     Absolute Prosecutorial Immunity Bars All Claims Against Defendant Bloom, Who Acted in His Capacity as an Advocate for the Commonwealth. .................... 7

      B.     Qualified Immunity Bars Plaintiff's Claims Against Defendant Bloom Because He Did Not Violate Plaintiff's Rights. ................................. 13

III.   Plaintiff's Claim against Defendant Bloom Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted. .......................................... 17

CONCLUSION ................................................................................................................ 18

CERTIFICATE OF SERVICE ............................................................................................ 18

## INTRODUCTION

Defendant Francis Bloom moves to dismiss the above-entitled action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

George Perrot ("Plaintiff") alleges a cause of action arising under 42 U.S.C. § 1983 against Thomas Kelly, Thomas Jarvis, Richard Kane, Charles Arpin, John Scanlon, David Louden, Thomas Kennedy, Paul Lance, Chief Ernest Stelzer, Marianne Popko, Paul Glantz, Ronald St. Germain, Andrew Canevari, Cheryl Clapprood, Captain John Brown, and unknown officers of the Springfield Police Department (Springfield defendants), and against Hampden County Assistant District Attorney Francis Bloom ("Defendant Bloom"), and a cause of action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against Wayne Oakes, William Eubanks, and unknown agents of the Federal Bureau of Investigation (FBI defendants). Plaintiff alleges that Defendant Bloom, who represented the Commonwealth in state criminal proceedings against Plaintiff from late 1985 through December 1987, violated his rights under the Fifth and Fourteenth Amendments by coercing him into confessing and fabricating evidence against him, and by failing to prevent the other defendants from doing the same. *See* Compl. ¶ 131.

For the reasons articulated below, Defendant Bloom is immune from suit. Additionally, Plaintiff has failed to state a viable claim that would entitle him to relief even if all of his well-pleaded factual allegations are taken as true.

## FACTUAL AND PROCEDURAL BACKGROUND

The well-pleaded facts in the complaint are accepted as true for purposes of this motion to dismiss. *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999).

On November 30, 1985, someone broke into a house in Springfield, Massachusetts and sexually assaulted the owner. Compl. ¶ 28. On December 7, 1985, Plaintiff broke into a house in

Springfield but ran away when he realized the owners were home. Compl. ¶ 35. He then snatched a purse from someone in front of a fast-food restaurant. *Id.* He was placed under arrest the same day. Compl. ¶ 37. During his interrogation, Plaintiff signed a statement admitting to breaking into the victim's house. Compl. ¶ 50. He was subsequently indicted and, on December 14, 1987, convicted of armed robbery, aggravated rape, burglary and assault in a dwelling, burglary, and indecent assault and battery. *Commonwealth v. Perrot*, 38 Mass. App. Ct. 478, 478, 648 N.E.2d 1315, 1315 (1995). On appeal, Plaintiff's convictions were reversed because evidence obtained in violation of Plaintiff's right to counsel had been introduced at trial. *Commonwealth v. Perrot*, 407 Mass. 539, 554 N.E.2d 1205 (1990). A new jury trial—in which Defendant Bloom did not participate—resulted in Plaintiff's convictions of the same offenses. *Perrot*, 38 Mass. App. Ct. at 478, 648 N.E.2d at 1315. The Massachusetts Court of Appeals affirmed on May 3, 1995. *Id.* at 482, 648 N.E.2d at 1317.

