# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE PERROT, | ) |
| | ) Case No. 18-cv-10147-DPW |
| Plaintiff, | ) |
| | ) Hon. Douglas P. Woodlock, |
| v. | ) District Judge |
| | ) |
| THOMAS KELLY, *et al.* | ) |
| | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

### PLAINTIFF'S RESPONSE TO
### THE SPRINGFIELD DEFENDANTS' MOTION FOR CHANGE OF VENUE

NOW COMES Plaintiff, by and through his counsel, and responds in opposition to Defendants City of Springfield's and Springfield Police Officers' ("Springfield Defendants") motion for change of venue (Dckt. No. 96) as follows:

**Background**

Plaintiff's present complaint concerns events that occurred in Springfield, Massachusetts, in Washington, D.C., and elsewhere as Defendants in various places on the East Coast collectively procured Plaintiff's wrongful conviction for a Springfield sexual assault that he did not commit. When Plaintiff filed his complaint, he properly filed in the United States District Court for the District of Massachusetts, and specifically filed in the Boston division in recognition of the various places in which defendants would reside (Defendants in this case reside in and around Springfield, in Florida, and elsewhere in the United States), the various places in which Plaintiff anticipated defendants' counsel would be (the Springfield area, but also Worcester, Boston, Chicago, and Washington D.C.), where Plaintiff resides (in the Boston division, north of Boston) and in recognition of the various places in which discovery may need to occur in litigating this case. The Boston division remains the appropriate venue for this case.

Plaintiff filed this case in January of 2018. The present Court was appointed to hear this case at that time. Both the Springfield Defendants and the FBI Defendants filed various motions to dismiss rather than answering Plaintiff's initial complaint. (Dckt. Nos. 31, 34, 36, 42, and 71.) This Court had a status on this case on July 12, 2018, at which the Court heard argument and dismissed (without prejudice) all of the Springfield Defendants' pending motions. (Dckt. No. 67.) This Court also set a discovery schedule for the case at that status, and set a briefing schedule on issues in this case related to deceased defendants. The parties subsequently exchanged Rule 26 disclosures, Plaintiff served written discovery, and the parties are in the process of scheduling depositions pursuant to the order of this Court.

Three months after that status and the accompanying rulings on the initial motions to dismiss (and three months after the Court had laid out how it would proceed with the case) and over nine months after the case was filed, the Springfield Defendants belatedly filed a motion to change venue. The FBI Defendants have filed no motion to change the venue, and take no position on the present motion, which makes sense given that Springfield is far less convenient for them than Boston, just as it is for Plaintiff. The Springfield Defendants baldly assert that this is a Springfield case, should remain in Springfield, and contends that there are significant burdens in keeping this case in Boston. The purported burdens the Springfield Defendants point to include the cost of tolls, the fact that the documents that will be relevant to discovery reside in Springfield, and that the Springfield Defendants themselves largely reside in and around Springfield.

Setting aside the fact that the Springfield Defendants' motion is fatally late, after this Court already familiarized himself with the case, made preliminary rulings, and set a schedule, the Springfield Defendants' purported burdens are illusions. This case is a large, multi-party,

2

complicated civil rights litigation with parties and counsel in various places. The events giving rise to the complaint also occurred in various places. Discovery will occur in various places. Documents that reside in Springfield will be sent all over the United States to counsel in this case. And while it is true that various counsel and parties may have to transport themselves to Boston for trial, the relative convenience to the Springfield Defendants of having a trial in Springfield, 90 miles away from Boston, does not justify changing horses mid-stream from the more convenient and proper venue in Boston.

**ARGUMENT**

**I.    THIS MOTION IS UNTIMELY AND DEFENDANTS WAIVED A VENUE CHALLENGE BY PREVIOUSLY FILING A RULE 12 MOTION**

The Springfield Defendants do not argue that the Boston division is an improper forum but only that, for them, the Springfield division is more convenient. *Amax, Inc. v. Acco Brands Corp.*, Civ. Action No. 16-10695-NMG, 2017 WL 2818987, at *2 (D. Mass. June 29, 2017) ("By filing a motion to transfer venue based on convenience and failing to assert that venue was improper in that motion, defendant conceded that venue is proper in this Court."). As their motion articulates, this is a *forum non conveniens* motion pursuant to 28 U.S.C. § 1404(b). For such a motion, the Springfield Defendants bear the burden to show the case should be transferred, over the "strong presumption" in favor of Plaintiff's choice of forum. *Coady v. Ashcraft & Geral*, 223 F.3d 1, 11 (1st Cir. 2000).

