**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| GEORGE PERROT, | ) | |
| | ) | |
| Perrot, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-cv-10147-DPW |
| | ) | |
| THOMAS KELLY, et al. | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

**REPLY IN SUPPORT OF**
**INDIVIDUAL FEDERAL BUREAU OF INVESTIGATION DEFENDANTS'**
**MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................................. iii

INTRODUCTION ........................................................................................................1

ARGUMENT ...............................................................................................................1

I.    A *Bivens* Remedy Is Inappropriate And Unnecessary In This Case. ..............................1

II.   Perrot Fails To Overcome Eubanks And Oakes' Qualified Immunity. .........................5

      A.     Perrot has no claim based upon the argument that hair microscopy was "junk science." .......................................................................................................5

      B.     Perrot Fails To State A Due Process or Malicious Prosecution Claim..............7

CONCLUSION.............................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Andrews v. Miner*,
   301 F. Supp. 3d 1128 (N.D. Ala. 2017) ................................................................. 5, 6

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) .................................................................................................. 1

*Bush v. Lucas*,
   462 U.S. 367 (1983) .................................................................................................. 4

*Carlson v. Green*,
   446 U.S. 14 (1980) ............................................................................................. 2, 5, 6

*Chappell v. Wallace*,
   462 U.S. 296 (1983) .................................................................................................. 4

*Commonwealth v. Gagliardi*,
   418 Mass. 562 (1994) ............................................................................................... 7

*Commonwealth v. Perrot*,
   No. 85-5415, 2016 WL 380123 (Mass. Super. Jan. 26, 2016) ........................... 6, 7, 8

*Davis v. Passman*,
   442 U.S. 228 (1979) .................................................................................................. 2

*Decotiis v. Whittemore*,
   635 F.3d 22 (1st Cir. 2011) ....................................................................................... 9

*Engel v. Buchan*,
   710 F.3d 698 (7th Cir. 2013) .................................................................................... 1

*Garcia v. Spaulding*,
   324 F. Supp. 3d 228 (D. Mass. 2018) ....................................................................... 2

*Gonzalez v. Velez*,
   864 F.3d 45 (1st Cir. 2017) ....................................................................................... 4

*Hartman v. Moore*,
   547 U.S. 250 (2006) .................................................................................................. 2

*Hernandez-Cuevas v. Taylor*,
   723 F.3d 91 (1st Cir. 2013) ................................................................................. 2, 8, 9

*Kennedy v. Peele*,
   552 F. App'x 787 (10th Cir. 2014) ...................................................................... 2, 6

*Kyricopoulos v. Town of Orleans*,
   967 F.2d 14 (1st Cir. 1992) ................................................................................. 7

*Liff v. Office of Inspector General for the U.S. Dept. of Labor*,
   881 F.3d 912 (D.C. Cir. 2018) ............................................................................ 5

*Manuel v. City of Joliet*,
   137 S. Ct 911 (2017) ........................................................................................... 9

*Minneci v. Pollard*,
   565 U.S. 118 (2012) ......................................................................................... 4, 5

*Mlodzinski v. Lewis*,
   648 F. 3d 24 (1st Cir. 2011) ............................................................................... 9

*Nieves v. McSweeney*,
   241 F.3d 46 (1st Cir. 2001) ................................................................................ 9

*Reichle v. Howards*,
   566 U.S. 658 (2012) ........................................................................................... 2

*Rodwell v. Commonwealth*,
   432 Mass. 1016 (2000) ....................................................................................... 7

*Schweiker v. Chilicky*,
   487 U.S. 412 (1988) ......................................................................................... 3, 4

*Wilson v. Layne*,
   526 U.S. 603 (1999) ........................................................................................... 6

*Wilson v. Libby*,
   535 F.3d 697 (D.C. Cir. 2008) ........................................................................... 4

*Wood v. Moss*,
   134 S. Ct. 2056 (2014) ....................................................................................... 2

*Ziglar v. Abbasi*,
   137 S. Ct 1843 (2017) ................................................................................. passim

