# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEORGE PERROT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | C.A. No. 18-cv-10147-DPW |
| ) | **Leave to File Granted on** |
| THOMAS KELLY, et al. ) | **November 14, 2018** |
| ) | |
| Defendants, ) | |

## REPLY MEMORANDUM IN SUPPORT OF
## INDIVIDUAL FEDERAL BUREAU OF INVESTIGATION DEFENDANTS'
## MOTION TO STAY DISCOVERY

ii

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. iii

**ARGUMENT** ............................................................................................................................. 1

**CONCLUSION** ........................................................................................................................ 4

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ............................................................................................................. 1, 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 1

*Behrens v. Pelletier*,
   516 U.S. 299 (1996) ................................................................................................................ 3

*Crawford-El v. Britton*,
   523 U.S. 574 (1998) ............................................................................................................. 2, 3

*Gregoire v. Biddle*,
   177 F.2d 579 (2d Cir. 1949) ................................................................................................... 4

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ......................................................................................................... 2, 3, 4

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ............................................................................................................. 2, 3

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................................ 2

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ............................................................................................................. 1, 3

*R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*,
   584 F.3d 1 (1st Cir. 2009) ...................................................................................................... 4

*Rosario Diaz v. Gonzalez*,
   140 F.3d 312 (1st Cir. 1998) .................................................................................................. 2

*Siegert v. Gilley*,
   500 U.S. 226 (1991) ................................................................................................................ 1

## ARGUMENT

In his response to the Individual Federal Bureau of Investigation Defendants' Motion to Stay Discovery, Plaintiff confuses the substantive right to protection from the burdens of discovery with a mere procedural entitlement. That confusion is fatal to Plaintiff's Response ("Pl. Resp.").

Contrary to Plaintiff's argument, Defendants Eubanks and Oakes are not trying "to self-help themselves to a stay" of discovery. Pl. Resp. at 2. The Supreme Court has repeatedly held that qualified immunity shields government officials not only from liability, but also from discovery and the other burdens of litigation, and that discovery should therefore not proceed until the threshold question of immunity has been resolved. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) ("The basic thrust of the qualified immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.' ") (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring)); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("We have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that " 'insubstantial claims' against government officials [will] be resolved prior to discovery.") (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n. 2 (1987)). Accordingly, in their Motion to Stay Discovery, Defendants Eubanks and Oakes have properly asserted the protection from discovery that inheres when a federal official invokes the qualified immunity defense.

Plaintiff's argument that the Supreme Court has articulated "a number of factors" for the courts to consider in determining whether to stay discovery while a motion to dismiss on the basis of qualified immunity is pending, *see* Pl. Resp. at 2, is flatly wrong. No Supreme Court precedent supports Plaintiff's claim that the question of a stay pending disposition of a qualified immunity defense is to be decided under discretionary stay standards in which a court handicaps the likelihood of success on the qualified immunity defense and assesses the harm to the defendants in denying a stay. *See id.* (citing factors for a discretionary stay). Thus it is not surprising that the sole Supreme Court case cited by

Plaintiff in an attempt to support this proposition is not even a qualified immunity case, but rather addresses the standard governing a court of appeals' authority to stay an alien's removal pending judicial review. *See id.* at 2 (citing *Nken v. Holder*, 556 U.S. 418, 426 (2009) (finding that "traditional" stay factors governed request for a stay pending judicial review of a removal decision)).

Supreme Court precedent makes clear that for purposes of determining whether a stay is appropriate in a case where qualified immunity has been raised, the only issue to be decided by the court is whether the defendant has raised qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("Until th[e] threshold immunity question is resolved, discovery should not be allowed."); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[I]f the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery.") (citing *Harlow*, 457 U.S. at 818). Accordingly, the only argument that Defendants Eubanks and Oakes need make to support a stay of discovery in "*this particular case*," *see* Pl. Resp. at 2 (emphasis in original), is that they have in fact raised the defense of qualified immunity. The defendants have done so and Plaintiff does not dispute this.

A stay pending a qualified immunity determination is not a discretionary procedural determination, as Plaintiff suggests. Courts of appeals have acknowledged that district court orders permitting discovery before ruling on a legal defense of qualified immunity amount to a constructive denial of the defense that is subject to immediate appeal under the collateral order doctrine. *See, e.g., Rosario Diaz v. Gonzalez*, 140 F.3d 312, 314 (1st Cir. 1998) ("district court's refusal to consider their motions for summary judgment is tantamount to the law based rejection of a claim of qualified immunity, and thus appellate jurisdiction over their interlocutory appeals is proper"). Protecting officials from discovery is the very reason why dismissal-stage rulings denying immunity are immediately appealable in the first

2

place. *See Behrens v. Pelletier*, 516 U.S. 299, 308 (1996).

