# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

GEORGE PERROT,             )
                                )
                                )  Case No. 18-cv-10147

Plaintiff,               )
                                )

v.                     )
                                )

JUDITH KELLY, as administrator for the  )  Hon. Judge Woodlock
Estate of THOMAS KELLY, *et al.*      )
                                )  **JURY TRIAL DEMANDED**

Defendants.            

## PLAINTIFF'S FURTHER RESPONSE
## TO THE DEFENDANTS' MOTION TO DISMISS

At oral argument on Defendants' motions to dismiss (Dckt Nos. 129, 137, 140, 142, 144, 146 and 159) held on September 4, 2019, this Court ordered Plaintiff to provide further specific allegations about the role that each Defendant (excluding Defendants Eubanks, Oakes, and the United States of America, whom the Court indicated it was dismissing from this litigation) played in the misconduct about which Plaintiff complains in his amended complaint (Dckt. No. 126), and that the Plaintiff provide a basis for each allegation, including a citation to the "record" where applicable. Plaintiff responds to the Court's direction as follows:

Although the Court directed Plaintiff not to re-argue issues of law in this pleading, Plaintiff must clarify two points at the outset.  First, Plaintiff respectfully asserts that he has already met the pleading requirements of the Federal Rules of Civil Procedure for each of the Defendants in this litigation, both as to the specificity of his allegations and as to the evidentiary basis for his allegations, as argued extensively in Plaintiff's Omnibus Response to Defendants' Motions (Dckt. No. 156.)  Second, as Plaintiff also argued in response to Defendants' motions, it is improper for either Defendants or this Court to treat the "record," as the Court defined it to include underlying state court decisions summarizing the details of Plaintiff's case, as true.  None of these "facts" are

susceptible to judicial notice or stand as *res judicata* determinations of what occurred in Plaintiff's case. Indeed, once Plaintiff's conviction was overturned, all prior decisions relating to that conviction lose preclusive effect. Plaintiff cannot cite to these decisions as evidence of what occurred because these findings are not dispositive or correct as to his conviction that was ultimately vacated – indeed, they are factual findings that were made because, as Plaintiff set forth in well-pled allegations in his complaint, Defendants were hiding exculpatory evidence, fabricating inculpatory evidence, and hiding evidence of their own involvement in a conspiracy to wrongfully convict him. Plaintiff does not accept this record as true or proffer it as an account of what happened in this case, and this Court should not look to it for evidence supporting (or refuting) Plaintiff's claims either.

Plaintiff has alleged in his amended complaint that Defendants, individually and in concert, coerced and fabricated a false confession; planted physical evidence and fabricated statements to connect that evidence to Plaintiff and to the crime; and deliberately suppressed exculpatory evidence about how they undertook their conspiracy to frame him, and about an alternative offender. Those deliberate actions were undertaken pursuant to the policy and practice of the City of Springfield. The allegations in his complaint remain true and the operative allegations he has made about Defendants' wrongdoing. Plaintiff provides the following additional information about Defendants' liability and the basis for the allegations he has made in his amended complaint (Dckt. No. 126):

**Thomas Kelly**

Thomas Kelly ran the Crime Prevention Bureau evening shift and was responsible for running the sexual assault unit – investigating cases like the one for which Plaintiff was convicted. He was the supervising sergeant of other defendants in this case including Defendant Popko. (Popko Dep. Tr. at 22, 86.) An affidavit submitted in support of a search warrant in this case reflects that Defendant Kelly participated in interviewing Plaintiff when he was arrested on December 7. Plaintiff has alleged that his confession during this interrogation was fabricated and

that he was abused during this interrogation.  This confession was introduced at trial to implicate

him in the crime.

Defendant Kelly also coordinated a lineup along with Defendants Arpin and Bloom (as

reflected in Defendant Arpin's Interrogatory answers) that was designed to induce M.P. to pick

Plaintiff as her assailant (which she did not do). This suggestive identification procedure was part of

the conspiracy effort that led to Plaintiff's wrongful conviction.

Thomas Kelly also collected and submitted evidence in this case that Plaintiff alleges is

fabricated, including gloves and stains from M.P.'s home – records reflect he completed the

property receipts in these items.  Defendant Popko testified that Defendant Kelly also was at M.P.'s

home on November 30, 1985.  (Popko Dep. Tr. at 88.)

Defendant Bloom testified in his deposition that the false confession that others have

claimed Defendant Bloom fabricated was actually fabricated by Defendant Kelly.  (Bloom Dep. Tr.

at 45-47.)

Defendant Bloom also testified in his deposition in this case that Thomas Kelly had many

complaints made over the years for him for abuse and that this was well-known in the department

yet no action was taken to rectify this pattern of misconduct.  (Bloom Dep. Tr. 49, 80) ("Tommy

Kelly had more brutality charges than I change my underwear.")

**Thomas Jarvis**

Defendant Jarvis was involved in interrogating Plaintiff – he took the December 7, 1985

statement from Plaintiff where Plaintiff falsely confessed to breaking into M.P.'s home, and he was

involved, as Plaintiff has alleged, in abusing Plaintiff during that interrogation.  This confession was

introduced at trial against Plaintiff.  Plaintiff has made specific allegations about Defendant Jarvis'

improper conduct toward Plaintiff in that interrogation.  (Dckt. No. 126 at ¶ 49.)

