UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GEORGE PERROT<br>    Plaintiff,<br><br>    v.<br><br>THE CITY OF SPRINGFIELD, et. al.,<br>    Defendants | CIVIL ACTION NO: 18-CV-10147<br><br><br>PLAINTIFF'S SUPPLEMENTAL<br>AUTHORITY BRIEF |

Plaintiff, George Perrot, by and through his attorneys, Loevy and Loevy, respectfully submits this Supplemental Authority Brief in support of his Motion for Leave to Subpoena Mental Health Records and Criminal Offender Record Information ("CORI") of Alissa Griffin in accordance with the Court's February 2, 2024 Order. In support thereof, Plaintiff states as follows:

**INTRODUCTION**

On January 16, 2024, Mr. Perrot moved for an order requesting permission to subpoena Ms. Griffin's mental health records and CORI in light of her deposition testimony. Defendant City of Springfield filed a response brief opposing this request on January 26, 2024. The Court heard oral argument on this issue on February 2, 2024 and subsequently asked Mr. Perrot to file supplemental briefing that discussed (1) relevant case law on the request for Ms. Griffin's medical records; (2) proposed limitation on his request for medical records, and (3) proposed limitations on Plaintiff's request for Ms. Griffin's CORI.  *See* Dkt. 317.

Moreover, the Court requested that Mr. Perrot specify the timeframe from which he seeks Ms. Griffin's medical records. Thus, if allowed, Mr. Perrot would only subpoena Ms. Griffin's medical records from 2016-2021. Mr. Perrot and Ms. Griffin met in 2017 and were in an on-and-

1

off relationship until mid-2018. Mr. Perrot would be seeking her medical records from a five-year period, beginning with one year prior to him meeting Ms. Griffin and for three years after their relationship ended.[1]

To be clear, Mr. Perrot is only seeking Ms. Griffin's (1) CORI, (2) medical records from four known providers starting in 2016 through 2021, and (3) mental health records from the same time period, excluding therapy notes or confidential communications. Plaintiff is not requesting any therapy notes or therapist communications that are protected by the federal privilege. Mr. Perrot's request is limited and tailored to produce information that is necessary to fully cross-examine this witness.

## ARGUMENT

### I. Courts Routinely Allow Parties to Subpoena Non-Party's Medical Records.

If the Court grants Mr. Perrot's motion, it will not be the first to allow for such relief.

In fact, there is ample legal authority supporting the production of Ms. Griffin's medical documents in this case. *See, e.g., United States v. Mazzola*, 217 F.R.D. 84, 89-90 (D. Mass. 2003) (finding that the defendants were entitled to limited disclosure of medical records pertaining to the witness's mental stability and drug use for the purpose of impeachment); *N.O. v. Callahan,* 110 F.R.D. 637, 647 (D. Mass. 1986) (compelling the defendants to produce the medical and mental health records of approximately 50 nonparty witnesses who were also putative class members); *see also*, *Reed v. Wexford Health Sources, Inc.*, No. 20-CV-01139-SPM, 2022 WL 4483949 at *2 (S.D. Ill. Sept. 27, 2022) (ordering the third party prison to produce several nonparty inmates' medical records); *Gomes v. Lake Cnty., Ill.*, No. 12 C 4439,

---

[1] Mr. Perrot is seeking records from this time period because Ms. Griffin testified that she was diagnosed with a brain injury sometime after the incident in May 2018 and she gave a media interview in May 2019 concerning the same.

2013 WL 2156042, at *3 (N.D. Ill. May 15, 2013) (holding that the medical and non-privileged mental health records that do not contain or reveal the private communications between an inmate and the mental health professional must be produced); *Mezu v. Morgan State U.*, 269 F.R.D. 565, 580 (D. Md. 2010) (concluding that the plaintiff's daughter's medical records were relevant and discoverable to plaintiff's Family and Medical Leave Act interference claims). Thus, there is precedent for allowing a party to obtain medical records of a nonparty witness. And as such, Mr. Perrot requests that this Court allow the same.

Indeed, parties are not *per se* prohibited from obtaining the medical records of non-party patients. *See Martinez v. Hongyi Cui*, No. CV 06-40029-FDS, 2007 WL 9684162, at *3 (D. Mass. Aug. 28, 2007). In assessing whether to permit the production of a non-party's medical records, courts typically weigh an individual's privacy interest in their medical information with the moving party's need for the information to support or defend claims in a lawsuit. *See Mazzola*, 217 F.R.D. 637 at 88-89; *In re Search Warrant (Sealed)*, 810 F.2d 67, 71-72 (3d Cir. 1987) (reasoning that an individual's privacy interest in medical records must be balanced against the legitimate need of others in obtaining disclosure); *United States v. Lindstrom*, 698 F.2d 1154, 1166-67 (11th Cir. 1983).

Here, the parties' deposition of Ms. Griffin revealed various medical and mental health issues, including substance dependency during the time she interacted with Mr. Perrot. Ms. Griffin also testified that Mr. Perrot allegedly confessed to her that he committed the 1985 crimes he was accused and later exonerated of that are the origin of this lawsuit. As noted by the Court, such a statement would undoubtedly have a substantial impact on Mr. Perrot's claims if believed. Given that, Mr. Perrot must be allowed to fully examine Ms. Griffin's ability to accurately perceive and recall events, and her credibility.

