**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

GEORGE PERROT,
Plaintiff,
v.
THOMAS KELLY, et al.,
Defendants.

Civil Action No. 1:18-CV-10147-MPK

**DEFENDANT FRANCIS BLOOM'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT**

Defendant Francis Bloom ("ADA Bloom") hereby submits this memorandum of law in support of his Motion for Summary Judgment on all counts asserted against him in Plaintiff George Perrot's Amended Complaint alleging violations of the Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983. Based upon the undisputed facts adduced in this case, ADA Bloom is entitled to judgment as a matter of law on grounds of absolute prosecutorial immunity or qualified immunity. Even if he were not immune from liability, no reasonable jury could find that ADA Bloom's actions deprived the Plaintiff of any right secured by the United States Constitution. For the reasons set forth below, ADA Bloom respectfully requests that his Motion for Summary Judgment be **ALLOWED** and that all counts against him in the Plaintiff's Amended Complaint now be resolved in his favor.

**STANDARD OF REVIEW**

Summary judgment is appropriate on each claim raised if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of fact exists where the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Garcia-Garcia v. Costco*

*Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (quotations omitted). A fact is "material" if "its existence or nonexistence has the potential to change the outcome of the suit." *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010). This Court "must examine the record in the light most favorable to the nonmovant and must make all reasonable inferences in that party's favor." *Id.* (quotations omitted). "While [this Court must] resolve all reasonable inferences in favor of the non-moving party, [it] must ignore conclusory allegations, improbable inferences, and unsupported speculation." *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 24 (1st Cir. 2009) (quotations omitted). "When the party who bears the burden of proof at trial is faced with a properly constituted summary judgment motion," the burden shifts to him "to show that such a dispute exists." *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014).

**STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

By way of brief background, the Plaintiff's Amended Complaint alleged that ADA Bloom (1) fabricated evidence against him, (2) coerced him into falsely confessing, and (3) failed to intervene to prevent officers of the Springfield Police Department ("SPD") from fabricating evidence and unlawfully coercing his confession.[1] *See* Doc. No. 126 (Am. Compl.), ⁋ 138. After ADA Bloom moved to dismiss the Plaintiff's Amended Complaint on grounds of absolute and qualified immunity, *see* Doc. Nos. 142 and 143, this Court dismissed so much of the Plaintiff's § 1983 claim against ADA Bloom that was predicated on a theory of failure to intervene. This Court otherwise concluded that ADA Bloom was not entitled to immunity at the motion-to-dismiss stage to the extent the Plaintiff alleged that he fabricated evidence and coerced the Plaintiff's

[1] Because this Court is familiar with the lengthy procedural history of the Plaintiff's prosecutions and eventual grant of post-conviction relief, ADA Bloom does not repeat that background here, as it is not relevant to the question of whether he is entitled to summary judgment.

confession.[2] Doc. No. 187 (Report & Recommendation on Defendants' Motions to Dismiss), pp. 19-23; Doc. No. 202 (Memorandum & Order Adopting Report & Recommendation), pp. 3-4. Following discovery, the undisputed record evidence in this case, as it pertains to the allegations against ADA Bloom, is as follows:

1. ADA Bloom worked as a prosecutor in the Hampden County District Attorney's Office beginning sometime between 1975 and 1977, until around January of 1990. (Bloom Dep. 10:3-10, 14:9-24, hereinafter "**Exh. A** [page number]:[line number].")
2. As a prosecutor, ADA Bloom could not recall ever being assigned a case before someone was arrested, nor was he ever asked for advice on a matter by police before an arrest was made. (Exh. A 18:7-19, 20:19-24.)
3. On the evening of December 6, 1985, the Plaintiff, his girlfriend Lisa Eldridge, and his friends Robert Timmerman and Jeff Adkins were driving around Springfield, drinking, and using drugs. (Perrot Dep. 34:24-35:17, hereinafter "**Exh. B** [page number]:[line number].") In addition to consuming alcohol, the Plaintiff snorted cocaine and took Valium pills. (Exh. B 89:21-24, 90:1-10, 91:4-7.)
4. Sometime after 11:30 P.M., the Plaintiff was dropped off near his residence on Malibu Drive. (Exh. B 39:6-24, 40:1-13.) He then proceeded to Ellendale Circle and broke into Joseph McNabb's home. (Exh. B 33:7-12, 67:19-22, 115:10-19.) About half an hour later, the Plaintiff went to a Denny's restaurant and stole a woman's pocketbook. (Exh. B 36:22-24, 37:1.) He then returned home and passed out. (Exh. B 41:5-14.)

