**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **GEORGE PERROT,**<br>**Plaintiff,**<br>**v.**<br><br>**Judith Kelly, as administrator for the Estate of THOMAS KELLY, et al,**<br>**Defendants** | : | **C.A. No.: 18-CV-10147** |

**MEMORANDUM IN SUPPORT OF DEFENDANT CHARLES ARPIN'S MOTION FOR SUMMARY JUDGMENT**

Defendant Charles Arpin, in addition to relying upon the documents, affidavits, evidence and arguments submitted by all the other defendants in this action in support of their summary judgment motions, asserts the following reasons to this Honorable Court in support of his Motion For Summary Judgment under Fed.R.Civ.P.56:

## I. INTRODUCTION

On January 25, 2018, Plaintiff George Perrot filed this civil action, asserting claims against a variety of defendants. The claims that apply to Defendant Charles Arpin are not clearly described in the operative Amended Complaint filed on May 23, 2019. Rather, paragraph 137 of the Amended Complaint, asserts that the Springfield Police Defendants (which include Defendant Arpin) violated the Plaintiff's constitutional rights by coercing the Plaintiff into falsely incriminating himself, withholding evidence from the prosecution, fabricating evidence, destroying evidence, conspiring to frame the Plaintiff, failing to intervene, and maliciously prosecuting the Plaintiff. These claims arise out of a series of incidents that occurred in the vicinity of the Plaintiff's home at 57 Malibu Drive, Springfield, Massachusetts, in the final months of 1985.

The police investigation resulting from these incidents culminated in the arrest of George Perrot at his home in the early morning hours on December 7, 1985, first for two events that occurred within the previous few hours, and later for two events that occurred on November 30, 1985. The prosecutions that followed Mr. Perrot's arrest resulted in the conviction of Mr. Perrot for crimes from all four events. The convictions related to the incidents of December 7, 1985, have remained unaffected by subsequent proceedings because they resulted from plea agreements. Appellate review of the jury trial convictions concerning the November 30, 1985, incidents required a second trial. A second jury convicted Mr. Perrot for the same crimes related to the November 30, 1985, incidents. Ultimately, some thirty years after the incidents, on January 26, 2016, Mr. Perrot gained a new trial for the charges related to one of those incidents, but not for charges related to the other. Later, Mr. Perrot and the District Attorney reached a deal – each agreed in October 2017 to dismiss their pending appeals related to the grant of a new trial, and the District Attorney filed a nolle prosequi of the pending charges. This lawsuit followed in 2018. The Defendants are now moving for Summary Judgment.

The factual record here provides that Defendant Charles Arpin joined the Springfield Police Department in 1969, retiring in 2010. During his career, he rose through the ranks. On December 7, 1985, Defendant Arpin was a Lieutenant in the Detective Bureau – Housebreak Squad, under the command of Captain Ernest Steltzer.

In support of his claims that Defendant Arpin is liable to him, the Plaintiff contends that Defendant Arpin was present at the Springfield Police Station when George Perrot was interrogated in December 1985; he interviewed other witnesses; he wrote and reviewed police reports; and he approved Mr. Perrot's arrest and the charges against him. He also contends that Defendant Arpin coordinated the lineup; he took Joseph McNabb's statement; he participated in

obtaining Mr. Perrot's signature on a search warrant waiver; he testified at the grand jury hearings against Mr. Perrot on December 13, 1985, and April 10, 1986; and he generally oversaw much of the investigation of Mr. Perrot. Defendant Arpin asserts that these contentions, individually and together, are insufficient to hold Defendant Arpin liable to the Plaintiff.

## II. STANDARD OF REVIEW

Summary judgment shall be granted when there is no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (a). In this context, "[a] dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." *American Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Id.* Once the moving party identifies those portions of "the pleadings, depositions, answers to interrogatories, . . . admissions . . . [and] affidavits, if any" that "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts necessitating a trial; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed.R.Civ.P. 56 (c) (1) and (A); or by demonstrating that the material cited by the moving party does not establish the absence of a genuine dispute. *See* Fed.R.Civ.P. 56 (c) (1) and (B).

