UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 18-CV-10147

GEORGE PERROT,
Plaintiff

v.

JUDITH KELLY, as Administrator for the Estate of THOMAS KELLY, THOMAS JARVIS, RICHARD KANE, CHARLES ARPIN, THOMAS KENNEDY, PAUL LANCE, MARIANNE POPKO, PAUL GLANTZ, RONALD ST. GERMAIN, ANDREW CANEVARI, CHERYL CLAPPROOD, UNKNOWN OFFICERS OF THE SPRINGFIELD POLICE DEPARTMENT, the CITY OF SPRINGFIELD, MASSACHUSETTS, FRANCIS BLOOM, WILLIAM EUBANKS and WAYNE OAKES,
Defendants

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT, RICHARD KANE'S, MOTION FOR SUMMARY JUDGMENT

The Defendant, Richard Kane ("Kane"), hereby moves this Court for an order of summary judgment on all claims against him for the reasons set forth in this Memorandum of Law, as well as the reasons set forth in the Motions for Summary Judgment filed on behalf of the other Municipal Defendants[1], filed simultaneously herewith. Most importantly, Kane states that he is entitled to qualified immunity as a matter of law because his actions on December 10, 1985 – receiving an unsolicited incriminating statement regarding a burglary from a Mirandized suspect during the process of observing a blood draw – did not violate clearly established statutory or constitutional rights at the time and, thus, did not violate the Plaintiff George Perrot's civil rights. Indeed, the decision which formed the basis for the subsequent exclusion of the statements

[1] Judith Kelly, as Administrator for the Estate of Thomas Kelly, Thomas Jarvis, Richard Kane, Charles Arpin, Thomas Kennedy, Paul Lance, Marianne Popko, Paul Glantz, Ronald St. Germain, Andrew Canevari, Cheryl Clapprood, and City of Springfield, Massachusetts.

obtained by Kane, and Perrot's subject claim of a civil rights violation, had not yet been articulated by the United States Supreme Court when Kane spoke with Perrot on December 10, 1985. As such, Defendant Kane is entitled to qualified immunity for his official acts.

## **Introduction**[2]

In the fall of 1985, a series of burglaries and sexual assaults plagued the Forest Park and Sixteen Acres neighborhoods in Springfield, Massachusetts. (See generally JSOF ¶¶1-94.) Some of these crimes targeted elderly women in their homes at night. (See, for example, JSOF ¶¶45-55, 62-74.) On October 24, 1985, City of Springfield Police responded to reports of a break-in and sexual assault at a home at 33 Covel Street in the Sixteen Acres neighborhood and took a report from an elderly woman named Emily Lichwala. (JSOF ¶¶45-55.) On the night of November 30, 1985, Lichwala's home was again burglarized. (JSOF ¶¶56-61.) Later that same night, a 78-year-old woman named Mary Prekop was raped and robbed in her home. (JSOF ¶¶62-74.) On Friday, December 6, 1985, City of Springfield Police Officers responded to another break-in on Ellendale Circle, and subsequently to a purse-snatching at a nearby Denny's restaurant. (JSOF ¶¶75-94.) In the early morning hours of Saturday, December 7, 1985, City of Springfield Police Officers arrested Plaintiff George Perrot ("Perrot") after identifying footprints in the snow that led to his home that appeared to match footprints at an earlier crime scene. (JSOF ¶91-100.) Officers found Perrot laying in his bed with incriminating items on the floor next to him, namely the pocketbook from the Denny's purse snatch. (JSOF ¶98.) Perrot was subsequently identified in a show-up identification by a victim of the earlier Ellendale Circle break-in. (JSOF ¶100.) On February 10, 1987, Perrot pled guilty to the Ellendale Circle burglary and the Denny's purse-snatching. (JSOF ¶¶153, 156.)

[2] This introduction is taken from the Defendants' Joint Statement of Facts Material to All Motions for Summary Judgment ("JSOF") filed by the Municipal Defendants submitted herewith.

