Volume: I
Pages: 1-215
Exhibits: 1-9

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 18-CV-10147

\- - - - - - - - - - - - - - - - - - - x

GEORGE PERROT,
Plaintiff,
vs.
CITY OF SPRINGFIELD, et al,
Defendants.

\- - - - - - - - - - - - - - - - - - - x

DEPOSITION OF GEORGE PERROT
Wednesday, July 12, 2023
North Central Correctional Center
500 Colony Road
Gardner, Massachusetts
10:16 a.m. to 3:55 p.m.
Reporter: Karen A. Morgan, CSR/RPR

first when I first woke up. I called her by my girlfriend's name.

Q. Do you have memory of that or is that something that you read over the years?

A. No. I have a memory of that because she said, George, this is your sister. I remember her telling me that and I looked up and there was several officers in my room.

Q. And as you sit here today, do you know the names of the officers that were in your room?

A. No.

Q. Do you recall what they looked like?

A. No, ma'am.

Q. Do you recall if they were men or women?

A. They were all men. I know that.

Q. Do you recall how many officers were in your room?

A. There were several. Maybe six maybe.

Q. So your memory is that six officers were standing in your bedroom?

A. Yeah. I'd say at least six, yeah.

Q. And they were all male?

A. Yes.

Q. And do you recall their race?

A. My recollection they were all white I believe.
Q. Your memory is that six white male police officers were in your room?
A. Best I can remember, yeah.
Q. And were they all uniformed?
A. The ones in my room, yeah.
Q. And was Nancy also still in your room?
A. Yes.
Q. What do you next recall?
A. Being brought out to the cruiser.
Q. You were brought out to the cruiser?
A. Yeah.
Q. And when you say brought out, what are you referring to?
A. They put handcuffs on me and walked me out of my house.
Q. Did you get out of your -- strike that. Did you get out of the bed on your own power?
A. No.
Q. So can you describe for me what you recall happening?
A. They picked me up off the bed and put me in handcuffs.

Q. Was Marianne Popko in your room that evening when you were arrested?
A. I didn't see her, no.
Q. And you testified afterwards that once you were put in handcuffs I believe you made a run for it down the street towards the end of the road; is that accurate?
A. It is.
Q. And when you got to the end of the road, officers stopped you and brought you back over a fence.
A. Well, I ran into a back yard and the fence was there.
Q. And was Officer Marianne Popko part of the group that chased you down and put you back over the fence?
A. I couldn't tell you one way or the other.
Q. Do you remember seeing a female officer that evening when you were arrested?
A. I don't.
Q. You were brought to the police station afterwards and you testified that you were struck in the ribs.
A. I was, yes.

Q. Were you struck in the ribs by a female officer?
A. No, sir.
Q. Do you remember seeing a female officer during the booking procedure?
A. No, sir.
Q. And you testified that after you were booked, you went through about three interviews; is that accurate?
A. Several interviews, yes.
Q. Several interviews. You testified I think earlier about three with two plain shirt detectives?
A. Yes.
MS. GIZZI: Objection. Form.
Q. And were any of those plain clothes officers female?
A. No.
Q. You testified that you were brought up and down the stairs several times between your cell and your interview.
A. Yes.
Q. And you testified that for the most part it was a uniform officer that was bringing you up and down; is that fair to say?

MS. AGBIRO: Objection. Form.
A. That I can recall, yes.
Q. Was that officer ever a female officer?
A. No.
Q. You testified that there was a photo array that you were a part of.
A. I did.
MS. GIZZI: Objection. Form.
Q. And do you ever recall if Officer Popko was involved in the photo lineup?
A. No.
Q. What, if anything, did Officer Popko do in your opinion that violated your constitutional rights?
MS. GIZZI: Objection. Form. Calls for a legal conclusion.
A. I never met Officer Popko so I couldn't tell you.
Q. Do you know if Marianne Popko had anything to do with your case?
MS. AGBIRO: Objection. Form.
A. Just based on the documents that I've written. That I've read pretty much. Excuse me.
Q. Understood. Do you know what position or

(Discussion off the record.)

MS. deSOUSA: Sorry about that. Thank you.

CONTINUED EXAMINATION BY MS. deSOUSA

Q. Mr. Perrot, you're aware that you're still under oath?
A. I do.
Q. So in your complaint you have named in addition to Officer Popko that you just answered some questions for Attorney Ciccarelli about, you've also named Cheryl Clapprood. Do you recall that?
A. Again, my attorneys wrote it.
Q. So you're not aware that you have named Cheryl Clapprood in this complaint?
MS. AGBIRO: Objection. Form.
A. No.
Q. I'm going to ask you to assume that you did name Cheryl Clapprood in this complaint or you can review Exhibit 1 if you want. It should still be in front of you. Do you have that in front of you, sir?
A. I do.
Q. And can you look it over? Actually, you

can start just with the caption. Do you see that Cheryl Clapprood is named?

A. I do.

Q. Does that refresh your recollection at all about bringing a claim against a Springfield Police Department employee named Cheryl Clapprood?

A. That's what it says there, ma'am.

Q. Other than looking at this piece of paper on which her name is written, you don't have any specific recollection that you brought a lawsuit against someone named Cheryl Clapprood?