Plaintiff moved for a new trial on April 25, 2000. *Commonwealth v. Perrot*, Nos. 132632, HDCR85-5415, HDCR85-5416, HDCR85-5418, HDCR85-5420, HDCR85-5425, 2016 Mass. Super. LEXIS 3, at *1–2 (Jan. 26, 2016). His motion was allowed by the trial judge on September 11, 2001. *Id.* On May 12, 2003, the Court of Appeals reversed the order granting a new trial. *Commonwealth v. Perrot*, 58 Mass. App. Ct. 1102, 787 N.E.2d 1154 (2003) 805 N.E.2d 44 (2004). Plaintiff filed two further motions for new trial, both dismissed for lack of prosecution. *Perrot*, Nos. 132632, HDCR85-5415, HDCR85-5416, HDCR85-5418, HDCR85-5420, HDCR85-5425, 2016 Mass. Super. LEXIS 3, at *1–2. In response to a 2009 National Academy of Science (NAS) report about the limitations of hair microscopy, the FBI in 2012 determined that hair analysis evidence introduced at Plaintiff's 1992 trial "exceeded the foundational science." *Id.* at *2, 104. Plaintiff filed his fourth motion for new trial on July 8, 2014. The motion was granted in relevant part on January 26, 2016. *Id.* at *126. The motion

4

judge's decision rested on a recognition that without the hair microscopy evidence the Commonwealth's case was "open to several lines of attack conducive to the creation of reasonable doubt." *Id.* at 118. The grant of post-conviction relief became final on October 11, 2017. Compl. ¶ 9. The charges against Plaintiff were dismissed on October 18, 2017. *Id.*

On January 25, 2018, Plaintiff filed his complaint in this action.

## **ARGUMENT**

### I.     **The Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). The burden is on the plaintiff to establish jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995). Challenges to the court's subject matter jurisdiction ordinarily should be addressed prior to determining whether the complaint states a claim upon which relief can be granted. *Davila v. Corporacion De Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 14 (1st Cir. 2007); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93 (1998). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." *Deniz v. Municipality of Guaynabo*, 285 F.3d 142, 150 (1st Cir. 2002); *see Davila*, 498 F.3d at 14; *Steel Co.*, 523 U.S. at 94–95. Such challenges include an assertion of immunity which requires dismissal of the action, which is properly analyzed under Rule 12(b)(1). *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 362 (1st Cir. 2001).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In reviewing a 12(b)(6) motion, the Court should look to the pleading requirements of Rule 8(a), which states that a complaint shall contain "a short and plain statement of the grounds for the court's

jurisdiction." Fed. R. Civ. P. 8(a)(1). Additionally the complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations are not required,' but the Rule does call for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–70 (2007)).

In evaluating whether a complaint has attained facial plausibility, the Court must perform a two-step analysis: it must (1) "distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)," and (2) "determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." *Saldivar v. Racine*, 818 F.3d 14, 18 (1st Cir. 2016) (citing *Cardigan Mtn. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015)). The Court need not accept as true a conclusory legal allegation "couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

When deciding a motion under Rules 12(b)(1) and 12(b)(6), the Court is to construe the complaint liberally, treat well-pleaded facts as true, and give "the plaintiff the benefit of all reasonable inferences." *Murphy*, 45 F.3d at 522; *see Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015). However, a plaintiff may not rely on "unsupported conclusions or interpretations of law." *Murphy*, 45 F.3d at 522 (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993)). "Subjective characterizations or conclusory descriptions of a general scenario" will not defeat a motion to dismiss. *Id.* (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992)).

## II. Defendant Bloom is Immune from Suit.

### A. Absolute Prosecutorial Immunity Bars All Claims Against Defendant Bloom, Who Acted in His Capacity as an Advocate for the Commonwealth.

Plaintiff asserts his claim against Defendant Bloom in his individual, not his official, capacity. Compl. ¶ 20. He further contends that Defendant Bloom acted in an investigatory capacity. Compl. ¶¶ 18, 85, 131. Plaintiff's repeated conclusory statements to that effect notwithstanding, Defendant Bloom is protected by absolute prosecutorial immunity and the claims against him must be dismissed.