The defense of improper venue can be waived where a defendant does not timely assert the defense. *Amax, Inc*, Civ. Action No. 16-10695-NMG, 2017 WL 2818987, at *2 (defendant waived venue challenge by filing answer and early summary judgment motion without asserting the issue). Federal Rule of Civil Procedure 12(h)(1)(B) provides that several Rule 12 defenses, including venue, are waived if not raised in the first Rule 12 motion a party files. Thus, to timely

3

assert the defense, it must be raised in a defendant's "first defensive move, be it a Rule 12 motion or a responsive pleading." *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir. 1983) (defendant waives defenses, including venue challenges, known to it at the time of its first Rule 12 motion); *Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 691-92 (1st Cir. 1992) (venue defense waived where defendant raised issue for the first time 2 months after the filing of the complaint and after the parties had litigated the plaintiff's TRO request); *Avidyne Corp. v. Lewis*, Civ. Action No. 16-10179-JCB, 2016 WL 9402846, at *2 (D. Mass. Nov. 17, 2016) (defendants waived venue defense by not raising the issue in their answer, objecting two months after the entry of a scheduling order, and participating in discovery before filing a motion to transfer venue); *Moore v. Southern New Hampshire Med. Ctr.*, Civ. Action No. 08-11751-NMG, 2009 WL 5214879, *10 (D. Mass. Aug. 18, 2009) (denying defendant's motion to join another defendant's motion to transfer venue because the party had already filed a Rule 12 motion); *New England Cord Blood Bank, Inc., v. Alpha Cord, Inc.*, Case No. CIV.A 03-11662-GAO, 2004 WL 222357, *1 (D. Mass. Jan. 21, 2004) (Rule 12 prohibition against filing a motion to transfer venue after filing an initial Rule 12 motion is a basis, standing alone, to deny a later motion to transfer venue).

In this case, every single one of the moving Defendants previously filed a Rule 12 motion that did not raise the issue of venue. Whether those motions were denied without prejudice is irrelevant – Rule 12 and the caselaw in this district following it are crystal clear that venue challenges are waived if not raised in the first motion. The reasons are clear – the purpose of Rule 12 is to "eliminate unnecessary delays in the early pleading stages of a suit so that all available Rule 12 defenses are advanced before consideration of the merits." *Manchester Knitted Fashions, Inc.*, 967 F.2d at 691 (quoting *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st

Cir. 1983)). The moving Defendants acquired no newly-discovered information about their own whereabouts or the whereabouts of any other parties, or about any other aspect of the case since the filing of their initial Rule 12 motion, nor does their motion assert that they did.[1] Instead, it appears that after the July status, when this Court set a discovery schedule and rejected Defendants' initial Rule 12 challenges, Defendants may have reconsidered whether this forum would be advantageous to them, and they are now trying to backdoor a challenge they have already waived. To allow Defendants to belatedly challenge venue would result in prejudice to Plaintiff and in serious inefficiencies since this Court has already considered Defendants' initial Rule 12 motions, has now before it a fully-briefed Rule 12 motion of the non-moving FBI Defendants, and has already learned information about this case and charted a course for this case to proceed. It is simply too late for these Defendants now to assert that the Boston division is inconvenient for them. On this basis alone, the Court should deny their motion.