## INTRODUCTION

The constitutional claims George Perrot asserts against Defendants Eubanks and Oakes are based upon the allegation that Eubanks and Oakes "falsely reported" the hair and blood evidence used in Perrot's trials. Complaint ("Compl.") ¶¶ 67, 80. In their Memorandum of Law in Support of Individual Federal Bureau of Investigation Defendants' Motion to Dismiss ("Defs. Mem."), Eubanks and Oakes showed that whether "reported" refers to testimony offered before a grand jury or at Perrot's trials, or to non-testimonial conduct, the claims against Eubanks and Oakes fail as a matter of law. Defs. Mem. at 7-27. In his Response ("Pl. Resp."), Perrot now concedes that he has no claim for any testimony that was offered before a grand jury or at his criminal trials, and that his claim is limited to acts allegedly committed by Eubanks and Oakes during the investigatory phase of Perrot's criminal case. Pl. Resp. at 6. However, even with that limitation, Perrot's claims still fail.

## ARGUMENT

### I.     A *Bivens* Remedy Is Inappropriate And Unnecessary In This Case.

Defendants Eubanks and Oakes have shown that because Perrot's claims arise in a context in which the Supreme Court has never recognized a *Bivens* remedy,[1] this Court must conduct a special factors analysis to determine whether a remedy should be recognized here. Defs.' Mem. at 7-9. When those special factors are considered, they counsel against creating a *Bivens* remedy for Perrot. *Id.* at 9-16.

In response to the argument that his claims arise in a new context, Perrot attempts to shoehorn his claims into the context of *Bivens* itself, arguing that they arise in the "common and recurrent sphere of law enforcement" described in *Ziglar v. Abbasi*, 137 S. Ct 1843 (2017). Pl. Resp. at 8 (quoting *Abbasi*, 137 S. Ct. at 1857). Perrot cites three circuit court cases – *Engel v. Buchan*, 710 F.3d 698 (7th Cir. 2013),

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

*Kennedy v. Peele*, 552 F. App'x 787 (10th Cir. 2014), and *Hernandez-Cuevas v. Taylor*, 723 F.3d 91 (1st Cir. 2013) – for the proposition that courts have recognized a *Bivens* remedy for claims similar to those he presents in this case. Pl. Resp. at 9-10. *Hernandez-Cuevas* did not; instead the First Circuit decided in *Hernandez-Cuevas* that a constitutional tort claim that a law enforcement officer caused a plaintiff's detention pursuant to legal process is one properly brought under the Fourth Amendment, *see* 723 F.3d at 98-100, and it addressed "the elements of such a claim," *id.* at 101.[2] Nor did *Kennedy* recognize a *Bivens* remedy for claims similar to those presented in this case. In *Kennedy*, the Tenth Circuit "express[ed] no opinion on [the] alternative argument[ ] as to the viability of a *Bivens* claim[.]" 552 F. App'x at 793 n.6.

In any event, *Engel*, *Kennedy*, and *Hernandez-Cuevas*, all predate *Abbasi* – which, as Supreme Court precedent, controls the question of whether such claims present a new context or would be recognized by the Supreme Court now. *See Garcia v. Spaulding*, 324 F. Supp. 3d 228, 232 n.2 (D. Mass. 2018) (recognizing that after *Abbasi*, "[i]t bears noting that the scope of *Bivens* actions is open to question"). *Abbasi* strictly limits the "new context" inquiry to the only three cases in which the Supreme Court itself affirmatively approved of a *Bivens*-type remedy, *i.e.*, *Bivens*, *Davis v. Passman*, 442 U.S. 228 (1979), and *Carlson v. Green*, 446 U.S. 14 (1980). *Abbasi*, 137 S. Ct. at 1859. The Court's analysis does *not* consider prior decisions by courts of appeals or district courts recognizing an implied damages remedy. *Abbasi*, moreover, does not support the proposition that any and all law enforcement cases

---

[2] In that respect, *Hernandez-Cuevas* is like *Hartman v. Moore*, 547 U.S. 250 (2006), which similarly addressed "an element of the kind of claim"—First Amendment retaliatory prosecution—there at issue, *id.* at 257 n.5, but not whether a *Bivens* damages remedy was available for the wrong. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012) (considering whether *Hartman's* rationale extended to retaliatory arrests while observing that "[w]e have never held that *Bivens* extends to First Amendment claims") (citation omitted); *see also Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) ("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. . . . . We do so again in this case.") (citation omitted). And so even apart from *Abbasi*, *Hernandez* does not control the *Bivens* damages question here.