Moreover, even if the "traditional" stay factors are applied, it would be an abuse of discretion, in light of the Supreme Court's qualified immunity jurisprudence, to apply those factors in a way that allowed discovery before ruling on the dismissal motion asserting qualified immunity. Of the four factors Perrot points to, the first factor—likelihood of success on the merits—is largely irrelevant for the reasons already explained. And unlike other potential stay situations, there is no need for the Court to forecast how the lawsuit might develop. Qualified immunity presents a purely legal question already ripe for resolution. For many of the same reasons, Perot's second proposed factor—whether "the FBI defendants will be irreparably injured absent a stay," Pl. Resp. at 3, comes out in Eubanks' and Oakes' favor. The defense of qualified immunity is effectively lost if officials must participate in discovery bearing on the merits of claims that fail to allege a violation of clearly established law. *See Mitchell*, 472 U.S. at 526. Without a stay, Defendants Eubanks and Oakes lose a right important enough to warrant an immediate appeal from denial of a dismissal motion. *See Behrens*, 516 U.S. at 308. Conversely, issuance of a stay could not seriously be thought to injure Perrot; he has no entitlement to discovery before the immunity issue is resolved, and he can proceed with discovery against other parties in the meantime. Finally, and again, as already explained, the Supreme Court has settled where the public interest lies. "[T]here is a strong public interest in protecting public officials from the costs associated with the defense of damages actions," *Crawford-El*, 523 U.S. at 590 (footnote omitted), including discovery. *Id.* at 597-98; *see also Pearson*, 555 U.S. at 231. *Harlow* and the many precedents following it strike the balance, then, unalterably in favor of deferring discovery until threshold qualified immunity issues are resolved. *See* 457 U.S. at 813-14, 817-18; *see also Anderson*, 483 U.S. at 642 ("We have emphasized that the doctrine of qualified immunity reflects a balance that has been struck 'across the board.' ") (quoting *Harlow*, 457 U.S. at 821 (Brennan, J. concurring)).

It is of no moment whether Defendants Eubanks and Oakes are currently employed by the

federal government. *See* Pl. Resp. at 4-5. The Supreme Court has never said that the protection of qualified immunity ceases when an official leaves office. To the contrary, *Harlow*, *Mitchell*, and *Iqbal* all involved former officials and all decried the burdens of discovery prior to resolution of the qualified immunity question. Moreover, in *Harlow*, the Supreme Court identified four categories of "social costs" that warrant the rule of qualified immunity – "the expenses of litigation, the diversion of official energy from pressing public issues, [ ] the deterrence of able citizens from acceptance of public office . . . [and] the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Harlow*, 457 U.S. at 814 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)). All of these burdens are implicated by suits against former officials. For example, the timing of a lawsuit is irrelevant to risk aversion. Dread of a post-employment lawsuit may work as an even greater deterrent to either accepting or vigorously performing public service. Nor do litigation costs vanish when an employee leaves government. Post-employment suits even introduce new ones, like time necessarily taken away from private-sector employment. But as already shown the question is not open to re-evaluation. *Harlow* and other precedents plainly establish that qualified immunity runs with potential liability, not employment status. And just as an official does not escape or narrow his potential liability by leaving office, he remains entitled to all of the protections of the immunity defense.

To permit discovery in the face of the Supreme Court's several precedents foreclosing it would be a clear error of law. And a material error of law is a per se abuse of discretion. *R & G Mortg. Corp. v. Federal Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009). This Court should reject Plaintiff's invitation to ignore the Supreme Court's repeated commands about how qualified immunity is to be litigated and should grant the defendants' motion for a stay of discovery.

## CONCLUSION

For the reasons stated above, and in their Motion to Stay Discovery, the Court should stay

4

discovery against Defendants Eubanks and Oakes pending the disposition of their qualified immunity defense.

Dated: November 14, 2018

Respectfully Submitted,

| | |
|---|---|
| JOSEPH H. HUNT | ANDREW LELLING |
| Assistant Attorney General | United States Attorney |
| Civil Division | District of Massachusetts |
| | |
| C. SALVATORE D'ALESSIO | ANNAPURNA BALAKRISHNA |
| Director, Torts Branch | Assistant United States Attorney |
| Civil Division | District of Massachusetts |

RICHARD MONTAGUE
Senior Trial Counsel

/s/*Glenn S. Greene*
GLENN S. GREENE
(New York State Bar No. 2674448)
Senior Trial Attorney
U.S. Department of Justice, Civil Division
Constitutional and Specialized Tort Litigation
P.O. Box 7146, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4143
Fax: (202) 616-4314
Email: Glenn.Greene@usdoj.gov

Attorneys for Defendants Wayne Oakes and William Eubanks

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon all counsel of record to this proceeding by ECF, facsimile, or mailing the same by first class United States mail, postage pre-paid on this 14th day of November, 2018.

*/s/Glenn S. Greene*