**Richard Kane**

Records reflect that Defendant Kane was involved in this investigation as well – he signed reports indicating that he interviewed Plaintiff and took false statements from him.  He was part of a conspiracy to frame Plaintiff.

**Charles Arpin**

Defendant Arpin was also involved in Plaintiff's interrogation – his name is on reports from the evening of December 7, 1985 indicating that he participated in interrogating Plaintiff and collecting physical evidence from him, and he approved false reports from Defendant Jarvis about statements Plaintiff made during these interrogations – submitted reports reflect his approval.

Per his Interrogatory answers, Defendant Arpin also coordinated a lineup along with Defendants Kelly and Bloom, that was designed to induce M.P. to pick Plaintiff as her assailant (which she did not do). As noted above, that lineup was part of the conspiracy to frame Plaintiff.

**Thomas Kennedy**

Thomas Kennedy participated in this investigation, including by collecting physical evidence from Plaintiff and by travelling to Washington D.C. with Defendant Bloom to personally take forensic evidence to the FBI Defendants for testing, and conspiring with Bloom and the FBI Defendants to frame George Perrot. It was highly unusual for officers to personally drive and deliver physical evidence to the FBI, yet that was what was done in this case in an effort to ensure that the fabricated hair and serological results came back a match to Plaintiff.

**Paul Glantz**

Defendant Glantz participated in coercing a false statement from Plaintiff – he was present in the police station during his interrogation and, as Plaintiff previously testified during state court proceedings, Mr. Glantz sat in front of his cell after Plaintiff was arrested and made noise to keep him awake.  Plaintiff also testified that multiple officers were involved in interrogating him and unlawfully coercing him into giving a false confession fabricated by the Defendants.

3

**Marianne Popko**

Defendant Popko searched M.P.'s home after her assault and submitted into evidence certain evidence from M.P.'s home that Plaintiff alleges is fabricated, including sheets and bedding - records reflect she completed the property receipts in these items.  Defendant Popko also interviewed M.P. and had personal knowledge of what M.P. was telling police about her attacker. (Clapprood Dep. Tr. at 56-57.)

**Ronald St. Germain**

Defendant St. Germain participated in searching Plaintiff's home and collecting evidence that was fabricated in this case – his name is on property receipts from those searches.

Defendant Kelly's previous testimony suggests that Defendant St. Germain was involved in Plaintiff's interrogation – he testified that Defendant St. Germain prepared a search warrant affidavit reflecting information that Plaintiff "told us."  St. Germain's search warrant affidavit does reflect information he claimed to have received from Plaintiff.

**Andrew Canevari**

Defendant Kelly has previously admitted that Defendant Canevari was involved in interrogating Plaintiff on November 7, and thus his involvement in the misconduct about which Plaintiff complains with respect to this interrogation.

**Cheryl Clapprood**

Defendant Clapprood testified in her deposition and in her interrogatories that she interviewed M.P. and was present at her home when police searched for and collected physical evidence.  (Clapprood Dep. Tr. at 50-51.)  She therefore had personal knowledge both about what M.P. was telling police about her assailant, and about what physical evidence was located or even searched for at the scene.  In this way, she knew that M.P. was describing someone who was *not*

4

Plaintiff and knew that the Defendants were fabricating the meaning behind certain physical evidence, yet she took no action to correct any of this misconduct.

**Francis Bloom**

Defendant Bloom was present at the police station on December 7, 1985 during Plaintiff's interrogation, and coordinated a lineup along with Defendants Kelly and Arpin (according to Defendant Arpin's Interrogatory answers), that was designed to induce M.P. to pick Plaintiff as her assailant (which she did not do). All of this misconduct occurred during the investigatory phase of Plaintiff's criminal case.

As Defendant Bloom testified during his interrogation, and as records in this case demonstrate, Defendant Bloom went to Washington, D.C., to personally take forensic evidence to the FBI Defendants for testing, and he conspired with them to frame George Perrot.  Records from the case show that after that date he continued to communicate Mr. Eubanks about evidence in the case.

**City of Springfield (*Monell* Claims)**

Plaintiff has already made fulsome pleadings about how the City of Springfield is liable under *Monell*, and offers no further explanation of those claims. Indeed, Plaintiff has not yet taken discovery on his *Monell* claim—unlike some of the individual claims—and therefore is not in a position to further plead. Plaintiff does State that Defendant Bloom, in his deposition, explained his view that Defendant Kelly had a long history of complaints and that politically connected people in Springfield were covering for Defendant Kelly because of his personal relationships with them. (Bloom Dep. Tr. at 50-51.)

**CONCLUSION**

Plaintiff has provided well-pled allegations about Defendants' misconduct in this case that satisfy the Federal Rule of Civil Procedure 12(b)(6)'s pleading standards.  This Court should deny the Defendants' motions to dismiss.

RESPECTFULLY SUBMITTED,

/s/ Tara Thompson
*Attorney for Plaintiff*
Arthur Loevy
Jon Loevy
Debra Loevy
Gayle Horn
Steve Art
Tara Thompson
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
Ph: (312) 243-5900
Fax: (312) 243-5902
tara@loevy.com

6

## CERTIFICATE OF SERVICE

I, Tara Thompson, certify that on September 9, 2019, Plaintiff's Further Response to the Defendants' Motions to Dismiss was sent via CM/ECF to all counsel of record.

/s/ Tara Thompson
*Counsel for Plaintiff*