The facts here align closely with those in *Mazzola*, where the court determined that the defendants were entitled to some of a witness's medical records for the purpose of impeachment. 217 F.R.D. at 89-90. Even though *Mazzola* was a criminal case, the court's reasoning serves as a cogent guide for the present analysis.[2] In *Mazzola*, the court reasoned that "[m]ental disorders such as addiction to drugs are highly probative of credibility and may materially affect accuracy of witness's testimony" and that the "scope and depth of [witness]'s drug use during the time period covered by the Indictment, as evidenced by the medical records, may impact his ability to perceive the events in question." *Id.* at 89.

So too is the case here. Mr. Perrot is requesting a limited set of records that would allow him to gauge Ms. Griffin's credibility, memory recall, and the accuracy of perception of her interactions with Mr. Perrot. Given that Ms. Griffin's testimony addresses an issue that is central to this case, the balancing test favors the production of Ms. Griffin's records.

## II. Ms. Griffin's Medical Records Are Not Privileged.

The Federal Rules of Civil Procedure provide a "liberal atmosphere" for discovery. *See Hickman v. Taylor*, 329 U.S. 495, 505 (1947); *see also*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 22, 34 (1984); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001); *SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000). Indeed, the Rules do not distinguish between public and private information, nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery. *Seattle Times Co.*, 467 U.S. at 35.

### A. HIPAA Does Not Prevent Mr. Perrot's Request for Access to Certain Medical Records of Ms. Griffin.

---

[2] *See also U.S. v. Butt*, 955 F.2d 77, 82 (1st Cir. 1992) (evidence "about prior condition of mental instability that 'provide[s] some significant help to the jury'" in evaluating "'witness's ability to perceive or to recall events or to testify accurately'" is relevant).

4

Generally, the Health Insurance Portability and Accountability Act ("HIPAA") "prevents the disclosure of health-related information without the consent of the persons whose health information is at issue." *Ligas v. Maram*, No. 05 C 4331, 2007 WL 2316940, at *5 (N.D. Ill. Aug. 10, 2007) (citing 45 C.F.R. §§164.508, 164.512). However, HIPAA permits protected health information to be revealed in discovery if:

> The party seeking the information either notifies the patient (or at least makes a good faith effort to do so) or makes a "reasonable effort" to secure a qualified protective order, that is, an order that prohibits the use or disclosure of the information outside the litigation and requires the return or destruction of the information at the end of the litigation.

*Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 925–926 (7th Cir. 2004) (citing 45 C.F.R. §164.512(e)(1)(v)).

The HIPAA provisions do not create a privilege against production or admission of evidence; they merely create a procedure for obtaining protected medical records in litigation. *United States v. Bek*, 493 F.3d 790, 802 (7th Cir. 2007). HIPAA protects a person's protected health information ("PHI") by providing that a person's PHI may only be disclosed if the person is notified and consents to disclosure. *See* 45 C.F.R. §§164.508; 164.510. But HIPAA also provides for multiple exceptions to these protections. *See* 45 C.F.R. §164.512. Among the exceptions is disclosure "[i]n response to a subpoena, discovery request, or other lawful process." *Id.* §164.512(e)(1)(ii).

In such a situation, a third-party's PHI may be disclosed without the person's notice or consent if the requesting party has secured "a qualified protective order." *Id.* § 164.512(e)(1)(ii). A "qualified protective order" is one that (a) prohibits the parties from using or disclosing a third party's PHI for any purpose other than the lawsuit, and (b) requires the return or destruction of the PHI at the conclusion of the lawsuit. *Id.* Thus, whereas HIPAA's enabling regulations

5

generally protect the privacy a person's PHI, in the course of litigation where PHI is requested through "a subpoena, discovery request, or other lawful process," § 164.512(e)(1)(ii), HIPAA protects the privacy of a person's PHI through a qualified protective order instead. *See* §164.512(e)(1)(v).

And HIPAA regulations do not trump the rules of civil procedure with respect to discovery obligations or questions of relevance. *BNSF Ry. Co. v. Lafarge Sw., Inc.*, No. 06-cv-1076, 2008 WL 11322949, at *5 (D.N.M. May 9, 2008). Nothing in HIPAA blocks Mr. Perrot from acquiring Ms. Griffin's medical records with a court order and a qualified protective order.

Moreover, the safeguards of HIPAA are in place here. As Plaintiff's counsel mentioned during the hearing, Mr. Perrot made a good faith effort to contact Ms. Griffin by sending her a letter via certified mail explaining that he was seeking to obtain some of her medical records and CORI. *See* Exhibit A, Jan. 4, 2024.  This letter was delivered on January 10, 2024. *See* Exhibit B, USPS Delivery Receipt. The parties have also submitted a protective order that includes language that explicitly protects Ms. Griffin's information from dissemination. Thus, the principles and policy concerns underlying HIPAA do not exist here.