[2] This Court denied ADA Bloom's motion to dismiss to the extent he argued that he was protected by absolute immunity for alleged investigatory decisions in prosecuting the Plaintiff. *See* Doc. No. 187, p. 18.

5. In the early morning hours of December 7, 1985, approximately six uniformed police officers entered the Plaintiff's bedroom and placed him under arrest. (Exh. B 41:15 -43:7.) The Plaintiff was eventually brought to SPD headquarters. (Exh. B 48:19-20, 49:9-13.)

6. At the police station, the Plaintiff was booked and brought to a cell by an unknown number of officers. (Exh. B 49:14-24, 50:2-22.) While at the station that day, the Plaintiff was questioned four different times. (Exh. B 52:12-24, 53:2-5, 55:3-5, 56:5-12, 64:14-21, 72:21-24, 73:1-16.)

7. The Plaintiff had no reason to believe that each round of questioning was conducted by anyone other than a police officer. (Exh. B 370:10-15, 371:19-21, 372:21-23, 373:12-22, 374:16-21.)

8. ADA Bloom had been directed by the Hampden County District Attorney to attend lineups to ensure that they were fair to the suspect and not unduly suggestive. (Exh. A 89:23-24, 90:1-24, 91:23-24, 92:1-2.)

9. ADA Bloom appeared at the police station during the afternoon of December 7, 1985 to approve a lineup in which the Plaintiff would be participating. (Exh. A 87:13-24, 88:1-3.)

10. While at the station, ADA Bloom entered the Plaintiff's interrogation room when officers were discussing whether the Plaintiff would submit to giving samples of hair and blood. (Exh. B 383:17-24, 384:1-10.) ADA Bloom "came into the room" when "they" (presumably other officers) "were discussing the waiver to sign blood and hair." (Exh. B 384:23-385:6.) ADA Bloom entered the room "separately" from the officers who were questioning the Plaintiff. (Exh. B 385:7-11.) The Plaintiff does not know how long ADA Bloom remained in the room. (Exh. B 385:12-18.) The Plaintiff offered no testimony regarding ADA Bloom's actions before, during, or after his appearance in the interrogation room that day. (*See generally* Exh. B 383-385.)

11. ADA Bloom did not speak to anyone at the station regarding the Plaintiff's questioning. (Exh. A 130:24-131:23.)

12. When the lineup was completed, ADA Bloom left the station. (Exh. A 132:21-133:3.)

13. On April 1, 1987, ADA Bloom accompanied Officer Thomas Kennedy, who was transporting physical evidence connected to the Plaintiff's prosecution, to Washington, D.C. (Exh. A 111:15-24, 123:15-23; Kennedy Dep. 101:23-102:4, hereinafter "**Exh. C** [page number]:[line number].") ADA Bloom and Officer Kennedy personally delivered the evidence to the Federal Bureau of Investigation ("FBI"). (CoS RPOD 003732-33, 003746-47, 003749-50, hereinafter "**Exh. D** [bates page number].")

14. Because the type of scientific evidence ADA Bloom expected to introduce was new and not well understood in 1987, he planned to visit Washington, D.C. at some point before the trial. (Exh. A 112:4-24.)

15. ADA Bloom's purpose in traveling to Washington, D.C. that day was to speak with William Eubanks and Wayne Oakes, members of the FBI, concerning scientific testing of the hair and blood evidence because Eubanks and Oakes were expected to provide expert-witness testimony at the Plaintiff's criminal trial, and ADA Bloom would not put them on the witness stand without first interviewing them. (Exh. A 111:7-113:4.)

16. ADA Bloom believed that the timing of his trip to Washington, D.C. could have coincided with Officer Kennedy's trip because they were friends. (Exh. A 113:19-114:16.)

17. Ultimately, ADA Bloom and Officer Kennedy ended up only dropping the evidence off at the FBI's lab, and departed within five or ten minutes. (Exh. C 105:20-106:6.) They did not speak about the Plaintiff's prosecution. (Exh. C 108:1-10.)