In this endeavor, the summary judgment record usually is to be reviewed in the light most charitable to the non-movant. *See Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009). While a reviewing court generally is to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion. . . ."; *Scott v.*

*Harris*, 550 U.S. 372, 378 (2007) (citation and internal punctuation omitted); to defeat a motion for summary judgment, the non-movant may not rest upon some combination of conclusory allegations, improbable inferences and unsupported speculation, but must identify definite, competent evidence to rebut the motion. *See Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010); *see also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581-83 (1st Cir. 1994). The weighing of evidence or the resolution of credibility determinations cannot occur at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In other words, "[t]he role of the trial judge at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir. 1998).

## III. ARGUMENT

### A. Elements of a § 1983 Claim

The Plaintiff seeks to recover in this action against Defendant Arpin under 42 U.S.C. §1983. "Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right. *Colon-Andino v. Toledo-Davila*, 634 F.Supp.2d 220, 231, (D.P.R. 2009) *citing Omni Behavioral Health v. Miller*, 285 F.3d 646, 650-51 (8th Cir. 2002). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation and internal quotations omitted). "There are two essential elements of an action under section 1983: (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) quoting *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995). A defendant is liable under §1983 only for his own actions, not the actions of others. *Ashcroft v. Iqbal*, 556 U.S.

662, 676 (2009). *Respondent superior* does not apply. *Monell v. Department of Social Services of NY*, 436 U.S. 658, 691 (1978).

**B. Statute of Limitations**

While 42 U.S.C. §1983 provides a remedy under federal law for civil rights deprivations, it does not provide a limitations period; the law of the state in which the cause of action arises governs the length of the limitations period by reference to the state statute that circumscribes personal injury actions. *Wallace v. Kato*, 549 U.S.384, 387 (2007); *Ouellette v. Beaupre*, 977 F.3d 127, 135 (1st Cir. 2020). The Plaintiff's cause of action arose, if at all, in Massachusetts because that is where the crimes occurred, where he was prosecuted for those crimes, and where the Defendant's conduct occurred. In Massachusetts, the limitations period is three years after the cause of action accrues. G.L. c.260, §2A; *McIntosh v. Antonio*, 71 F.3d 29, 33-34 (1st Cir. 1995). Federal law, however, determines the accrual date of the cause of action without reference to state law, but to common law tort principles, if needed. *Wallace v. Kato*, 549 U.S. at 388. Under those principles, the cause of action accrues, and the limitations period begins, when a plaintiff has a "complete and present cause of action," meaning that the cause of action accrues when the plaintiff can file suit and obtain relief. *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, Inc.*, 522 U.S. 192, 201 (1997).

Here, the Plaintiff filed his complaint on January 25, 2018. The statute of limitations therefore bars any of the Plaintiff's causes of action that accrued before January 25, 2015. If the Plaintiff could have filed a specific claim or claims before the 2015 date, then those claims fall outside the period within which he can now obtain relief. There is a limitations bar to some of the Plaintiff's claims because they are founded in the Defendant's conduct that occurred more than

thirty years ago. For example, a false arrest claim under §1983 accrues not upon the arrest but when legal process, such as arraignment, begins. *Wallace v. Kato*, 549 U.S. at 389-90.

### C. *Heck v. Humphrey* Bar

Complicating this claim accrual analysis for statute of limitations purposes is the judicial bar on collateral attacks on a plaintiff's criminal convictions by filing claims under section 1983. The Supreme Court advanced this rule in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), where it held:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to made such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under §1983. Thus, when a state prisoner seeks damages in a §1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck v. Humphrey*, 512 U.S. at 486-87 (emphasis in original) (footnotes omitted). Thus, there is a judicial bar to claims that impugn an extant conviction, but that bar does not toll the statute of limitations; it delays the accrual of some claims, though. *Wallace v. Kato*, 549 U.S. at 396-97.