On Saturday, December 7, 1985, while in police custody, Perrot was read his Miranda rights multiple times, made statements to police implicating himself in the November 30 and December 6-7 crimes and subsequently consented to a blood draw. (JSOF ¶¶101-06, 115-32.) The blood draw was scheduled for Tuesday, December 10, 1985, at 3 pm. at the York Street Jail in Springfield. (See generally JSOF ¶140-42.)

At Perrot's arraignment on Monday, December 9, 1985, the Court appointed an attorney to represent Perrot. (JSOF ¶139.)

In 1985 (and at all times relevant hereto), Kane was employed as a police officer for the City of Springfield assigned to the Crime Prevention Bureau. (JSOF ¶139.) On October 29, 1985, Kane was sent to a Springfield hospital to pick up victim Emily Lichwala – who had been sexually assaulted on October 24, 1985 and was being released following treatment. (JSOF ¶53.) Kane's orders were to transport her to the police station so that she could provide a statement to a female officer named Linda Desrosiers, and then transport her home. (JSOF ¶53.) Lichwala gave a statement to Desrosiers. (JSOF ¶54.) Kane and Desrosiers thereafter drove Lichwala home and performed a brief investigation at her house. (JSOF ¶54.) Kane had no further involvement in the Lichwala matter, or in any matter involving Perrot, until being sent to witness Perrot's blood draw on December 10, 1985. (JSOF ¶55.)

On the afternoon of Tuesday, December 10, 1985, Kane was sent by his commanding officer, Captain Brown, to the York Street Jail in Springfield to witness and document the blood draw from Perrot. (JSOF ¶140.) Kane was given, and brought with him, the consent form signed by Perrot on December 7, 1985, in which Perrot consented to the blood draw. (JSOF ¶142.) Up until that point, Kane had not been involved in the arrest, detention, interrogation or arraignment of Perrot. (JSOF ¶141.) Kane had not attended Perrot's arraignment. Kane had not seen Perrot

or otherwise interacted with him until arriving at the York Street Jail to witness the blood draw. (JSOF ¶141.)

Upon arriving at the York Street Jail, Kane waited in an examination room until Perrot entered with a York Street Jail employee, a man named Terry Aberdale, who was to perform the actual blood draw. (JSOF ¶143.) After Perrot and Aberdale entered the examination room, Perrot almost immediately began to speak freely. (JSOF ¶143.) Perrot asked Kane if Kane had seen Perrot's girlfriend in the gallery during his arraignment the previous day and remarked on how attractive his girlfriend was.[3] (JSOF ¶¶143, 145.)

At this point, Kane stopped Perrot from speaking and identified himself as a City of Springfield Police Officer. (JSOF ¶143.) After identifying himself, Kane read Perrot his Miranda rights. (JSOF ¶143.) After Perrot received his Miranda rights, Perrot continued to speak freely. (JSOF ¶144.) Kane asked Perrot about the break-in on Covel Street and the location of a pocketbook taken from the residence that belonged to Emily Lichwala. (JSOF ¶146.) Perrot admitted to the break-in and told Kane the location of the pocketbook. (JSOF ¶¶144, 146.) Perrot denied sexually assaulting Lichwala, saying words to the effect of "I didn't rape any old lady." (JSOF ¶145.)

At the conclusion of the blood draw, Kane returned to police headquarters and wrote up a report of his conversation with Perrot. (JSOF ¶147.) He submitted that report to his commanding officer Captain Brown and relayed the information to Sergeant Kelly. (JSOF ¶148.) Officers Kelly and Clapprood quickly located the pocketbook taken during the Covel Street burglary in the location where Perrot said he had discarded it. (JSOF ¶149.) Kane was not involved in this search or recovery.

---

[3] Kane had not seen Perrot's girlfriend at the arraignment because Kane was not present at Perrot's arraignment.