A. Again, ma'am, my attorneys wrote it for me.

Q. I'm just asking you if you yourself know.

A. A specific name, no.

Q. And you just testified in response to a series of questions that were posed to you by Attorney Ciccarelli that during your arrest, your transport and your interrogations that occurred on December 6th and December 7th of 1985 that you didn't see any female officers. You have no recollection of seeing any female officers during that time; is that correct?

A. That's correct, ma'am.

Q. And at any time at all in this case have you ever been questioned by a female member of the Springfield Police Department?

MS. AGBIRO: Objection. Form.

A. No.

Q. Have you ever been questioned or interrogated by another person when a female member of the Springfield Police Department was present?

MS. AGBIRO: Objection. Form.

A. No.

Q. As we sit here today, do you know what position Cheryl Clapprood held at the Springfield Police Department in November and December of 1985?

A. No.

Q. Do you know what shift she worked?

A. No.

Q. Do you have any knowledge based on your review of materials in a sense you were convicted of any involvement that Cheryl Clapprood had in your conviction?

A. Other than reading her name, no.

Q. Are you aware, sir, that you have alleged a conspiracy with members of the Springfield Police Department?

confession against you?

A. The Springfield Police Department.

Q. And what false confession are you speaking of?

A. November 30, 1985.

Q. So you're not referring to the confession that Frannie Bloom was involved in?

A. No. I'm referring to the one you put before me, ma'am, as an exhibit.

Q. And so you believe that that was a false confession?

A. I know it was a false confession, yes.

Q. But you signed it?

A. Yes, I did.

Q. And you also had signed Miranda cards that night; correct?

A. Correct.

Q. And this wasn't your first time that you were arrested; correct?

A. It wasn't, ma'am, no.

Q. In fact, the court found, did they not, that you were fully aware of your legal rights due to your prior multiple involvements with the court system; isn't that correct?

MS. GIZZI: Same objection.
A. That's correct, ma'am.
Q. Okay. And do you know -- do you have any knowledge or facts that Cheryl Clapprood ever conferred with any other member of the Springfield Police Department about your arrest and conviction in 1985 or 1986?
A. Not to my knowledge, ma'am. No.
Q. And same with Marianne Popko. Do you have any information that she ever conferred with any other defendant in this matter about this matter?
A. Other than her name being in the discovery.
Q. What document in particular are you saying you saw Marianne Popko's name in?
A. I can't tell you specifically the document but I've read her name that she was involved questioning Mary Prekop.
Q. I'm sorry. She was involved in what?
A. Questioning Mary Prekop.
Q. Mary Prekop?
A. Yes.
Q. What do you mean by questioning Mary Prekop?

A. Well, asking her about the incident, what happened with the case.

Q. And as a result of that questioning, was a statement generated?

MS. AGBIRO: Objection. Form.

A. Not to my knowledge, no.

Q. And up until the date of her death did Mary Prekop ever identify you as her assailant?

MS. GIZZI: Objection. Form.

A. Never.

Q. So Marianne Popko didn't falsify that Mary Prekop identified you; correct?

MS. GIZZI: Objection. Form.

A. Never said she did.

Q. In fact, no member of the Springfield Police Department ever falsified that you were identified by Mary Prekop; isn't that true?

MS. GIZZI: Objection. Form.

A. There was no identification in the case, no.

Q. And in fact, she sat in the courtroom and said she did not identify you; isn't that correct?

MS. GIZZI: Objection. Form.

Q. You heard her say that from the witness

pocketbook, that was not a true allegation in this pleading?

A. Absolutely not.

Q. Okay.

A. As you stated, alleged, ma'am.

Q. Sir, you allege in your complaint that members of the Springfield Police Department in or before 1985 regularly withheld exculpatory or impeachment evidence. Upon what did you base that allegation that there was a regular practice of the Springfield Police Department to do that?

MS. GIZZI: Objection. Form. Calls for a legal conclusion.

A. I'd have to read the complaint again, ma'am. I don't know how I stated it.

Q. Do you have any information about other examples where the Springfield Police Department allegedly withheld exculpatory or impeachment evidence?

A. Well, I've read case law where they have, yes.

Q. What case law?

A. Ma'am, I don't know what the specific names are but I've read case law. Marchand case.

Q. Your understanding is the Marchand case is case law?

MS. AGBIRO: Objection. Form.

A. I don't know specific cases off the top of my head, ma'am. I'm not a lawyer.

Q. How about conducted illegal interrogations of juveniles, that it's a regular practice of the Springfield Police Department to conduct illegal interrogations of juveniles?

MS. GIZZI: Objection. Form.

A. Again, I've seen case law on that as well.

Q. Can you point to any specific cases?

A. Not off the top of my head, ma'am. Again, I'm not a lawyer. No.

Q. Specific facts?

A. No.

Q. How about planted physical evidence? Did you have any specific examples in mind of charges that the Springfield Police Department on or before 1985 regularly planted physical evidence?

MS. GIZZI: Same objection.

A. Same answer, ma'am. I've read case law, yeah.

Q. But you can't point to any specific

CERTIFICATE

Commonwealth of Massachusetts
Suffolk ss.

I, Karen A. Morgan, Certified Shorthand Reporter and Notary Public in and for the Commonwealth of Massachusetts, do hereby certify that GEORGE PERROT, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am neither related to or employed by any of the parties in or counsel to this action, nor am I financially interested in the outcome of this action.

In witness whereof, I have hereunto set my hand this 24th day of July, 2023.

Karen A. Morgan
CSR/RPR

My commission expires:
September 28, 2029