In initiating a prosecution and in presenting the Commonwealth's case, prosecutors are absolutely immune from suit under 42 U.S.C. § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Without this protection, "harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Burns v. Reed*, 500 U.S. 478, 485 (1991) (quoting *Imbler*, 424 U.S. at 423). While indicating that prosecutorial activities not "intimately associated with the judicial phase of the criminal process" may not be covered by absolute immunity, the Supreme Court refused to draw the line of protected activities at the initiation of a prosecution or courtroom conduct. *Imbler*, 424 U.S. at 430, 431 n.33 ("We recognize that the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (absolute immunity covers actions undertaken in preparation for judicial proceedings or for trial). Rather, the Court indicated that a court must decide whether the action was "fairly within [the prosecutor's] function as an advocate" to determine if the action is protected. *Imbler*, 424 U.S. at 430 n.32; *see*

*also Guerro v. Mulhearn*, 498 F.2d 1249, 1256 (1st Cir. 1974) ("absolute immunity does not extend to acts essentially unrelated to the judicial process").

Plaintiff's labeling of Defendant Bloom's actions as investigatory, *see* Compl. ¶¶ 18, 85, 131, is of no consequence. In this "functional approach," the focus is on the nature of the function performed. *See Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *see also Krohn v. United States*, 742 F.2d 24, 31 (1st Cir. 1984). Plaintiff's allegations against Defendant Bloom are based on his actions related to his prosecution of Plaintiff and the preparation for it. *See* Compl. ¶¶ 75–78, 84, 131. Once Plaintiff was placed under arrest, Defendant Bloom's decision to initiate Plaintiff's prosecution and any preparatory steps taken were not the actions of a detective "in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested," *Buckley*, 509 U.S. at 273, but rather the actions of an advocate "in evaluating evidence and interviewing witnesses as he prepares for trial," *id. See also Vara v. Pina*, No. 83-0194-Z, 1985 U.S. Dist. LEXIS 13459, at *6–7 (D. Mass. Nov. 26, 1985) ("[T]he grant or denial of absolute immunity for the actions preceding plaintiff's arrest depends on whether defendants took part in the 'preliminary gathering of evidence' hoping it would lead to prosecution -- a non-advocacy function enjoying only qualified immunity—or whether, on the other hand, they did not become involved until plaintiff had emerged as the target of prosecution—an aspect of the charging function for which at least one court would grant absolute immunity."). As such, Defendant Bloom's actions should be protected by absolute immunity, regardless of whether they were undertaken "maliciously, intentionally, and in bad faith." *Siano v. Justices of Mass.*, 698 F.2d 52, 58 (1st Cir. 1983); *see Burns*, 500 U.S. at 489–90 (prosecutor absolutely immune for making false or defamatory statements and for eliciting false and defamatory testimony from witnesses); *Beckett v. Ford*, 384 F. App'x 435, 451–52 (6th Cir. 2010) (finding the prosecutor absolutely immune from claims that he threatened witnesses,

knowingly presented false testimony, and framed the plaintiff for murder); *cf. Mireles v. Waco*, 502 U.S. 9, 11–13 (1991) ("judicial immunity is not overcome by allegations of bad faith or malice").

In *Imbler*, the plaintiff brought a civil rights action pursuant to 42 U.S.C. § 1983 alleging that the prosecutor knowingly used false testimony at trial and deliberately suppressed exculpatory evidence. 424 U.S. at 413. The Supreme Court held this conduct to be "intimately associated with the judicial phase of the criminal process" and thus entitling the prosecutor to absolute immunity. *Id.* at 430. Similarly here, Plaintiff alleges that Defendant Bloom used "flawed and fabricated evidence," Compl. ¶¶ 76, 78, and suppressed "exculpatory evidence regarding the impropriety of [hair microscopy] analysis" and regarding the blood sample, Compl. ¶¶ 76–79. Defendant Bloom had a duty as prosecutor to decide what evidence to introduce and to evaluate and prepare the Commonwealth's evidence for use in judicial proceedings. Under *Imbler*, this conduct cannot be the basis for suit. *See Díaz-Colón v. Fuentes-Agostini*, 786 F.3d 144, 150–51 (1st Cir. 2015); *see also Reid v. New Hampshire*, 56 F.3d 332, 336 (1st Cir. 1995) (prosecutors entitled to absolute immunity for knowing suppression and delayed disclosure of exculpatory evidence and for misleading the court to conceal their conduct); *Graziano v. Ryan*, No. 80-2612-S, 1981 U.S. Dist. LEXIS 12435, at *5 (D. Mass. May 21, 1981) (prosecutor absolutely immune from claims that he distorted evidence, used perjured testimony, prosecuted the plaintiff without probable cause, rewarded a witness for his testimony, allowed a witness to be threatened with physical harm and allowed the plaintiff to be falsely imprisoned for approximately three and one-half years).