## II.  ON THE MERITS, THE PUBLIC AND PRIVATE INTEREST FACTORS WEIGH IN FAVOR OF KEEPING THIS MATTER IN BOSTON

If this Court decides to reach the merits of this motion, it should still deny Defendants' request. As the Springfield Defendants correctly note, in deciding whether to transfer venue the Court should balance the Plaintiff's choice of forum and the convenience of the parties and witnesses, the availability of documents, and the interests of justice. *Boateng v. Gen. Dynamics*

---

[1] Defendants' motion claims that Plaintiff's counsel "strangely refused to disclose Perrot's address" and that they believe his last known address is in Chicopee, MA. (Dckt. No. 97 at 4-5.) At the parties' Rule 37 conference, Plaintiff's counsel indicated that for privacy reasons she would not disclose Plaintiff's address to Defendants informally. She also made clear that it was the status of the case and the fact that it was already well into litigation that was the primary basis for Plaintiff's objection to Defendants' motion. Nevertheless, Plaintiff does reside approximately 35 miles from the Boston courthouse and in the Boston division of the District of Massachusetts, and he resides approximately 2 hours from Springfield. Boston is a far more convenient division for Plaintiff.

*Corp.*, 460 F. Supp.2d 270, 275 (D. Mass. 2006) (quoting *Fairview Mach. & Tool. Co., Inc. v. Oakbrook Int'l, Inc.*, 56 F. Supp.2d 134, 141 (D. Mass 1999)) (denying motion to transfer venue from Massachusetts to North Carolina even though the defendant corporation and its employees and witnesses all resided there, because paper discovery could easily be accomplished anywhere and because the defendant corporation could compel its employees to participate in Massachusetts litigation).

In this case, the Court is balancing different divisions within the District of Massachusetts which are relatively close to one another – the Springfield Defendants are effectively seeking to move this matter the 80+ miles from Boston to Springfield. In a world that ignores that they have already waived this issue, they bear the burden of establishing that Springfield is more convenient to the litigation as a whole. They cannot meet that burden.

The Springfield Defendants' complaints about Boston as the venue are centered on the convenience of the Springfield Defendants' counsel's travel to Boston for pretrial proceedings and for trial. Notably, however, the convenience of counsel should be accorded "little if any weight," which renders all of the Springfield Defendants' counsel's assertions that it is inconvenient for them to travel to court in Boston largely irrelevant. *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (citing *S-G Securities, Inc. v. Fuqua Investment Co.*, 466 F. Supp. 1114, 1122 (D. Mass. 1978)). But even if that were not so, the ledger is not balanced as disproportionately toward Springfield as the Springfield Defendants' suggest. While some of the Springfield Defendants' counsel are in Springfield, one is in Worcester. Defendant Bloom's attorney from the Office of the Attorney General is in Boston. The FBI Defendants' counsel are in Boston and Washington D.C. and Plaintiff's attorneys are in Chicago and Boston. Counsel is scattered.

The same split occurs with regard to the parties: numerous Springfield Defendants are in the Springfield area (as is Defendant Bloom), and one is in Florida. Plaintiff is near Boston. The location of the FBI Defendants remains unknown, but those parties and other witnesses who may testify about the FBI's involvement in this case were working at the FBI lab in Washington D.C. at the time of the events giving rise to the complaint, they appear to have no personal connections to Springfield, and the Springfield Defendants have presented no information that these Defendants reside in Springfield.

Finally, while there are indisputably documents in Springfield, there are also many documents in Washington, D.C. (the FBI) and Boston (Plaintiff's criminal defense and post-trial attorneys). The location of documents should carry little weight as these will likely be scanned and produced electronically to the parties, and any inspection would take place in the location where the documents exist. In short, there is no burden litigating this case in Boston where documents associated with it are all over the East Coast. *See E.E.O.C. v. Texas Roadhouse, Inc.*, No. 1:11-CV-11732-DJC, 2012 WL 5894910, at *3 (D. Mass. Nov. 9, 2012) (citing 15 *Wright, Miller & Cooper*, Federal Practice and Procedure § 3853) ("The location of documents is afforded little weight, since documents are now easily transported or digitized.").