2

are proper vehicles for a *Bivens* claim. To the contrary, in its *Abbasi* decision the Supreme Court stated

that its opinion was "not intended to cast doubt on the continued force, or even the necessity, of

*Bivens* in the *search-and-seizure context in which it arose. . .* The settled law of *Bivens* in *this* common and

recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the

law, are powerful reasons to retain it in *that* sphere." *Id.* at 1856-57 (emphasis added). Perrot does not

sue Eubanks and Oakes for a search and seizure violation; he brings a due process claim. This is a new

*Bivens* context.

A new *Bivens* remedy is not appropriate here because when the question is whether Congress

or the courts should provide for a damages remedy in a new context, "[t]he answer most often will be

Congress." *Id.* at 1857. "In most instances, the [Supreme] Court's precedents now instruct, the Legis-

lature is in the better position to consider if "the public interest would be served" by imposing a "new

substantive legal liability." *Id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 426-27 (1988) (internal quo-

tations omitted)).

Moreover, as shown in the Motion to Dismiss, *see* Defs. Mem. at 11-13, Perrot has already

used a collection of remedies to address any injury associated with alleged flaws in the scientific evi-

dence used to support his prosecution and conviction. Defs. Mem. at 9-16. Rather than address the

collection of remedies the defendants have cited, *see id.*, Perrot argues against a potential remedy the

defendants did not cite – the writ of *habeas corpus*, *see* Pl. Resp. at 12. This argument is inapposite. The

defendants have not argued that Perrot secured his release through a writ of *habeas corpus*. Rather, the

defendants have shown that Perrot was able to use an equitable and administrative remedy provided

by the FBI to identify statements made by Oakes at trial that were determined later, in 2012 for pur-

poses of the FBI's microscopic hair comparison analysis review, to be erroneous testimony. Defs.

Mem. at 9-10. Perrot used that information to successfully pursue the state law remedy of a new trial.

*Id.* In these circumstances, there is no sound reason to supplement the remedies Perrot has already

3

successfully utilized to address potential harm from Oakes' reliance on hair microscopy with a new species of *Bivens* relief. But any doubt about that is resolved by *Abbasi*, which instructs that "most often" it will be for Congress to decide "whether to provide for a damages remedy, 137 S. Ct. at 1857, and that in light of the imperative to defer to Congress' authority in this area, the availability of alternate means of redress is dispositive, *see id.* at 1858.

Contrary to Perrot's argument, *see* Pl. Resp. at 12, an alternative remedy does not need to provide financial compensation in order to counsel against recognition of a *Bivens* remedy. In *Chappell v. Wallace*, 462 U.S. 296 (1983), a "comprehensive internal system of justice to regulate military life," including processes "for the review and remedy of complaints and grievances such as those presented by [the Plaintiffs]," was considered sufficient to preclude a *Bivens* remedy, even though a damages remedy was not provided. *Id.* at 304. In *Schweiker v. Chilicky*, 487 U.S. 412 (1988) the Court declined to create a remedy even where doing so left some injuries entirely "unredressed." *Id.* at 425. The Court held, "[t]he absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." *Id.* at 421. In *Bush v. Lucas*, 462 U.S. 367 (1983), the Court rejected a *Bivens* claim in light of an "elaborate, comprehensive" administrative "scheme" even though the scheme offered less than "complete relief." *Id.* at 385, 378, 386 n.29, 388; *see also Gonzalez v. Velez*, 864 F.3d 45, 54 (1st Cir. 2017) (rejecting argument that, because punitive damages were unavailable in the existing statutory and regulatory scheme, *Bivens* remedy should be extended to a federal sector employment claim). An alternative remedy does not have to be "equally effective" as an action for damages in order to preclude a *Bivens* remedy. *Bush*, 462 U.S. at 388; *Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("State-law remedies and a potential *Bivens* remedy need not be perfectly congruent" for the former to preclude the latter.); *see also Wilson v. Libby*, 535 F.3d 697, 708 (D.C. Cir. 2008) ("[S]ubsequent to *Carlson*, the Court clarified that there does not need to be an equally effective alternate remedy.").