> B. *No Federal Common Law Privilege Prohibits Mr. Perrot from Obtaining Griffin's Records.*

Contrary to Defendant City's claim, Massachusetts State law does not apply to this analysis. In actions enforcing federal law, evidentiary privileges are governed by federal common law. *See* Fed. R. Evid. 501; *United States v. Whitney*, 2006 U.S. Dist. LEXIS 74522, *5 (D. Mass. 2006); *see also*, *Northwestern Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 926 (7th Cir. 2004) ("the evidentiary privileges that are applicable to federal-question suits are given not by state law but by federal law, Fed. R. Evid. 501…").

Federal common law does not recognize a general physician-patient privilege. *See Whalen v. Roe,* 429 U.S. 589, 602 n. 28 (1977) ("The physician-patient evidentiary privilege is unknown to the common law."); *United States v. Bek,* 493 F.3d 790, 802 (7th Cir. 2007) ("we can find no circuit authority in support of a physician-patient privilege, even after *Jaffee.*"); *Awalt v. Marketti*, 287 F.R.D. 409, 423 (N.D. Ill. 2012); *Martinez v. Hongyi Cui*, No. CV 06-40029-FDS, 2007 WL 9684162, at *3 (D. Mass. Aug. 28, 2007) ("federal common law also does not traditionally recognize a doctor/patient privilege and to date, there is no circuit authority recognizing such a privilege."). Therefore, Ms. Griffin's general medical records are not privileged.

Unlike for a doctor-patient relationship, federal law does recognize a privilege for a therapist-patient relationship. Confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence. *Jaffee v. Redmond,* 518 U.S. 1, 15 (1996). This privilege extends to confidential communications to a licensed social worker, and to "the notes taken during counseling sessions." *Id.* at 15, 18.

To the extent that Ms. Griffin saw a therapist or counselor, Mr. Perrot is not seeking private communications between her and the therapist. Nor is Mr. Perrot seeking any notes that may have been taken during sessions.

This "privilege protects only the substance of communications" between the patient and his treatment provider. *Silvestri v. Smith*, No. CV 14-13137-FDS, 2016 WL 778358, at *2 (D. Mass. Feb. 26, 2016) (citing *Howe v. Town of N. Andover*, 784 F. Supp. 2d 24, 34 (D. Mass. 2011)). It does not apply to "facts regarding the occurrence of psychotherapy, such as the name of the psychotherapist or dates and costs of treatment[.]" *Id.* Nor does it protect other non-

communicative information such as the nature of any diagnosis or treatment for a mental health condition. *Id.*

Accordingly, other than confidential communications as described above, Ms. Griffin's medical information does not fall within an applicable privilege in federal law. And such non-privileged information would include medications, hospitalizations, diagnoses, treatment, and surgeries. Thus, Ms. Griffin's medical records that do not contain therapy notes or confidential communications are *discoverable* under Rule 26.

**III.    Mr. Perrot's Proposed Limitations on his Request for Griffin's CORI**

If permitted, Mr. Perrot would request Ms. Griffin's CORI from Category Required 2, which includes all adult/youthful offender convictions, non-convictions, and pending offenses. Without a court order, Mr. Perrot would only be able to access the following CORI for Ms. Griffin[3]:

1. Misdemeanor convictions for one year following the disposition date or release from custody date, whichever is later;
2. Felony convictions two years following the disposition date or release from custody date, whichever is later;
3. Felony convictions for offenses punishable by five or more years in state prison but shall only be available for ten years following disposition or release from custody date, whichever is later;
4. All convictions for murder, voluntary manslaughter, involuntary manslaughter, and sex offenses (as defined in M.G.L. c. 6, § 178C) punishable by a term of incarceration in state prison, unless sealed, and
5. Any cases where the individual has been found not guilty by reason of insanity.

Pursuant to the applicable regulations, an attorney seeking to obtain a non-client's CORI, beyond what is available via Open Access to CORI, for litigation purposes shall submit a valid, signed court order directly to the DCJIS.803 Code Mass. Regs. § 2.07(3)(d), (e) (2021). Based on her deposition testimony, Ms. Griffin may only have been arrested and charged during the

---

[3] MGL c. 6, § 172(4).

8

incidents she described. Given that, Mr. Perrot wishes to obtain Required 2 Level CORI of Ms. Griffin, which is beyond what is available with Open Access.

Moreover, Mr. Perrot's CORI request would not include Ms. Griffin's juvenile records, probation records, or any sealed or expunged offenses. Lastly, Mr. Perrot believes that Ms. Griffin's CORI would be subject to the Protective Order that the parties submitted to the Court. Counsel intends to mark any CORI records as "Confidential" before producing them to other counsel as well.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff, George Perrot, respectfully requests that this Honorable Court grant his Motion for Leave to Subpoena certain medical and mental health records of Alissa Griffin and the CORI, as described above.

Respectfully Submitted,

*/s/ Gianna Gizzi*
*One of Plaintiff's Attorneys*

Arthur Loevy*
Jon Loevy*
Steven Art*
Debra Loevy
Mark Loevy-Reyes*
Gianna Gizzi*
Carla Agbiro
 LOEVY & LOEVY
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)
*Admitted pro hac vice