18. On December 14, 1987, the Plaintiff was convicted of aggravated rape, burglary and assault in a dwelling, unarmed robbery, indecent assault and battery, and burglary. *See*

*Commonwealth v. Perrot*, Nos. 85-5415, 5416, 5418, 5420, 5425, 2016 WL 380123, at *10 (Mass. Super. Ct. Jan. 26, 2016). ADA Bloom was the trial prosecutor. *See id.* at *9-10.

19. Shortly after the Plaintiff's convictions, on December 16, 1987, ADA Bloom forged a false confession by the Plaintiff that purportedly admitted to, among other things, raping three women. (Perrot Dep. Ex. 19, hereinafter "**Exh. E**.") The false confession also implicated Timmerman and Adkins. (Exh. E.)

20. On June 4, 1990, the Supreme Judicial Court reversed the Plaintiff's convictions for reasons unrelated to the forged confession. *See Commonwealth v. Perrot*, 407 Mass. 539, 549 (1990). The Commonwealth retried the Plaintiff in January 1992. *See Perrot*, 2016 WL 380123, at *11. The Commonwealth was represented by ADA Brett Vottero at the retrial. *Id.*

21. Before the Plaintiff's retrial, when ADA Bloom no longer worked at the Hampden County District Attorney's Office, prosecutors learned of the forged confession and disclosed it to the Plaintiff's attorney, who filed a motion to dismiss for prosecutorial misconduct. *See Commonwealth v. Perrot*, 38 Mass. App. Ct. 478, 480 (1995). That motion was denied, and, on appeal after the Plaintiff was convicted a second time, the Massachusetts Appeals Court affirmed the conviction because the false confession had no impact (and thus caused no harm) in the Plaintiff's retrial. *Id.* at 482.

22. The forged confession was not introduced at either of the Plaintiff's two criminal trials, was promptly disclosed to the defense when a different prosecutor learned of its existence, and ADA Bloom was disciplined by the Board of Bar Overseers for his role in its creation. *See Perrot*, 38 Mass. App. Ct. at 480-82; Matter of Francis W. Bloom, SJC No. BD-1993-078 (December 16, 1993).

# ARGUMENT

## I. ADA BLOOM HAS ABSOLUTE PROSECUTORIAL IMMUNITY FROM LIABILITY BECAUSE THE UNDISPUTED FACTS SHOW THAT, WHILE PROSECUTING THE PLAINTIFF, HE NEVER ACTED IN AN ADMINISTRATIVE OR INVESTIGATORY ROLE.

As far as can be discerned from the Plaintiff's Amended Complaint, what remains of the Plaintiff's § 1983 claim against ADA Bloom rests upon three allegations of conduct that the Plaintiff asserts violated his due process rights: (1) ADA Bloom's alleged participation in the Plaintiff's interrogation; (2) ADA Bloom's trip with Officer Kennedy to deliver evidence to the FBI in Washington, D.C.; and (3) ADA Bloom's participation in writing a forged confession of the Plaintiff. *See* Doc. No. 126 (Am. Compl.), ⁋⁋ 83, 91-93, 96, 98, 103, 138. Based on the undisputed record evidence adduced during discovery with respect to these allegations, ADA Bloom is entitled to absolute prosecutorial immunity from liability in this case.

### A. Applicable Law.

The United States Supreme Court first recognized absolute prosecutorial immunity in *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), where the Court held that a prosecutor is immune from liability "in initiating a prosecution and in presenting the State's case." Following *Imbler*, federal courts have "used a 'functional approach' to decide whether state officials are entitled to absolute immunity from particular § 1983 claims." *Penate v. Kaczmarek*, 928 F.3d 128, 135 (1st Cir. 2019), citing *Burns v. Reed*, 500 U.S. 478, 486 (1991). Under this functional approach, whether immunity is appropriate depends upon "the nature of the function performed, not the identity of the actor who perform[s] it." *Forrester v. White*, 484 U.S. 219, 229 (1988). "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). However, "acts

undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Id.* "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." *Id.*

Immunity prevents "harassment by unfounded litigation [that] would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler*, 424 U.S. at 423. "The public trust of the prosecutor's office would suffer were the prosecutor to have in mind his own potential damages liability when making prosecutorial decisions – as he might well were he subject to § 1983 liability." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009). Courts have also recognized that prosecutors are particularly vulnerable to civil suits due to the nature of their official responsibilities. "Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State advocate." *Imbler*, 424 U.S. at 425. The Supreme Court recognized that "the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials" due to the time constraints and imperfect information that prosecutors often face when handling numerous prosecutions at once. *Id.* at 425-26. "Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." *Id.* *Imbler* pronounced that it is "'better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.'" *Id.* at 428, quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (L. Hand,

J.).