In this case, the Plaintiff has only a narrow avenue in which to attack the Defendant under §1983. The Plaintiff's convictions for the events of December 7, 1985, and the Covel Street break-in on November 30, 1985, remain valid, so the *Heck v. Humphrey* rule bars any of his claims that would tend to invalidate those convictions that have not already fallen to the statute of limitations. Any claims that would not implicate the validity of those convictions, such as an excessive force or unreasonable search claim, fall to the statute of limitations because they occurred well before January 25, 2015. *See Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006) (excessive force claim after assault conviction not necessarily barred by *Heck*). Barred also by the statute of limitations are any claims that do not implicate the Plaintiff's previously valid convictions for the November 30, 1985, events at 27 Malibu Drive because *Heck v. Humphrey* was no obstacle to those claims. Thus, what remains to the Plaintiff are those claims concerning the 27 Malibu Drive convictions that were previously barred by *Heck v. Humphrey*, but then accrued upon the removal of that bar, such as a constitutional malicious prosecution claim under the Fourth Amendment.

**D. Constitutional Malicious Prosecution**

The Supreme Court has yet to define the elements of this Fourth Amendment malicious prosecution action except to rule what constitutes the favorable termination element under the claim as described by the various circuits. *See Thompson v. Clark*, 596 U.S. 36, 42-43 (2022) (Supreme Court precedents recognize claim for unreasonable seizure pursuant to legal process but this case concerns only favorable termination element). In this circuit, a plaintiff must establish that:

" 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.'" *Hernandez-Cuevas*

*v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013) quoting *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012). The cause of action requires the Plaintiff to prove that Defendant Arpin's actions or statements amounted to deliberate falsehoods or a reckless disregard for the truth. *Hernandez-Cuevas v. Taylor*, 723 F.3d at 102, quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

So, what evidence does the Plaintiff have that proves Defendant Arpin caused an unconstitutional prosecution of the Plaintiff for the 27 Malibu Drive incident? He contends, and the record demonstrates, that Defendant Arpin was at the Springfield police station on December 7, 1985, presumably while the Plaintiff was also there. The record does not show that Defendant Arpin participated in any way in the interrogation of the Plaintiff that day. Nor does it indicate that Defendant Arpin was at the police station for the entire time that the Plaintiff was held there. The only witness statement taken by Defendant Arpin was that of Joseph McNabb, one of the victims of the Ellendale Circle incident. The record does not show that Defendant Arpin seized or obtained any physical evidence related to the 27 Malibu Drive incident. Defendant Arpin did witness the Plaintiff sign the search warrant waiver form permitting the police to obtain samples of the Plaintiff's blood and hair, but someone else did that later, after Mr. Perrot's transfer to York Street Jail. None of these facts rise to the necessary level of deliberate falsehood or reckless disregard for the truth.

The Plaintiff also asserts that Defendant Arpin's testimony to the grand jury that indicted the Plaintiff is a building block in his malicious prosecution claim against Defendant Arpin. That assertion founders because a grand jury witness has absolute immunity from any § 1983 claim based on his testimony at the grand jury, including conspiracy claims. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). The Plaintiff may not rely on that testimony against Defendant Arpin. The Plaintiff cannot recover from Defendant Arpin under this theory based on this evidence.