Prior to his December 1987 trial, Perrot moved to suppress various pieces of evidence obtained during the investigation into these sexual assaults and burglaries. With regard to Kane, on December 7, 1987, Perrot moved to suppress the statements he made during his December 10, 1985 blood draw and the pocketbook thereafter located. (JSOF ¶166.) At that December 7, 1987 hearing, Perrot's attorney argued that, pursuant to a recent Supreme Court ruling in the case of *Michigan v. Jackson*, 475 U.S. 625 (1986), Kane's post-arraignment questioning of Perrot after an attorney had been appointed violated Perrot's Sixth Amendment right to counsel even though Kane had advised Perrot of his Miranda rights. (JSOF ¶167.) The court initially expressed skepticism as to this constitutional argument but, after being provided with a copy of the opinion in *Michigan v. Jackson*, ultimately agreed and suppressed the statements Perrot made to Kane on December 10, 1985 – but not the discovery of the pocketbook. (JSOF ¶168.) Perrot was ultimately convicted on a number of charges, including the Covel Street break-ins and of the rape of Prekop. (JSOF ¶202.)

Perrot subsequently obtained a new trial in January 1992, in part, on the grounds that the pocketbook from the Covel Street break-in should not have been admitted into evidence at his first trial. (JSOF ¶¶203-05.) At his second trial, the pocketbook was excluded from evidence. (JSOF ¶206.) Nonetheless, Perrot was again convicted. (JSOF ¶236.)

On January 26, 2016, Perrot was granted a new trial *on charges relating to the rape of Prekop only* on the grounds that flawed opinion testimony regarding hair analysis offered by F.B.I. agents at his second trial materially affected the jury. (JSOF ¶318.) Of significance, the Court (Kane, J.) specifically denied Perrot's motion for a new trial on charges related to the Lichwala burglaries. (JSOF ¶319.)

On October 18, 2017, with 30 years gone by and no complaining witness (because Prekop was by then deceased), prosecutors declined to re-prosecute Perrot for the rape of Prekop.

(JSOF ¶321.) Perrot thereafter filed the subject action against the Defendants, contending that through their actions he was wrongfully convicted *of the rape of M.P. only* and his civil rights were violated. *The subject action does not challenge, and Perrot did not receive post-conviction relief for, his original conviction for the Covel Street break-ins involving Emily Lichwala.* The only acts by Defendant Kane identified by Perrot as wrongful in this action relate to Kane speaking with Perrot on December 10, 1985 and the subsequent discovery of the pocketbook from the Covel Street (Lichwala) burglary. (JSOF ¶286.)

**Argument**

**1. Standard of Review.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A 'genuine' issue is one that reasonably could be resolved in favor of either party, and a material fact is 'one that might affect the outcome of the suit under the governing law.'" *Wagner v. City of Holyoke*, 241 F. Supp. 2d 78, 82 (D. Mass. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986)). In order to avoid summary judgment, the plaintiffs must establish the existence of every element essential to their case on which they will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The plaintiffs cannot rely on "mere allegations or evidence that is less than significantly probative." *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Summary judgment opponents must do more than show that there is some metaphysical doubt as to the material facts. Instead, the opponents must present definite, competent evidence in order to survive the motion. *Maldonado-Denis, supra,* at 581. Not every genuine factual conflict necessitates a

trial. *Wagner, supra* at 83. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Id*. (quotations and citation omitted).

**2. <u>As A Police Officer, Kane Is Entitled To Qualified Immunity Because His Actions Did Not Violate A "Clearly Established" Constitutional Right.</u>**

Summary judgment is appropriate on all of Perrot's civil rights claims against Kane because Kane is entitled to qualified immunity on the 42 U.S.C. §1983 claims as a matter of law.[4] A police officer, as a public official, is entitled to qualified immunity as long as his conduct does not violate clearly established statutory or constitutional rights of which a reasonable police officer would know. *Goddard v. Kelley*, 629 F. Supp. 2d 115 (D. Mass. 2009) at 127.