Other actions of Defendant Bloom described in the complaint as investigatory, taken as true, do not negate absolute immunity. "Deciding where to draw the line between . . . immunized prosecutorial advocacy and conduct that is, for example, exclusively investigative or

9

administrative is not always easy." *Díaz-Colón*, 786 F.3d at 150. Certain actions that may appear investigatory may nonetheless be integral to an advocacy function. *See Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir. 1979) ("On occasion, the securing of additional information may be necessary before an informed decision [to initiate a prosecution] can be made. . . . [T]he right to make the decision without being subject to suit must include some limited right to gather necessary information."); *Howell v. Sanders*, 668 F.3d 344, 352–53 (6th Cir. 2012) ("the fact that prosecutors often engage in work that resembles traditional police activities does not remove such acts from the protections of absolute immunity if they were done during the course of preparing for trial" or related to the initiation of criminal proceedings); *cf. Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009) (administrative obligations that are "directly connected with the conduct of a trial" are covered by absolute immunity).

In *Warney v. Monroe Cty.*, 587 F.3d 113 (2d Cir. 2009), the prosecutors, during post-trial proceedings, submitted blood samples for DNA testing, learned of it matching another potential suspect, and delayed making the disclosure. The court held that these actions were "integral to and subsumed in the advocacy functions." *Id.* at 123. Likewise here, Defendant Bloom's delivery of samples to the FBI and his conversations with the potential expert witnesses were integral to the advocacy function of preparing the Commonwealth's case. *Warney*, 587 F.3d at 123–24; *see also Howell*, 668 F.3d at 352–53 (prosecutor was entitled to absolute immunity for cancelling a polygraph test because the action was well within his role as an advocate); *Forsyth*, 599 F.2d at 1215 (attorney general entitled to absolute immunity for authorizing warrantless wiretap); *Jones v. City of N.Y.*, 988 F. Supp. 2d 305 (E.D.N.Y. 2013) (decisions about DNA testing and the use of that information held to be exercise of legal judgment taken in preparation for trial).

The charge of deliberate fabrication of evidence is subject to the same analysis and result, *see Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995), as is the charge of participation in an

10

unlawful interrogation, *Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012). In *Hill*, 445 F.3d at 662, the prosecutor was alleged to have fabricated evidence by producing a videotape containing the alleged coerced testimony of a minor witness. To decide whether "efforts to manufacture evidence" are protected by absolute immunity, the court had to decide whether they occurred in preparation for judicial proceedings or during the initial investigatory phase of a criminal case. *Id.* The court concluded that it could not be determined from the pleadings whether the prosecutor had probable cause to arrest the plaintiff or if probable cause was provided by the alleged fabricated evidence. *Id.* at 663. The court then dismissed the portion of the appeal respecting the fabrication of evidence for lack of appellate jurisdiction. *Id.* at 663. Here, the fabrication of evidence is alleged to have occurred after Plaintiff's arrest and inculpatory statements. Compl. ¶ 58. Once a lawful arrest predicated on probable cause occurred, *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (arrest is lawful where there is probable cause for an arrest for some offense), judicial proceedings were contemplated and Defendant Bloom's actions were taken in preparation thereof. *See Gordon v. Devine*, No. 08 C 377, 2008 U.S. Dist. LEXIS 81234, at *41 (N.D. Ill. Oct. 14, 2008) (prosecutor held absolutely immune from claims alleging that, after plaintiff's arrest, prosecutor suppressed exculpatory evidence, made misrepresentations to court and to defense attorney, and fabricated evidence to encourage a stipulation because the actions were in preparation for trial); *cf. Hill*, 45 F.3d at 662. In *Giraldo*, the defendants were found absolutely immune from claims arising from the plaintiff's involuntary interrogation. 694 F.3d at 166–67. The court held that "not every interview, interrogation, or other act by a prosecutor with the potential of revealing new information is an investigative act entitled to only qualified immunity" and that the interrogation was "was clearly in a pending or in preparation [of] a court proceeding in which the prosecutor acts as an advocate." *Id.* (internal quotations omitted) (alteration in original). Defendant Bloom's

involvement here was likewise intimately related to the prosecution of Plaintiff and therefore protected by absolute immunity.