Stated differently, this is a complex piece of civil rights litigation, with paper and testamentary discovery that will likely occur across the United States, including in Boston. Defendants have failed to demonstrate that the convenience of witnesses supports transfer to Springfield because their motion has not, as required, specified the key witnesses and provided a general statement about what their testimony would entail. *Princess House*, 136 F.R.D. at 18. It is certainly true that Defendants themselves and the related employees and witnesses from these events will be the main witnesses in this case, and while Defendants have asserted that most of

the Springfield Defendants are in and around Springfield, the parties, having not begun discovery, do not know where third-party witnesses reside. The parties can surmise that the relevant FBI employees do not reside in Springfield, and Defendants have not established that any necessary third-party witnesses reside in Springfield. To the extent third party witnesses are within the control of the Springfield Defendants (or other Defendants), their convenience is not a factor this Court should consider in any event. *Texas Roadhouse, Inc.*, No. 1:11-CV-11732-DJC, 2012 WL 5894910, at *2 (citing *Sivert v. Harsco Corp.*, No. 09–10707–FDS, 2009 WL 3300031, at *4 (D. Mass. July 7, 2009)) ("[T]he significance of the inconvenience to witnesses is diminished when the witnesses are the employees of one of the parties and their appearance can be therefore be secured by the employer."). Even setting this aside, witnesses will receive a witness fee and mileage for their depositions, wherever they take place, which obviates Defendants' insistence that toll charges associated with discovery are a primary concern in deciding where venue should lay, particularly where the venue in which this case now resides is literally down the road from Springfield.

Defendants note in their motion that Plaintiff has not agreed to conduct depositions in Springfield. (Dckt. No. 97 at 7, n.2.) It is true that Plaintiff expressed to Defendants the hope that appropriate depositions could occur in Boston, which is more convenient to all of the parties, but all parties recognize that in sprawling, complicated litigation, witnesses will be disclosed at a location convenient for them. Indeed, what Plaintiff's counsel said was not that depositions could not occur in Springfield, but instead that there was no "one size fits all" approach to deposition location, and that the parties should work together to identify the appropriate location for each of the depositions. Cooperation in setting deposition locations will do more to ease the burden of discovery on all parties than moving this case to Springfield.

The Springfield Defendants assert that a trial of this matter in Boston as opposed to Springfield will substantially add to the expense to Defendants of litigating the case, and the Springfield Defendants again point to the costs of tolls and to the relative expense of Boston over Springfield. Again, even had this argument not been waived, the Springfield Defendants' contention is really just an assertion that it is more convenient and desirable for them to have a trial in Springfield. They have not shown it is more convenient for Plaintiff, the FBI Defendants, other third-party-witnesses, or for the administration of justice. This Court should not transfer venue to accommodate the Springfield Defendants if doing so will simply shift the inconvenience from one party in the case to another. *Princess House*, 136 F.R.D. at 18 (citing *Berrigan v. Greyhound Lines, Inc.*, 560 F. Supp. 165, 169 (D. Mass. 1982)); *Access Now, Inc. v. Otter Products, LLC*, 280 F. Supp.3d 287 (D. Mass. 2017) (quoting *Holmes Grp., Inc. v. Hamilton Beach/Procter Silenx, Inc.*, 249 F. Supp.2d 12, 18 (D. Mass. 2002)) (denying motion to transfer where a move in venue would inconvenience the plaintiff to assist a larger Defendant corporation because "[t]ransfer of venue is inappropriate . . . where its effect merely shifts the inconvenience from one party to another").

Finally, Plaintiff notes that this Court *sua sponte* set the next motion hearing of this case to be heard in Springfield. (Dckt. No. 88.) This Court can, for the convenience of the parties or for the Court's own convenience, choose to hear certain pretrial motions in this case in Springfield, and this decision will limit to some extent the Springfield Defendants' concerns about coming to Boston for court. The Court's exercise of its discretion in this regard is a better way to address the Springfield Defendants' concerns rather than switching horses mid-stream, sending this case to a new courthouse and a new judge, and further delaying these proceedings to accommodate the Springfield Defendants' late-requested and waived choice of venue.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully requests that this Court deny the Springfield Defendants' Motion to Transfer Venue.

Dated: October 18, 2018

RESPECTFULLY SUBMITTED,

/s/ Tara Thompson
*Attorney for Plaintiff*
Debra Loevy
Gayle Horn
Mark Loevy-Reyes
Steven Art
Tara Thompson
Tony Balkissoon
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Ph: (312) 243-5900
Fax: (312) 243-5902

# CERTIFICATE OF SERVICE

I, Tara Thompson, certify that the foregoing response was sent via CM/ECF to all counsel of record on October 18, 2018.

/s/ Tara Thompson
*Counsel for Plaintiff*