4

Defendants Eubanks and Oakes have not argued that the availability of an FTCA claim, stand-ing alone, precludes a *Bivens* remedy here. *See* Pl. Resp. at 12-13. However, state law remedies, aggre-gated with other alternative remedies, can be probative of the question of whether special factors preclude creation of a *Bivens* remedy in a particular case. *See, e.g., Minneci*, 565 U.S. at 120 (declining to recognize a *Bivens* remedy where, among other things, "state tort law authorizes adequate alternative damages actions"). As the Court noted in *Abbasi*, the presence of features not "considered" in the Court's previous *Bivens* cases might *now* discourage the authorization of a new *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1856.[3] In *Minneci*, which was decided 32 years after *Carlson v. Green*, the Supreme Court recognized that "[s]tate tort law" may provide an "alternative damages action[ ]" offering "both sig-nificant deterrence and compensation…."[4] *Minneci*, 565 U.S. at 120; *see also Andrews v. Miner*, 301 F. Supp. 3d 1128, 1134-35 (N.D. Ala. 2017) (considering "an effective and available [FTCA] remedy" in the mix with other "special factors").

## II.   Perrot Fails To Overcome Eubanks And Oakes' Qualified Immunity.

### A.   Perrot has no claim based upon the argument that hair microscopy was "junk science."

Even though Perrot declares that his claims "have nothing to do with [Eubanks' and Oakes'] in-court testimony, Perrot's claim against Oakes is still premised on the argument that hair microscopy

---

[3] Given that Perrot has announced an intention to pursue a suit against the United States for "claims under Massachusetts law and the FTCA," Compl. at p. 24, n.11, it is unclear why the burden would be on Defendants Eubanks and Oakes to identify the exact state law tort claim Perrot could pursue. *See* Pl. Resp. at 13. Perrot provides no support for this proposition. *See generally Liff v. Office of Inspector General for the U.S. Dept. of Labor*, 881 F.3d 912,  921 (D.C. Cir. 2018) ("We do not parse the specific applicability of this web of" alternatives "but instead note the spectrum of remedies they provide"). Thus Perrot's claim that any argument in this regard has been forfeited is wholly without merit.

[4] In *Carlson v. Green*, the Supreme Court rejected the argument that the availability of an FTCA claim, standing alone, precluded a *Bivens* remedy because Congress had intended the FTCA and *Bivens* to operate as "parallel, complementary" remedies for the search-and-seizure related torts of federal in-vestigative or law enforcement officers. *Carlson*, 446 U.S. at 18-20. As mentioned above, Perrot does not sue for a search and seizure tort.

was "junk science" at the time of the investigation. Pl. Resp. at 3; *see also* Compl. ¶¶ 65-71. Instead of challenging Oakes' grand jury or trial testimony, Perrot now purports to challenge only Oakes' alleged failure to disclose pre-trial that his opinions were based on "junk science." Pl. Resp. at 3. However, the materiality of any alleged failure to disclose during the investigation that hair microscopy was "junk science" necessarily depends on whether hair microscopy was junk science at the time Perrot was investigated and tried. As shown in the Motion to Dismiss, Perrot has no plausible argument that hair microscopy was "junk science" at that time. Defs.' Mem. at 18-22.