B. ADA Bloom's Presence At The Police Station Following The Plaintiff's Arrest Was Not Investigatory In Nature.

During his deposition, the Plaintiff testified that while at the police station following his arrest on December 7, 1985, he was questioned by police officers four different times. (Exh. B 52:12-24, 53:2-5, 55:3-5, 56:5-12, 64:14-21, 72:21-24, 73:1-16.) On the fourth occasion, he was retrieved from his cell by someone whom he assumed to be a police officer. (*Id.* at 72:23-73:16.) After the Plaintiff entered the room, another person, whom the Plaintiff assumed to be a police officer, arrived, and began discussing obtaining samples of the Plaintiff's blood and hair. (*Id.* at 73:20-23.) The Plaintiff testified that he saw ADA Bloom at the police station "[w]hen they were asking [the Plaintiff] about the blood and hair." (*Id.* at 383:20-23.) According to the Plaintiff, ADA Bloom "came into the room" when "they" (presumably other officers) "were discussing the waiver to sign blood and hair." (*Id.* at 384:23-385:6.) ADA Bloom entered the room "separately" from the officers who were questioning the Plaintiff. (*Id.* at 385:7-11.) The Plaintiff could not recall how long ADA Bloom was present in the interrogation room, nor could he provide any information about what, if anything, ADA Bloom did while there. (*Id.* at 385:12-21.) The Plaintiff also did not recall any statements by ADA Bloom. (*See generally id.* at 383-85.) After a brief conversation with someone he believed to be a police officer about obtaining his blood and hair, the Plaintiff gave officers a statement. (*Id.* at 73:9-74:5.) The Plaintiff did not place ADA Bloom in the interrogation room while he provided his statement, which immediately followed the discussion of hair and blood evidence (*see id.*), and ADA Bloom adamantly denies being present for any part of the Plaintiff's interrogation. (Exh. A 130:24-131:2).

Even viewed in the light most favorable to the Plaintiff, the record evidence is undisputed that ADA Bloom briefly entered the interrogation room that the Plaintiff was in *after* the Plaintiff's

arrest while members of law enforcement discussed taking samples of the Plaintiff's hair and blood, and *before* the Plaintiff provided a written statement. Additionally, the record evidence is undisputed that ADA Bloom never himself interrogated or questioned the Plaintiff in any manner. Nor does it establish that ADA Bloom directed the officers who performed the interrogation. While "[p]rosecutors do not function as advocates before probable cause to arrest a suspect exists," *Fields v. Wharrie*, 672 F.3d 505, 512 (7th Cir. 2012), citing *Buckley*, 509 U.S. at 274, where the Plaintiff had already been arrested, ADA Bloom's mere presence at the police station later that same day does not disqualify him from retaining absolute prosecutorial immunity. *See Wilson v. Estate of Burge*, 667 F. Supp. 3d 785, 846 (N.D. Ill. 2023) ("Viewing the allegations in the light most favorable to Wilson, as the Court must, the Court finds that [the prosecutor's] actions in participating in the interview where Hardin was coerced into providing false testimony implicating Wilson's participation in the murder took place after Wilson had been arrested and charged, and thus [the prosecutor's] conduct was prosecutorial"). This state of evidence stands in stark contrast to cases that have denied a prosecutor absolute immunity where the prosecutor appeared at a police station and actively participated in a suspect's questioning. *See*, *e.g.*, *Burns*, 500 U.S. at 482-83, 493 (no absolute immunity for prosecutor who advised police on how to obtain statement); *Watkins v. Healy*, 986 F.3d 648, 662-63 (6th Cir. 2021) (prosecutor not entitled to absolute immunity where he allegedly questioned and threatened witness during murder investigation before any arrest occurred or finding of probable cause was made); *Fogle v. Sokol*, 957 F.3d 148, 161-62 (3d Cir. 2020) (protector who allegedly "choreograph[ed] and secur[ed]" statement to establish probable cause to arrest plaintiff not entitled to absolute immunity).