**E. Supervisory Liability**

That brings us to an examination of the Plaintiff's contention that Defendant Arpin was a supervisor, as if that magically made him liable to the Plaintiff. Defendant Arpin can be liable for his actions or inactions as a supervisor, but it takes more than describing him as a supervisor. The requirements necessary for a plaintiff to succeed against a supervisor are daunting. The Court in *Justiniano v. Walker*, recounted them thusly:

> To connect the liability dots successfully between supervisor and subordinate in this context, a plaintiff must show "that one of the supervisor's subordinates abridged the plaintiff's constitutional rights" and that the supervisor's (in)action "was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as ... gross negligence amounting to deliberate indifference." Id. at 514-15 (alterations omitted) (first citing then quoting Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). And that's a critical issue here -- deliberate indifference. Deliberate indifference requires a plaintiff to demonstrate or allege "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." Camilo-Robles, 151 F.3d at 7; see also Guadalupe-Báez, 819 F.3d at 515. Indeed, "[m]ere negligence will not suffice: the supervisor's conduct must evince 'reckless or callous indifference to the constitutional rights of others.' " Guadalupe-Báez, 819 F.3d at 515 (quoting Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 92 (1st Cir. 1994)).
>
> And there's more. "[D]eliberate indifference alone does not equate with supervisory liability," id. (quoting Figueroa-Torres v. Toledo-Dávila, 232 F.3d 270, 279 (1st Cir. 2000) (alteration in original)), but rather "[c]ausation [is also] an essential element, and the causal link between a supervisor's conduct and the constitutional violation must be solid," id. (citation omitted).

*Justiniano v. Walker*, 986 F.3d 11, 20 (1st Cir. 2021) (footnote omitted). The Plaintiff has disclosed little in his discovery responses that bears on this mountain that he must climb to achieve liability against Defendant Arpin as a supervisor. He does not identify any of the officers for which Defendant Arpin might be responsible. He fails to describe in his answers to interrogatories what the risks associated with that subordinate were and how Defendant Arpin was aware of those risks. Absent actual notice to the supervisor, the Plaintiff must show that

Defendant Arpin was aware of previous and relevant (meaning similar) misconduct by the specific subordinate. *See Parker v. Landry*, 925 F.3d 9, 16 (1st Cir. 2019) (complaint dismissed for failure to plead these requirements); *Saldivar v. Racine*, 818 F.3d 14, 18-20 (1st Cir. 2016) (complaint dismissed for failure to plead facts sufficient to draw inference of notice to police chief).

The Plaintiff fails to identify a specific individual who had a demonstrated proclivity to engage in unconstitutional conduct. He also fails to show the requisite knowledge by Defendant Arpin of that proclivity. He also fails to make an affirmative causal link between Defendant Arpin's action or inaction based on that knowledge to reduce the risk of that individual's unconstitutional behavior. The Plaintiff thus cannot recover against Defendant Arpin based upon a claim of supervisory liability.

**F. Qualified Immunity**

The umbrella that covers all this discussion, however, is qualified immunity, to which Defendant Arpin is entitled here. The Supreme Court has described the contours of the doctrine in a Fourth Amendment case thusly:

> Under our precedents, officers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time." … "Clearly established" means that, at the time of the officer's conduct, the law was " 'sufficiently clear' that every 'reasonable official would understand that what he is doing' " is unlawful. … In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." ... This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."…
>
> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be "settled law," … which means it is dictated by "controlling authority" or "a robust 'consensus of cases of persuasive authority,' " … It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the

> plaintiff seeks to apply. … Otherwise, the rule is not one that "every reasonable official" would know. ...
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." ... This requires a high "degree of specificity." ... We have repeatedly stressed that courts must not "define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." ... A rule is too general if the unlawfulness of the officer's conduct "does not follow immediately from the conclusion that [the rule] was firmly established." ... In the context of a warrantless arrest, the rule must obviously resolve "whether 'the circumstances with which [the particular officer] was confronted ... constitute[d] probable cause.' " ...
>
> We have stressed that the "specificity" of the rule is "especially important in the Fourth Amendment context." ... Probable cause "turn[s] on the assessment of probabilities in particular factual contexts" and cannot be "reduced to a neat set of legal rules." ... It is "incapable of precise definition or quantification into percentages." ... Given its imprecise nature, officers will often find it difficult to know how the general standard of probable cause applies in "the precise situation encountered." ... Thus, we have stressed the need to "identify a case where an officer acting under similar circumstances ... was held to have violated the Fourth Amendment." ... While there does not have to be "a case directly on point," existing precedent must place the lawfulness of the particular arrest "beyond debate." ... Of course, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances. ... But "a body of relevant case law" is usually necessary to " 'clearly establish' the answer" with respect to probable cause. ...