The First Circuit has adopted a two-part test for qualified immunity. Under this test, the relevant inquiries are: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).[5] "The second prong, in turn, has two elements: '... (a) whether the legal contours of the right in question were sufficiently clear that a reasonable [person in the defendant's position] would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable [person in the defendant's position] would have understood that his conduct violated the right.'" *See, e.g., Stamps v. Town of Framingham*, 813 F.3d 27 (1st Cir. 2016) at 34. "[T]he

---

4 "Whether an official's actions are protected under the doctrine [of qualified immunity] is an issue that is appropriately decided by the court during the early stages of the proceedings and should not be decided by the jury." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 127 n.19 (D. Mass. 2009) (citing to *Tatro v. Kervin*, 41 F.3d 9, 15 (1st Cir. 1994)).

5 "The qualified immunity inquiry allows for the inevitable reality that law enforcement officials will in some cases reasonably but mistakenly conclude that their conduct is constitutional, and that those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." *Davila-Lynch v. City of Brockton*, 2011 WL 4072092, *3 (D. Mass. Sept. 12, 2011) (quoting *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1373 (1st Cir. 1995)).

salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado*, *supra*, at 269. The qualified immunity analysis is thus contextual. "The question is not whether some right has been clearly established at a highly abstract level - for example, the right to be free from unreasonable searches and seizures - but whether, under the circumstances that confront the official, a reasonable official would understand that what he is doing violated that right." *Goddard*, *supra* at 127 (internal quotations omitted). If police officers "of reasonable competence could disagree on the lawfulness of the alleged conduct, immunity should be recognized." *Nolan v. Krajcik*, 384 F. Supp. 2d 447 (D. Mass. 2005) at 465 (internal quotations omitted). "In essence, the court must determine 'whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right.'" *Fontanez v. City of Worcester*, 2012 WL 2829613, *6 (D. Mass. July 9, 2012) (quoting *Burke v. Town of Walpole*, 405 F.3d 66, 77 (1st Cir. 2005)). "Thus, the defense of qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Nolan, supra,* at 465*; see also Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011).

Here, the record shows that Kane's interaction with Perrot consisted of the following: (a) Kane had no interaction at all with Perrot prior to December 10, 1985, when Kane was dispatched to observe a blood draw at the York Street jail; (b) Kane was provided with a waiver, signed by Perrot, agreeing to the blood draw[6]; (c) Kane did not initiate any conversation with Perrot; (d) when Perrot initiated a conversation, Kane stopped him, identified himself, read Perrot his *Miranda* rights and asked Perrot if Perrot wished to keep talking; and (e) Perrot kept talking. Rather than incompetence or knowing malfeasance, Kane's actions show a conscientious police

[6] There is no dispute in the record regarding Perrot's consent to the blood draw.

officer cognizant of his duties and responsibilities who stops a free-speaking suspect to clarify his own identity and the suspect's Constitutional rights to remain silent and *have an attorney present*. If Kane had intended to knowingly violate Perrot's Sixth Amendment rights, he would not have advised Perrot of those rights.

Moreover, the notion that a voluntary post-arraignment confession obtained by a police officer outside of the presence of defense counsel violated a defendant's Sixth Amendment rights even after the police officer advised a defendant of his *Miranda* rights was not a notion that Kane should have been reasonably expected to know on December 10, 1985. Indeed, the Supreme Court case articulating this notion –the case relied upon by Perrot's defense counsel in December 1987 in successfully suppressing Perrot's statements at the blood draw – was only *argued* on December 9, 1985, *the day before Kane met with Perrot*. That is, the United States Supreme Court heard arguments in the case of *Michigan v. Jackson*, which was a consolidated appeal from two Michigan Supreme Court cases, on December 9, 1985, and issued its opinion on April 1, 1986, one-hundred-and-sixteen days *after* Perrot spoke to Kane. *Michigan*, 106 S. Ct. 1404 (1986).[7] Accordingly, when Kane spoke with Perrot on December 10, 1985, he could not reasonably have been expected to know that any conversation with Perrot outside of the presence of counsel after Perrot had been advised of his *Miranda* rights would be presumptively violative of Perrot's Sixth Amendment rights because the Supreme Court had not yet articulated that notion at the time that Kane spoke with Perrot.[8] Indeed, statements made by the D.A. and the Judge during the pre-trial hearing two years later in 1987, at which Perrot's defense counsel argued for the December 10, 1985 statements

[7] The formulation articulated in *Michigan v. Jackson* was subsequently overruled in *Montejo v. Louisiana*, 556 U.S. 778 (2009) (rejecting the notion that "a request for counsel at an arraignment should be treated as an invocation of the Sixth Amendment right to counsel at every critical stage of the prosecution.") 556 U.S. at 787.