To the extent that Plaintiff suggests that Defendant Bloom generally "participated in the misconduct," Compl. ¶ 83, or engaged in a "conspiracy" with the other defendants to violate his constitutional rights, Compl. ¶¶ 18, 84, 85, that would deprive Defendant Bloom of absolute immunity, his claim is unavailing. *See Weathers v. Ebert*, 505 F.2d 514, 517 (4th Cir. 1974) ("unsupported by averments of communication, consultation, cooperation, or command, do not make [the prosecutor] responsible under § 1983 for the acts of others"); *see also Henzel v. Gerstein*, 608 F.2d 654, 659 (5th Cir. 1979) (plaintiff failed to allege facts showing the existence of a conspiracy where the pleadings and affidavits contained bare allegations that all of the defendants "conspired" to deprive him of his constitutional rights). Making Defendant Bloom "liable for the misconduct of others . . . would render prosecutors vicariously liable in all cases involving improper actions" because there is always some level of cooperation with investigators. *See Díaz-Colón*, 786 F.3d at 151; *see also Siano*, 698 F.2d at 58 (prosecutor was absolutely immune from claim that he conspired with the plaintiff's insurance company to use forged evidence at trial); *Hill*, 45 F.3d at 662 (absolute prosecutorial immunity extends even to conspiracies to present false evidence at trial). "Such an exponential increase in potential liability plainly conflicts with the purpose of affording prosecutors absolute immunity, to insulate prosecutorial discretion and resources from the threat of litigation." *Díaz-Colón*, 786 F.3d at 151.

In sum, because Defendant Bloom's actions in this case—connected as they were with the initiation of prosecution against Plaintiff and with preparation for trial—were intimately associated with the judicial phase of the criminal process, he is protected by absolute prosecutorial immunity. The claims against him must therefore be dismissed.

### B. Qualified Immunity Bars Plaintiff's Claims Against Defendant Bloom Because He Did Not Violate Plaintiff's Rights.

Alternatively, the claims against Defendant Bloom should be dismissed because he is protected under the doctrine of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is firmly established that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[Q]ualified immunity requires merely that a reasonable official could believe that his conduct was lawful . . . ." *Olmeda v. Ortiz-Quinonez*, 434 F.3d 62, 65 (1st Cir. 2006). Qualified immunity is "designed to mitigate the social costs of exposing government officials to personal liability – costs such as 'distraction of officials from their governmental duties, inhibition of discretionary action, and deterrent of able people from public service.'" *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998) (quoting *Harlow*, 457 U.S. at 816). Because it is "an immunity from suit, rather than a mere defense to liability," it must be resolved as early as possible to avoid loss of the right. *Saucer v. Katz*, 433 U.S. 194, 200–01 (2001).

The First Circuit uses a two-part test to determine existence of qualified immunity for purposes of a motion to dismiss in a § 1983 action: "1) whether plaintiff's allegations, taken as true, establish the violation of a constitutional right, and 2) whether the constitutional right was clearly established at the time of the challenged conduct." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 52 (1st Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 268–69 (1st Cir. 2009).

Though conclusorily alleging that Defendant Bloom violated his Fifth and Fourteenth Amendment rights, Compl. ¶ 131, Plaintiff has not alleged how any knowing action by Defendant Bloom in particular is responsible for any deprivation of rights. *See Kostka v. Hogg*,

560 F.2d 37, 40 (1st Cir. 1977) (personal role in the violation required for § 1983 liability). The complaint alleges that Defendant Bloom violated Plaintiff's rights by "fabricating evidence used against him, coercing Plaintiff into falsely confessing, which was used against Plaintiff during his criminal proceedings, and by failing to intervene to prevent the other Defendants from fabricating evidence and unlawfully coercing a confession." Compl. ¶ 131.