*Two* trial courts found hair microscopy sufficiently reliable to be presented to a jury. *Id.*; *Commonwealth v. Perrot*, No. 85-5415, 2016 WL 380123, at *3-10, 11-23 (Mass. Super. Jan. 26, 2016). It was not until decades after Perrot's second trial that the nature and limitations of microscopic hair analysis evidence were recognized. *Id.* at *37. This recognition allowed for a determination to be made, *in retrospect*, that Oakes' testimony exceeded the limits of the science. *Id.*; *see also id.* at *26 ("*Today*, if any of that inculpatory evidence had been offered, it would have been excluded.") (emphasis added). Perrot cites no "controlling authority" or "consensus of cases of persuasive authority," *see Wilson v. Layne*, 526 U.S. 603, 617 (1999), which would have informed Oakes that using a widely accepted method of scientific analysis to formulate an expert opinion could subject him to liability if, decades later, the scientific consensus shifted to a conclusion that the method is not reliable. *See Kennedy*, 552 F. App'x at 793 n.6 (10th Cir. 2014) (FBI agent's use of a method of scientific analysis that was subsequently discredited did not violate clearly established law given the "widespread judicial acceptance of testimony relying on [that method] during the relevant time period"). Therefore, there was no clearly established law that would have put Oakes on notice that his conduct constituted a constitutional violation.

Oakes has not argued that Perrot is precluded from arguing that he "contributed" to Perrot's conviction. Pl. Resp. at 15. Rather, Oakes has shown that the Massachusetts Superior Court judgment

granting Perrot a new trial precludes any argument that the hair evidence presented against him was not scientifically supported. Defs. Mem at 20-23. It is of no moment that the exact legal claims Perrot makes here were not made in the Massachusetts Superior Court case in which he secured a new trial. Nor does it matter that the parties are not identical. *Kyricopoulos v. Town of Orleans*, 967 F.2d 14, 16 (1st Cir. 1992) ("Massachusetts no longer requires mutuality of parties to invoke issue preclusion."). Regardless of the specific claim in which it is presented in this case – *i.e.*, evidence fabrication, withholding of exculpatory evidence, malicious prosecution – the *issue* of whether hair microscopy was "junk science" at the time of Perrot's trial has already been resolved against Perrot. *Id.* at 23 (citing *Perrot*, 2016 380123 at *44). In fact, if hair microscopy had not been supported by a general consensus within the scientific community at the time of the investigation which led to Perrot being prosecuted, Perrot would not have been able to cite the "new consensus" (at the time of his last appeal) on the limitations and nature of hair microscopy as "newly available" evidence warranting a retrial. *See Perrot*, 2016 WL 2016 WL 380123, at *25, 37, 42-43.[5]

**B.     Perrot Fails To State A Due Process or Malicious Prosecution Claim.**

Perrot devotes significant effort to rebutting an argument that Defendants Eubanks and Oakes have not made. The defendants have not argued against the general existence of a clearly established protection from fabricated evidence or the suppression of exculpatory evidence. *See* Pl. Resp. at 20-25. However, none of cases cited by Perrot, *see id.*, recognizes a claim against an expert witness for failure to disclose exculpatory evidence. While Perrot offers conclusory allegations lumping Eubanks

---

[5] *See also Rodwell v. Commonwealth*, 432 Mass. 1016, 1017 (2000) ("If a defendant fails to raise a claim that is generally known and available at the time of trial or direct appeal or in the first motion for postconviction relief, the claim is waived."); *Commonwealth v. Gagliardi*, 418 Mass. 562, 565 (1994) (defendant cannot use a motion for a new trial to compel consideration of questions of law on which he had had his day in an appellate court or has foregone the opportunity), *cert. denied*, 513 U.S. 1091 (1995).

and Oakes in with the "Springfield Police Defendants," Compl. ¶ 130, Perrot offers no plausible alle-

gation that either Eubanks or Oakes joined in an alleged effort by the Springfield Police defendants

to wrongfully charge Perrot with a crime. An allegation that certain Springfield Police defendants

personally delivered evidence specimens to Eubanks and Oakes for scientific analysis, and spoke

poorly of Perrot during that meeting, *see* Compl. ¶¶ 75, 90, does not plausibly establish that Eubanks

and Oakes were invited into and joined in a plot to frame Perrot. Regardless of what other named

defendants are alleged to have done, there are no plausible allegations that Eubanks or Oakes coerced

Perrot into a confession, conspired to frame Perrot, or had an opportunity and duty to intervene in

Perrot's prosecution but did not do so. Compl. ¶ 25.