Here, the Plaintiff has adduced no evidence that ADA Bloom performed a function at the station after his arrest that was administrative or investigative in nature. *See Filler v. Kellett*, 859 F.3d 148, 153 (1st Cir. 2017). Once the Plaintiff was placed under arrest, ADA Bloom's decision

to initiate the Plaintiff's prosecution and any preparatory steps taken were not the actions of a detective "in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested," but rather the actions of an advocate in preparation for trial. *Buckley*, 509 U.S. at 273. ADA Bloom is therefore absolutely immune from liability with respect to his alleged role in the interrogation of the Plaintiff. *See id.*

C. <u>ADA Bloom's Trip To Washington D.C. Was Not Investigatory In Nature But Rather Undertaken With The Intent Of Interviewing Expert Witnesses In Preparation For Trial.</u>

As noted above, in April of 1987, ADA Bloom accompanied Officer Kennedy to Washington, D.C. while Officer Kennedy was transporting certain physical evidence to the FBI laboratory. At most, the undisputed facts show that ADA Bloom participated in the delivery of the evidence and did not discuss anything about Plaintiff's case with Officer Kennedy during the trip. (*See* Exh. A 111:3-6; Exh. C 108:1-10; Exh. D 003746.) Although ADA Bloom traveled to Washington, D.C. at that time to speak with the FBI agents that he anticipated calling as expert witnesses at trial (Exh. A 111:7-14), he ultimately left within ten minutes. (Exh. C 105:20-106:3.)

ADA Bloom's travel to Washington, D.C. to interview prospective expert witnesses constitutes prosecutorial action taken in preparation for trial. *See Buckley*, 509 U.S. at 273 ("evaluating evidence and interviewing witnesses" is the role of an advocate). ADA Bloom's presence at the FBI and any conversations he may have had with potential expert witnesses were integral to his advocacy function in preparation of the Commonwealth's case. The Plaintiff offers no evidence regarding what transpired at the FBI laboratory in Washington, D.C. during this trip, much less any evidence that ADA Bloom performed post-arrest investigative functions "such as the manufacture of evidence or the execution of a search warrant." *Turner v. Boyle*, 116 F. Supp. 3d 58, 80 (D. Conn. 2015). To the contrary, ADA Bloom, at most, personally delivered the evidence to the FBI and did not discuss anything about Plaintiff's criminal case with Officer

Kennedy while on this trip.[3] The evidence shows the unremarkable circumstance that two government employees who needed to go to the same destination traveled there in one car. Where the Plaintiff has adduced no evidence that ADA Bloom conducted some "investigative function[] normally performed by a detective or police officer" in Washington, D.C., and where the undisputed facts show that he went there only for the purpose of interviewing expert witnesses he planned to call at the Plaintiff's trial, ADA Bloom is entitled to absolute prosecutorial immunity on Plaintiff's § 1983 claim to the extent it is based upon that trip. *Buckley*, 509 U.S. at 273; *Price v. Montgomery County*, 72 F.4th 711, 720 (6th Cir. 2023) ("Because the conduct at issue was in furtherance of genuine prosecutorial interests, [the prosecutor] has absolute immunity for his actions.").

D. <u>ADA Bloom Is Entitled To Absolute Immunity For His Role In Forging A False Confession By The Plaintiff Following The Plaintiff's First Trial.</u>

Although ADA Bloom engaged in "an overzealous and seriously misguided scheme," *Perrot*, 38 Mass. App. Ct. at 479, to implicate the Plaintiff's friends in other suspected crimes by creating a fabricated confession, it is undisputed that the confession was not used against or to investigate the Plaintiff in any way. Indeed, the false confession was not even authored until *after* the Plaintiff was convicted at his first trial, at which ADA Bloom was the prosecutor. (Exh. E.) Moreover, when the confession was discovered before the Plaintiff's retrial, it was promptly

[3] ADA Bloom recognizes that there could be a factual dispute over whether he physically touched the evidence that was brought to Washington, D.C. (*See* Exh. D.) Even if he touched or handled the evidence in some way, there is no further evidence that he did anything investigatory with it. In other words, regardless of whether ADA Bloom touched the evidence, that is not a disputed *material* fact because there is no evidence in the record that ADA Bloom's delivery of the evidence was undertaken in an investigatory manner or otherwise violated the Plaintiff's constitutional rights. *See St. Hilaire v. Laconia*, 71 F.3d 20, 26 (1st Cir. 1995) ("We nonetheless affirm on the ground that the factual dispute as to whether the defendant officers identified themselves as they approached St. Hilaire is immaterial as a matter of law").

disclosed to defense counsel and neither introduced as evidence against the Plaintiff in that proceeding nor used against him in any way. *See Perrot*, 38 Mass. App. Ct. at 482.