*District of Columbia v. Wesby*, 583 U.S. 48, 62–64 (2018) (citations omitted).

So, the first issue here is whether the law regarding constitutional malicious prosecution claims was clearly established at the time of Defendant Arpin's conduct back in 1985. The Supreme Court rejected a substantive due process theory for the claim in 1994. *Albright v. Oliver*, 510 U.S. 266, 275 (1994). In this circuit, egregious conduct that violated substantive or procedural rights under the Fourteenth Amendment was necessary for what might be considered a similar claim. *Torres v. Superintendent of Puerto Rico*, 893 F.2d 404, 409 (1st Cir. 1990). It

blossomed fully in 2013, as discussed earlier. *Hernandez-Cuevas v. Taylor*, 723 F.3d at 101. These articulations of a viable malicious prosecution claim under § 1983 came years after Defendant Arpin's conduct here. The law of constitutional malicious prosecution was not clearly established in 1985.

Resolution of the contours of the law at the time of the relevant conduct is not needed, however. The unlawfulness of Defendant Arpin's actions concerning the Plaintiff was not clearly established at the time. No reasonable officer in Defendant Arpin's shoes performing the same actions described by the factual record here would know that his conduct was improper. There is no legal authority that prohibited Defendant Arpin from his workplace on December 7, 1985, just because the Plaintiff was there being interrogated. There is no legal authority that prohibited Defendant Arpin from witnessing the Plaintiff sign a search warrant waiver. There is no legal authority that prohibited Defendant Arpin from testifying to the grand jury. There is no legal authority that prohibited Defendant Arpin from taking statements from witnesses to crimes. There is no legal authority that prohibited Defendant Arpin from writing and reviewing police reports. The Plaintiff lacks proof that a reasonable officer in Defendant Arpin's shoes would be aware his conduct was unconstitutional. The bland statements in the Plaintiff's discovery responses do not overcome Defendant Arpin's entitlement to qualified immunity in this case.

**G. State Law Claims**

The Court should grant summary judgment to the Defendant on all federal claims, which would leave only state law claims, many of which are barred by the statute of limitations, G.L. c.260, §2A. In that instance, where the Court has disposed of all claims over which it has original jurisdiction, it should decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. §1367 (c) (3); *Carnegie-Melon Univ v. Cohill*, 484 U.S. 343, 350 n.7 (1988);

*Jakuttis v. Town of Dracut*, 95 F.4th 22, ___ (1st Cir. 2024); *Vasquez-Velazquez v. Puerto Rico Hwys. & Transport. Auth.*, 73 F.4th 44, 52-53 (1st Cir. 2023); *Eves v. LePage*, 842 F.3d 133, 146 (1st Cir. 2016); *Rodriguez v. Doral Mortg. Corp*., 57 F.3d 1168, 1177 (1st Cir. 1995). In some instances, such as where state courts can better address the substantial state law issue, it can be an abuse of discretion to retain jurisdiction over the state law claims. *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017). The Court should decline to hold onto any state law claims here.

## IV. CONCLUSION

This Honorable Court should grant Defendant Arpin's Rule 56 motion for summary judgment for the reasons contained here and in the similar motions of all other defendants, and it should enter judgment in favor of this defendant on all claims.

Respectfully submitted,
DEFENDANT CHARLES ARPIN
By his attorney,

/s/ Austin M. Joyce
Austin M. Joyce, Esq.
BBO# 255040
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, MA 01609
508-754-7285
ajoyce@rja-law.com

March 29, 2024

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants of this 29th day of March 2024.

/s/ Austin M. Joyce
Austin M. Joyce