[8] Kane, who had not been present at Perrot's arraignment, reported being told that, to the extent Perrot had counsel, his counsel was aware of, and had consented to, the 3:00 p.m. blood draw. That belief notwithstanding, Kane *still* stopped Perrot mid-statement to advise him of his right to have counsel present during the conversation.

to be suppressed, reinforce the reasonableness of Kane's behavior. At that hearing, neither the District Attorney nor the Court itself understood, at first, the basis for suppressing Perrot's statements to Kane. It was not until Perrot's defense counsel submitted the Supreme Court's April 6, 1986 decision in *Michigan v. Jackson* and the Court reviewed the case that the statements made on December 10, 1985 were ultimately suppressed.[9]

As a police officer, Kane is entitled to qualified immunity unless his actions were plainly incompetent or indicative of an intent to knowingly violate one of Perrot's "clearly established" rights. *See, e.g.*, *Maldonado, supra*, at 269. Kane is entitled to this immunity if a police officer "of reasonable competence could disagree on the lawfulness of the alleged conduct." *Nolan, supra,* at 465 (internal quotations omitted). Here, the right that Kane allegedly violated had not been articulated by the Supreme Court until nearly four months *after* Kane met with Perrot. Even on the eve of trial, two years after Kane met with Perrot, neither the District Attorney nor the court were familiar with the notion that post-arraignment statements by Perrot outside of the presence of counsel were presumptively violative of his Sixth Amendment rights. (Indeed, the Supreme Court itself would reject this notion twenty years later. *See Montejo v. Louisiana*, 556 U.S. 778 (2009).) Kane's actions in questioning Perrot on December 10, 1985 were reasonable, conscientious and undertaken after the invocation of Constitutional safeguards. He is therefore entitled to qualified immunity and all civil rights claims against him must be dismissed.

[9] Kane's belief in the reasonableness of his conduct was shared by the District Attorney himself. At the December 7, 1987 pre-trial hearing, after Perrot's defense counsel argued that *Michigan v. Jackson* held post-arraignment statements given outside the presence of counsel to be violative of a defendant's Sixth Amendment rights, the District Attorney himself stated "unfortunately, that is not the law in Massachusetts, as I read it[.]" (JSOF ¶169.)

**3. Kane Is Also Entitled To Summary Judgment Because He Was Not Involved In Perrot's Conviction For The Rape Of M.P.**

Kane's involvement with Perrot was exceedingly limited and, as far as Kane knew, involved only the October 24, 1985 burglary and assault of Lichwala. Kane and his partner Desrosiers took a brief report on that burglary and assault on October 29, 1985. Kane was not involved in the investigations into the second burglary of Lichwala's residence or the rape of Prekop that occurred on November 30, 1985. (JSOF ¶277-80.) The information Perrot gave to Kane at the December 10, 1985 blood draw – which Perrot acknowledges is the only basis for the charges he now levies against Kane (JSOF ¶286) – concerned only the location of a pocketbook taken from Lichwala. (JSOF ¶146.) Perrot's statements to Kane about the location of the pocketbook, however, were excluded from Perrot's first trial. (JSOF ¶168.) Furthermore, the pocketbook itself was excluded from Perrot's second trial. (JSOF ¶206.) Moreover, Kane did not testify as a witness at either of Perrot's trials. (JSOF ¶169.)

In 2016, Perrot was granted a new trial on the charges relating only to the rape of Prekop. Importantly, he was specifically denied a new trial on charges relating to other crimes, including the burglaries and assault of Lichwala – the only charges for which his statements to Kane were relevant evidence. He does not challenge his conviction for those crimes in the subject action. Because Kane's involvement in Perrot's conviction was exceedingly limited and, more importantly, limited to matters for which Perrot has not received post-judgment relief, Kane is entitled to summary judgment.