As an initial matter, Plaintiff is precluded from relitigating the voluntariness of his confession. "The doctrine of collateral estoppel applies to civil rights actions brought pursuant to 42 U.S.C. § 1983." *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005)). This Court must apply state preclusion principles. *Id.* Massachusetts law provides that "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim." *Id.* (*citing* Restatement (Second) of Judgments § 27 (1982)). "Massachusetts courts have repeatedly applied the doctrine of collateral estoppel even though the second action involved a different type of claim from the first." In *Johnson,* a defendant who had been exonerated brought a § 1983 action against two Boston police officers, alleging that they deprived him of his constitutional rights by withholding exculpatory evidence and interfering with his counsel's ability to decide whether to present certain witnesses. This issue had been decided by the Massachusetts Supreme Judicial Court on appeal from Johnson's conviction. *Id*. at 94. The First Circuit held that this constituted collateral estoppel where Johnson had been afforded a fair procedure for litigating his constitutional claims in the criminal proceeding. *Id*. at 95. See also *Echavarria v. Roach*, 2017 U.S. Dist. LEXIS 144589, *24.

In this case, Plaintiff litigated the issue of his confession and other statements made to the police upon his arrest at his motion to suppress and his 1990 appeal. *Perrot*, 407 Mass. at 542–43, 554 N.E.2d at 1208. Plaintiff made the same allegations he now makes in the complaint: that

14

he was highly intoxicated, sleep-deprived, emotional, and suicidal, that he had been threatened and beaten by the police, that he could not recall receiving Miranda warning or signing any form acknowledging receipt of the warnings, and that he could not recall giving any oral or written statements regarding the crimes. *Id.* The Supreme Judicial Court determined that "[t]he record demonstrate[d] a sufficient factual and legal basis for the denial of the motion to suppress." *Id.* Plaintiff has fully litigated the voluntariness of his confession and should be barred from relitigating it in this action.

Plaintiff also contends that Defendant Bloom personally fabricated a false confession and forged Plaintiff's signature on it. Compl. ¶¶ 88, 95. The Plaintiff does not, however, allege that this document was used at either of his two trials (rather it was discovered and disclosed by a new prosecutor before Plaintiff's retrial). Compl. ¶ 95. To the extent that this is the same forged confession at issue in Plaintiff's appeal from his conviction after his second trial, he is precluded from relitigating this issue as well. On appeal from his second conviction, Plaintiff challenged the denial of his pretrial motion to dismiss the indictments due to prosecutorial misconduct, claiming he was prejudiced by a forged postconviction confession. *Perrot*, 38 Mass. App. Ct. at 478–79, 648 N.E.2d at 1315. The Appeals Court held that any misconduct by Defendant Bloom, who apparently used the forged postconviction confession in a misguided—and ultimately unsuccessful—effort to pressure two of Plaintiff's friends to confess involvement in one of the housebreaks, was not directed at Plaintiff and that there was no prejudice to Plaintiff because the forgery was discovered by a police officer and disclosed by a successor prosecutor prior to Plaintiff's second trial. *Id.* at 482, 648 N.E.2d at 1317. The issue of prejudice to Plaintiff from the forgery of that postconviction confession was therefore fully litigated before the Appeals Court and Plaintiff cannot seek to relitigate it here.

15

Additionally, because the document was not used at either of Plaintiff's trials, no violation of Plaintiff's due process rights by the use of this fabricated confession has occurred. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003); *see also McGrath v. Town of Sandwich*, 169 F. Supp. 3d 251, 258 (D. Mass. 2015); *Petty v. City of Chi.*, 754 F.3d 416, 421–22 (7th Cir. 2014) ("a police officer who manufactures false evidence against a criminal defendant violate[d] due process *if that evidence is later used* to deprive the defendant of her liberty in some way) (emphasis added).