With respect to the substance of Perrot's allegations of evidence fabrication and suppression,

the defendants have shown that those allegations are wholly conclusory and thus insufficient to state

a claim. *See* Defs. Mem. at 23-26. Perrot offers no facts supporting a plausible inference that Oakes

knew there was no match between Perrot's hair and hair recovered from the crime scene and that

Oakes deliberately suppressed this information. Nor does Perrot offer facts supporting a plausible

inference that Eubanks falsely "reported" that Perrot's blood was "consistent" with blood from the

crime scene or "buried" evidence of blood tests whose results were inconsistent with Perrot.[6]

Perrot's reliance upon *Hernandez-Cuevas* to support his federal malicious prosecution claim is

unavailing. The claim in *Hernandez-Cuevas* was based upon the Fourth Amendment. 723 F.3d at 99-

101. Perrot's complaint does not assert a Fourth Amendment claim against Defendants Eubanks and

Oakes. *See* Compl. ¶ 130 (asserting claims under the Fifth and Fourteenth amendments). Moreover,

---

[6] The argument that "no conclusions could be drawn" from the blood tests conducted by Eubanks, see Compl. ¶ 80, was made by Perrot's counsel during closing arguments and thus put before the trier of fact in his criminal case. *See Perrot*, 2016 WL 380123, at *22 (citing M.P.'s testimony that blood stain on the bed was from her uncle, questioning how results could be obtained from the small stain sample, and questioning margin of error in blood analysis) (citing Trial Tr.).

*Hernandez-Cuevas* was decided in 2013 and was based upon conduct that occurred in 2007. *Id.* at 95-96. Therefore, *Hernandez-Cuevas* provides no support for a federal malicious prosecution claim based upon actions which allegedly took place between 1985 and 1992. *Mlodzinski v. Lewis*, 648 F. 3d 24, 32-33 (1st Cir. 2011) (identifying "whether the right was 'clearly established' at the time of the defendant's alleged violation" as the second step in the qualified immunity analysis) (citing *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011)).

Twelve years before *Hernandez-Cuevas*, in a case that involved conduct that occurred in 1994, the First Circuit held that the Due Process Clause, the basis for Perrot's claims, could not serve as the basis for a federal malicious prosecution claim. *See Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir. 2001). The First Circuit observed that:

> It is perfectly clear that the Due Process Clause cannot serve to ground the appellants' federal malicious prosecution claim. No procedural due process claim can flourish in this soil because Massachusetts provides an adequate remedy for malicious prosecution. Similarly, a plurality of the Supreme Court has concluded that "substantive due process may not furnish the constitutional peg on which to hang" a federal malicious prosecution tort. We have followed the Court's lead in this respect, and we hew to that line today.

*Id.* (internal citations omitted). *Cf. Manuel v. City of Joliet*, 137 S. Ct 911, 919 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *id.* at n.8 ("Whatever its precise form, if the proceeding is tainted—as here, by fabricated evidence—and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights.").

**CONCLUSION**

For the reasons stated above and in the Individual Federal Bureau of Investigation Defendants' Motion to Dismiss, Perrot's Complaint fails to state any claim against either Defendant Eubanks or Defendant Oakes and should be dismissed as against both of them.

Dated: October 30, 2018


Respectfully Submitted,

| | |
|---|---|
| CHAD READLER | ANDREW LELLING |
| Acting Assistant Attorney General | United States Attorney |
| Civil Division | District of Massachusetts |
| | |
| C. SALVATORE D'ALESSIO | ANNAPURNA BALAKRISHNA |
| Director, Torts Branch | Assistant United States Attorney |
| Civil Division | District of Massachusetts |

RICHARD MONTAGUE
Senior Trial Counsel

/s/ *Glenn S. Greene*
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314
Email: Glenn.Greene@usdoj.gov

Attorneys for Defendants Wayne Oakes and William Eubanks

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon all counsel of record to this proceeding by ECF, facsimile, or mailing the same by first class United States mail, postage pre-paid on this 30th day of October, 2018.

/s/ *Glenn S. Greene*