Absolute prosecutorial immunity shields prosecutors from civil liability under § 1983 when they fabricate evidence after a prosecution begins. *See Diaz-Colon v. Fuentes-Agostini*, 786 F.3d 144, 151 (1st Cir. 2015) ("The assertion in this case that the prosecutor not only presented false testimony, but also offered something of value to induce a trial witness to testify creates no basis for concluding that the conduct was any less intimately associated with the judicial phase of the criminal proceeding" (quotations omitted)); *Whitlock v. Brueggemann*, 682 F.3d 567, 579 (7th Cir. 2012) (even "reprehensible" conduct such as fabricating evidence does not preclude absolute immunity if it occurs after the prosecutor puts "on his prosecutorial hat"); *Wilson*, 667 F. Supp. 3d at 840 ("the Court finds that Trutenko's alleged fabrication of false testimony – both Coleman and Hardin's – is subject to absolute immunity because it was fabricated after the prosecution had begun"). *Contrast Fields v. Wharrie*, 740 F.3d 1107, 1113-14 (7th Cir. 2014) (no immunity for prosecutor who, "acting pre-prosecution as an investigator, fabricate[d] evidence and introduce[d] the fabricated evidence at trial"). This principle even extends to prosecutors who knowingly offer false testimony at trial. *See Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) ("Thompson's decision, as prosecuting attorney, to have Whitley and Apple testify falsely at Spurlock's second criminal trial, even if done knowingly, is protected by absolute immunity"). And absolute prosecutorial immunity does not cease to exist simply because the prosecution ends. *See Reid v. New Hampshire*, 56 F.3d 332, 338 (1st Cir. 1995) ("Nor was absolute immunity forfeited because the prosecutors continued to withhold the exculpatory evidence long after Reid's conviction"). Moreover, here, the forged confession was not created to implicate the Plaintiff, who already stood convicted. Absolute prosecutorial immunity, therefore, bars the Plaintiff's

§ 1983 claim against ADA Bloom to the extent it is based on this forged confession. *See Whitlock*, 682 F.3d at 579; *Wilson*, 667 F. Supp. 3d at 840.

## II. EVEN IF ADA BLOOM ACTED IN AN INVESTIGATORY CAPACITY WITH RESPECT TO THE PLAINTIFF'S PROSECUTION, HE IS STILL ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE UNDISPUTED RECORD DEMONSTRATES THAT HE DID NOT VIOLATE THE PLAINTIFF'S CLEARLY ESTABLISHED RIGHTS.

Even if this Court were to find that absolute immunity does not bar the Plaintiff's claims, ADA Bloom is nevertheless entitled to qualified immunity based on the undisputed facts of this case.

### A. Applicable Law.

Qualified immunity protects government officials who perform discretionary governmental functions from civil liability so long as their conduct did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity's "prophylactic sweep is broad: it leaves unprotected only those officials who, from an objective standpoint, should have known that their conduct was unlawful. Put another way, the doctrine protects all but the plainly incompetent or those who knowingly violate the law." *Alfano v. Lynch*, 847 F.3d 71, 75 (1st Cir. 2017) (citations and quotations omitted).

The First Circuit employs "a two-step approach to determine whether a defendant is entitled to qualified immunity" at the summary judgment stage. *Stamps v. Framingham*, 813 F.3d 27, 34 (1st Cir. 2016). "The first step addresses whether there is a genuine issue of disputed fact that would allow a reasonable finder of fact to determine that the defendant violated the plaintiff's

federal constitutional rights." *Perry v. Spencer*, 94 F.4th 136, 146 (1st Cir. 2024) (*en banc*), citing *Stamps*, 813 F.3d at 34; *see Alfano*, 847 F.3d at 75 ("The first step requires an inquiring court to determine whether the plaintiff's version of the facts makes out a violation of a protected right"). If such a dispute exists, "then [the court] move[s] on to the second step, which addresses whether the right that the plaintiff can supportably show was violated was clearly established at the time of the defendant's alleged violation." *Perry*, 94 F.4th at 146, citing *Stamps*, 813 F.3d at 34. "Courts have discretion to decide the order in which to engage these two prongs." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (*per curiam*). Qualified immunity here may be resolved at the first step.