**4. Kane Is Entitled To Summary Judgment On Perrot's State Law Claims.**

Kane is entitled to summary judgment on Perrot's state law claims, to the extent that such claims are lodged against him. At paragraph 137 of the Amended Complaint, Perrot appears to assert a host of state law claims against the Defendants in this action, namely claims for violation

of M.G.L. c. 12, §11I, malicious prosecution, civil conspiracy, negligent and/or intentional infliction of emotional distress and spoliation of evidence. Perrot does not specify which defendants these claims are lodged against, or what facts he alleges in support of these claims. With regard to Kane, Perrot's only factual allegation is found at paragraph 102 of the Amended Complaint, in which he states, without evidence, that "[p]rior to [Perrot's] first conviction, Defendants, including Defendant Kane, fabricated a false statement, allegedly from [Perrot], concerning the location of incriminating evidence. That statement was false and fabricated – [Perrot] never gave it. Moreover, the things that [Perrot] did say, which were not incriminating, came after a police-initiated interrogation, of [Perrot], after he had been arraigned and appointed counsel, but without his counsel's presence, consent or even knowledge." This allegation, relating to the December 10, 1985 blood draw interaction, forms the entirety of Perrot's claims against Kane. It appears to be the basis of his §1983 civil rights claim that he was allegedly questioned in violation of his Sixth Amendment rights, as discussed above, for which Kane is entitled to qualified immunity. The court need not exercise pendant jurisdiction as to Perrot's state law claims. For the following reasons, they must fail on the merits along with Perrot's §1983 claim.

**<u>The State Law Claims Are Time Barred.</u>**

Kane is entitled to summary judgment on all of the state law claims on statute of limitations grounds, as the limited actions Perrot alleges Kane committed undisputedly occurred on December 10, 1985 and Perrot was undisputedly aware of them no later than the start of his second trial in January 1992. That is, Perrot's statement on December 10, 1985 was suppressed following the December 7, 1987 motion to suppress hearing, and the pocketbook from the 33 Covel Street robbery that belonged to Ms. Lichwala was not admitted into evidence during the second trial in

1992. This 30-year delay is, of course, far in excess of the statutes of limitations applicable to Perrot's state law claims. *See* M.G.L. c. 260 §2A; M.G.L. c. 258, §4.

**Negligent Infliction of Emotional Distress Claim.**

As a public employee, Kane is entitled to summary judgment on Perrot's negligent infliction of emotional distress claim pursuant to M.G.L. c. 258, §2, which provides that a public employee shall not be liable "for any injury or loss of property or personal injury or death caused by his negligence or wrongful act or omission while acting within the scope of his official employment."

It is undisputed that at all times relevant hereto, Kane was acting within the scope of his employment as a police officer. As such, he cannot be liable on a claim for negligent infliction of emotional distress as a matter of law. *Sadlowski v. Benoit, 2008 WL 2745157, *7 (Mass. Super. June 26, 2008)* (police officer is "a public employee" and was acting "within the scope of his employment"; as M.G.L. 258 "is the sole remedy for public employees' negligence, [the officer] cannot be held personally liable").

**Malicious Prosecution.**

Kane is likewise entitled to summary judgment on Perrot's claim for malicious prosecution. To establish a claim of malicious prosecution under Massachusetts law, "a plaintiff must show (1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice." *LaFrenier v. Kinirey, 478 F. Supp. 2d 126, 141 (D. Mass. 2007)* (internal quotations omitted). The burden is "on the plaintiff to show, as an essential part of the case, that the charges were instituted without probable cause." *Della Jacova v. Widett, 355 Mass. 266, 268 (1969).* "Furthermore, the plaintiff must

prove malice by showing that the defendant knew there was no probable cause for the prosecution, and that he acted with improper motive." *Fontanez v. City of Worcester, 2012 WL 2829613, at *9 (D. Mass. July 9, 2012).*

"The general rule in this Commonwealth is that conviction in the tribunal to which complaint was made, although reversed on appeal, is conclusive proof of probable cause, unless that conviction (1) was obtained solely by false testimony of the defendant in the action for malicious prosecution, or (2) is impeached on some ground recognized by the law, such as fraud, conspiracy, perjury or subornation of perjury as its sole foundation." *Della Jacova, supra, at 268-69*; *see also Ramos v. Gallo, 596 F. Supp. 833, 840 (D. Mass. 1984)* (plaintiff could not maintain malicious prosecution claim against police officer because plaintiff could not prove "that his conviction was obtained solely by the wrongful conduct" of said police officer).