It is unclear what other evidence, if any, Plaintiff alleges that Defendant Bloom fabricated and used against Plaintiff so as to deprive him of his due process rights. Compl. ¶ 131. The complaint alleges that Defendant Bloom "personally hand-delivered the hair evidence to Defendant Oakes and illicitly met with Defendant Oakes before he performed his analysis and informed him that Plaintiff was their target. Compl. ¶ 75. Plaintiff also alleges that the hairs were not a match. Compl. ¶ 72. But then he concedes that "[r]ather than disclose that information to Defendant Bloom, . . . Defendant Oakes suppressed it, enabling him to give his false report." Compl. ¶ 72. Accordingly, Plaintiff does not allege that Defendant Bloom knew of the suppression of any results, if it occurred. Nor is there reason to think that Defendant Bloom knew then what the NAS and FBI only determined decades later: that the scientific basis for Defendant Oakes' testimony was weak.

Plaintiff additionally alleges that Defendant Bloom failed to intervene to prevent the other defendants from violating his rights. Compl. ¶ 131. No such duty of a prosecutor to intervene has been established in this Circuit, or indeed in the few jurisdictions that have considered it. *See, e.g.*, *Andrews v. Burge*, 660 F. Supp. 2d 868, 876 n.6 (N.D. Ill. 2009) ("the duty to intervene applicable to police officers is not to be imposed on prosecutors"); *Patrick v. City of Chi.*, 213 F. Supp. 3d 1033, 1055 (N.D. Ill. 2016); *Ekwunife v. City of Phila.*, 245 F.

Supp. 3d 660, 672-73 (E.D. Pa. 2017). Indeed, neither has such a duty been established for law enforcement. *Echavarria*, 2017 U.S. Dist. LEXIS 144589, *33 ("within the First Circuit, it remains uncertain whether an officer has a duty to intervene in cases that do not concern excessive force").

The consistent theme of the complaint is that Defendant Bloom participated in the misconduct against Plaintiff, Compl. ¶ 84, but the complaint alleges no facts to suggest that Defendant Bloom personally and knowingly violated Plaintiff's rights. In the absence of such facts, Defendant Bloom is protected by qualified immunity, and the claims against him must be dismissed. *See Maldonado*, 568 F.3d at 273–74 (government official enjoys qualified immunity where the complaint against him contains a generalized allegation that he "planned, personally participated in, and executed [the alleged illegal activities] in concert with others, but the others are named as the persons with specific . . . responsibilities" in the matter).

### III. Plaintiff's Claim against Defendant Bloom Should Be Dismissed Because It Fails To State A Claim Upon Which Relief Can Be Granted.

The claims against Defendant Bloom should be dismissed because Plaintiff has failed to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (to survive a motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level"). The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

For the reasons discussed in more detail above, Plaintiff here has failed to provide specific facts about Defendant Bloom's particular conduct that amount to more than a possibility that he has acted unlawfully or that raise a right to relief against him above a speculative level. Conclusory and generic statements that he participated in the misconduct or that he failed to

intervene to stop the alleged misconduct, Compl. ¶¶ 83, 84, 131, are insufficient "to support the reasonable inference that the defendant is liable." *See Saldivar*, 818 F.3d at 18.

## CONCLUSION

For the foregoing reasons, Defendant Francis Bloom respectfully request that this Court grant his motion to dismiss all claims against him and enter judgment in his favor.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

On the memo:                     /s/ Susanne G. Reardon
Ioana Moldovan                    Susanne G. Reardon
Legal Intern                      BBO # 561669
                                  Assistant Attorney General
                                  Appeals Division
                                  Criminal Bureau
                                  One Ashburton Place
                                  Boston, Massachusetts 02108
                                  (617) 963-2832
                                  (617) 573-5358 (fax)
                                  Susanne.reardon@state.ma.us

Dated: April 13, 2018

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on April 13, 2018. It will be will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 13, 2018.

/s/_Susanne G. Reardon
Susanne Reardon