B. Because ADA Bloom Did Not Violate The Plaintiff's Constitutional Rights With Respect To The Plaintiff's Interrogation, ADA Bloom's Trip To Washington, D.C., Or The Forged Confession, ADA Bloom Is Entitled To Qualified Immunity.

There is no disputed issue of material fact to which the Plaintiff can point that would allow a reasonable jury to find that ADA Bloom violated the Plaintiff's due process rights.[4] *See* Doc. No. 126 (Am. Compl.), ⁋ 138.

First, with respect to ADA Bloom's presence in the interrogation room when officers were discussing obtaining samples of the Plaintiff's blood and hair, there is, as explained above, no evidence concerning what ADA Bloom did or said in that room, if anything at all. (*See generally* Exh. B 383-385 (ADA Bloom was merely present in the interrogation room); Exh. A 130-131

[4] The Due Process Clause of the Fourteenth Amendment provides that "[n]o State . . . shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause's "substantive component . . . protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992) (quotations omitted). "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). To the extent the Plaintiff asserts in this action that ADA Bloom has violated his substantive due process rights, that claim must fail for the reasons set forth herein.

(ADA Bloom was not present for any part of Plaintiff's interrogation).) The only evidence adduced during discovery, even viewed in the light most favorable to the Plaintiff, is that ADA Bloom was present while a discussion was taking place concerning "the waiver to sign blood and hair" [sic]. (Exh. B 385:3-6.) Without more, no factfinder could reasonably conclude that ADA Bloom thereby violated the Plaintiff's federal constitutional rights. *See Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (prosecutors who "give legal advice to the police during an investigation" may still be entitled to qualified immunity); *Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012) ("Good prosecutors may – usually should – perform acts reasonably characterized as investigative at all phases of a criminal proceeding. The investigative acts that are entitled to only qualified immunity are those undertaken in the phase of law enforcement that involves the gathering and piecing together of evidence for indications of criminal activities and determination of the perpetrators"); *accord Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003) (investigative actions such as "gathering physical evidence and conducting interrogations" may be protected by qualified immunity).

Second, with respect to ADA Bloom's trip to Washington, D.C., the record evidence again fails to raise a triable issue of fact. At best, the undisputed facts establish that ADA Bloom (a) accompanied Officer Kennedy to the FBI to deliver evidence related to the Plaintiff's prosecution; (b) personally participated in the delivery of the evidence to the FBI (which, without more, *see* note 3, *supra*, is not a material fact); and (c) did not discuss the Plaintiff's prosecution at any time with Officer Kennedy. (*See* Exh. A 111:3-6; Exh. C 108:1-10; Exh. D 003732, 003749.) Even if this Court were to conclude that ADA Bloom's travel to Washington, D.C. was undertaken in an investigatory capacity, on this record ADA Bloom is still entitled to qualified immunity from the Plaintiff's § 1983 claim because nothing he did during that trip could be found to have violated the Plaintiff's federal constitutional rights. *See Pearson*, 555 U.S. at 231 (qualified immunity is

intended to shield public officials from liability when they perform their duties reasonably); *Alfano*, 847 F.3d at 75 (qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law"); *Rowe v. Fort Lauderdale*, 279 F.3d 1271, 1281 (11th Cir. 2002) (because plaintiff did not show that prosecutor "planted or fabricated evidence" while acting as investigator, prosecutor was "entitled to qualified immunity for the actions he personally took or failed to take while in the investigator's role").

Finally, qualified immunity also shields ADA Bloom from liability for forging a fake confession by the Plaintiff because the confession was forged after the Plaintiff's original conviction and was not introduced during the Plaintiff's retrial or used against the Plaintiff in any way. *See Perrot*, 38 Mass. App. Ct. at 480-82; Exh. E. There is no evidence in the record of this case that the forged confession was used to secure, or played any role in securing, either of the Plaintiff's convictions. *See Perrot*, 38 Mass. App. Ct. at 480 ("The bogus confession and the scheme unravelled [sic], . . . and [the prosecutor] who had handled the earlier appeal, took the honorable course of immediately making full disclosure of the scheme to the defendant's attorney, who filed a motion to dismiss based on prosecutorial misconduct"). *Cf. Gilliam v. Sealey*, 932 F.3d 216, 234-37 (4th Cir. 2019) (because "[a] coerced or fabricated confession that police know to be coerced . . . does not give police probable cause to arrest the suspect as a matter of law," summary judgment based on qualified immunity was not appropriate); *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012) ("Therefore, because there is evidence Defendants used false evidence to secure a conviction, Plaintiffs have sufficiently supported a cognizable due process claim"); *Ogrod v. Philadelphia*, 598 F. Supp. 3d 253, 260, 264 (E.D. Pa. 2022) (where plaintiff's allegedly fabricated confession was only evidence against him in murder trial, officers not entitled to qualified immunity); *Sanchez v. Hartley*, 299 F. Supp. 3d 1166, 1192-93 (D. Colo. 2017) (officers not entitled to qualified immunity on summary judgment where plaintiff created genuine dispute