It is undisputed that Kane had no involvement in any decision to prosecute Perrot. He also never gave testimony at either of Perrot's trials. Furthermore, there was obviously probable cause for the charges brought against Perrot, and the conviction against Perrot for the robbery of Ms. Lichwala – the only issue Kane had any involvement with – stands to this day. In addition, Kane's interactions with Perrot on December 10, 1985 in which he stopped Perrot from talking, introduced himself as a police officer and gave him his Miranda rights demonstrate that he was not acting with malice. Therefore, Kane is clearly entitled to summary judgment on the malicious prosecution claim.

**<u>Spoliation Claim.</u>**

Kane is also entitled to summary judgment on the "spoliation of evidence" claim. First, Perrot fails to identify what evidence was spoliated. Second, Perrot has put forth no evidence that remotely suggests that Kane was involved in spoliating any evidence. Again, Kane's only

involvement with Perrot was speaking to him during the blood draw on December 10, 1985 wherein Perrot admitted to breaking into Ms. Lichwala's home and stealing her pocketbook. This statement and the pocketbook were excluded from Perrot's trials and had nothing to do with any allegedly spoliation of evidence.

**Civil Conspiracy Claim.**

Kane is entitled to summary judgment on Perrot's civil conspiracy claim. "Massachusetts recognizes two types of civil conspiracy: true conspiracy and conspiracy based on vicarious liability." *Inman v. Siciliano, 2012 WL 1980408, *16 (D. Mass. May 31, 2012)*; *Taylor v. American Chem. Council, 576 F.3d 16, 34-35 (1st Cir. 2009)*. "To establish true conspiracy, plaintiffs must show that defendants, acting in unison, had some power of coercion over plaintiffs that they would not have had if acting independently." *Inman, supra* (quoting *Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1563 (1st Cir. 1994))*. "The second form of conspiracy requires first, a common design or agreement, although not necessarily express, between two or more persons to do a wrongful act and, second, proof of some tortious act in furtherance of the agreement." *Id*. (quoting *Aetna, supra at 1564)*). "Because it is vicarious liability, this type of civil conspiracy requires an underlying tort." *Taylor, supra at 35*.

In that Kane's only involvement with Perrot entailed Perrot's statements on December 10, 1985 regarding the burglary at Ms. Lichwala's home and the theft of her pocketbook, there is absolutely no evidence that he was involved in any type of civil conspiracy. Indeed, on December 10, 1985, the date of Kane's only interaction with Perrot, Kane acted independently at all times and committed no wrongful act in any event.

**Massachusetts Civil Rights Act Claim, M.G.L. c. 12 §11I.**

Kane is entitled to summary judgment on Perrot's Massachusetts Civil Rights Act claim pursuant to M.G.L. Ch. 12, §11I. To prove a claim under the MCRA, Perrot "must show an interference, or attempted interference, with the exercise or enjoyment of rights secured by the Constitution or the laws of the United States, or of Massachusetts, by means of threats, intimidation, or coercion." *Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 594 (2001)* (internal quotations omitted); *see also LaManque v. Massachusetts Dept. of Employment and Training, 3 F. Supp. 2d 83, 92-93 (D. Mass. 1998)* (to establish a cause of action under c. 12 §11I, "plaintiff must prove that her exercise or enjoyment of rights secured by the Constitution or laws of either the United States or Massachusetts was interfered with, or that there was an attempted interference, and that the interference or attempted interference was by threats, intimidation or coercion").