of material fact that they knowingly used false confession). Under these circumstances, no factfinder could reasonably conclude that ADA Bloom violated the Plaintiff's federal constitutional rights. *See Montoya v. Vigil*, 898 F.3d 1056, 1071-72 (10th Cir. 2018) (officers who allegedly coerced plaintiff's confession were entitled to qualified immunity because "allegedly coerced statements were not used against" plaintiff at trial); *see also Sanford v. Detroit*, 815 Fed. Appx. 856, 859 (6th Cir. 2020) (unpublished) ("The Fourteenth Amendment bars an officer from knowingly creating false evidence to obtain a conviction."). Because ADA Bloom did not use the forged confession in any way to violate any of the Plaintiff's federal constitutional rights, he is entitled to qualified immunity on the Plaintiff's § 1983 claim against him to the extent that claim is based upon that confession.

## III. ADA BLOOM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE PLAINTIFF HAS FAILED TO ADDUCE ANY EVIDENCE THAT COULD SUPPORT A FINDING THAT ADA BLOOM'S CONDUCT DEPRIVED HIM OF ANY CONSTITUTIONAL RIGHT.

Finally, were this Court to conclude that ADA Bloom is not entitled to absolute prosecutorial or qualified immunity, his motion for summary judgment should nevertheless still be granted because the undisputed record evidence fails to establish that any action taken by ADA Bloom deprived the Plaintiff of any of his constitutional rights. A § 1983 violation lies if "a plaintiff [shows] by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." *Johnson v. Mahoney*, 424 F.3d 83, 89 (1st Cir. 2005). "The second element requires that [the Plaintiff] establish that [ADA Bloom's] conduct was a cause of the alleged deprivation of rights secured by the Constitution or federal laws." *Id.* The Plaintiff cannot make this showing.

Without repeating the evidence recounted above, which ADA Bloom incorporates herein by reference, nothing in the factual record includes any evidence that would allow a jury to conclude that ADA Bloom deprived the Plaintiff of his federal constitutional rights. *See Drumgold v. Callahan*, 707 F.3d 28, 48-49 (1st Cir. 2013) (causation in § 1983 actions is tantamount to causation principles found in tort law, and generally requires showing of "but-for" causation). The record does not reveal any participation by ADA Bloom in the Plaintiff's interrogation on December 7, 1985, or any unlawful conduct by ADA Bloom during his trip to Washington, D.C. on April 1, 1987. And although ADA Bloom engaged in improper conduct with respect to the forged confession, that confession was not used against the Plaintiff in any manner. Based on the undisputed facts in the record of this case, ADA Bloom took no action whatsoever that deprived the Plaintiff of any constitutional right, and, accordingly, ADA Bloom is entitled to summary judgment on the Plaintiff's § 1983 claim against him. *See Kostka v. Hogg*, 560 F.2d 37, 40 (1st Cir. 1977) ("[W]here an individual had no personal role in the wrongdoing[,] [s]uch an actor by definition lacks the bad faith required to expose him to damages liability under § 1983").

**CONCLUSION**

For the foregoing reasons, this Court should grant ADA Bloom's Motion for Summary Judgment because there is no genuine dispute of material fact that would preclude judgment for ADA Bloom on the Plaintiff's § 1983 claims against him as a matter of law.

Respectfully submitted,
FRANCIS BLOOM

By His Attorneys,

ANDREA JOY CAMPBELL
Attorney General

/s/ Andre A. Janiszewski
Andre A. Janiszewski, Esq.
BBO # 703525
Joseph P. Lucia, Esq.
BBO # 673138
Assistant Attorneys General
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2832
andre.a.janiszewski@mass.gov

Dated: March 29, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system on March 29, 2024, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) in this matter.

/s/ Andre A. Janiszewski
Andre A. Janiszewski
Assistant Attorney General