"On its face, the MCRA contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do." *Goddard, supra at 128*. If a plaintiff cannot meet his burden of proving his underlying claims of violation of *§ 1983*, then an MCRA claim based on those same allegations cannot survive. *LaFrenier, supra at 141*; *Sietins v. Joseph, 238 F. Supp. 2d 366, 377-78 (D. Mass. 2003)*. For example, where police officers have probable cause to search and seize an individual's property and to arrest that individual, that individual cannot maintain claims against those police officers under either *§ 1983* or the MCRA. *Robinson v. Cook, 863 F. Supp. 2d 49, 64 and 69 (D. Mass. 2012).*

"For purposes of the MCRA, a 'threat' involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the

purpose of compelling or deterring conduct. 'Coercion' involves the application to another of such force, either physical or moral, as to constrain a person to do against his will something he would not otherwise have done." *Freeman v. Town of Hudson, 849 F. Supp. 2d 138, at 158* (D. Mass. 2012) (internal quotations omitted).

In this case, there is absolutely no evidence that Kane threatened, intimidated or coerced Perrot when he spoke to Perrot on December 10, 1985, and Perrot has not made any such allegations against Kane.

In addition to the foregoing, the same qualified immunity standard that applies under *§1983* also applies to claims under the MCRA. *Robinson, 863 F. Supp. 2d at 62*. Therefore, Kane is entitled to qualified immunity under *G.L. c. 12, §11I* to the same extent that he is entitled to qualified immunity under *§1983*. *Id*. As such, this Court should enter judgment in favor of Kane on Perrot's Massachusetts Civil Rights Act claim.

**Intentional Infliction of Emotional Distress Claim.**

Kane is entitled to summary judgment on Perrot's claim of intentional infliction of emotional distress claim. In order to prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove that: "(1) a Defendant intended to cause emotional distress or should have known that emotional distress was the likely result of their conduct; (2) Defendant's conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) Defendant's actions were the cause of the [plaintiff's] emotional distress; and (4) the [plaintiff] suffered emotional distress so severe that no reasonable person could be expected to endure it." *Freeman, supra at 159-60* (citing *Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976)*). "Recovery on such a claim requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to

inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Id. at 160* (internal citation omitted). Moreover, the plaintiff must do more than make a mere conclusory allegation that his emotional distress was "severe." *Id*.

In addition, where actions taken by police officers are objectively reasonable and do not violate plaintiff's constitutional rights under state and federal law, a plaintiff's claim for intentional infliction of emotional distress cannot survive as a matter of law. *Spencer v. Roche, 659 F.3d 142, 150 (1st Cir. 2011)*; *see also Sietins, 238 F. Supp. 2d at 379.*

Finally, when a police officer does not take "an active part" in the alleged "outrageous activities" that give rise to the plaintiff's claim for intentional infliction of emotional distress, such police officer cannot be liable for such intentional tort even if the officer is present at the time of the alleged activities. *Turkowitz v. Town of Provincetown, 2012 WL 5354545, at *10 (D. Mass. Oct. 26, 2012).*

In this instance, Kane's actions on December 10, 1985 were objectively reasonable under the undisputed facts and did not violate Perrot's constitutional rights under either state or federal law. In addition, Kane did not take part in any event that could form the basis of a claim for intentional infliction of emotional distress since Kane's only involvement with Perrot was listening to him, giving him his Miranda rights and asking him what he did with Ms. Lichwala's pocketbook after he admitted breaking into her home. Accordingly, Perrot cannot satisfy the necessary elements to bring a claim for intentional infliction of emotional distress.



102562039

The Defendant,
Richard Kane

By His Attorneys,

*/s/Carole Sakowski Lynch*
Carole Sakowski Lynch, BBO #547718
MORRISON MAHONEY LLP
1500 Main Street, Suite 2400
Post Office Box 15387
Springfield, MA 01115-5387
(413) 737-4373
(413) 739-3125 (fax)
clynch@morrisonmahoney.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 29, 2024.

*/s/Carole Sakowski Lynch*
Carole Sakowski Lynch