RECEIVED
FEB 04 2019
CITY OF SPRINGFIELD
Law Department



Volume: I

Pages: 1-194

Exhibits: 1-15

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

Docket No. 18-cv-10147

- - - - - - - - - - - - - - - - - - -

GEORGE PERROT,
Plaintiff
vs.

THOMAS KELLY, THOMAS JARVIS, RICHARD KANE, CHARLES ARPIN, JOHN SCANLON, DAVID LOUDEN, THOMAS KENNEDY, CHIEF ERNEST STELZER, MARIANNE POPKO, PAUL GLANTZ, RONALD ST. GERMAIN, ANDREW CANEVARI, CHERYL CLAPPROOD, CAPTAIN JOHN BROWN, UNKNOWN OFFICERS OF THE SPRINGFIELD POLICE DEPARTMENT, THE CITY OF SPRINGFIELD, MASSACHUSETTS, FRANCIS BLOOM, WILLIAM EUBANKS, WAYNE OAKES and UNKNOWN AGENTS OF THE FEDERAL BUREAU OF INVESTIGATION,
Defendants

- - - - - - - - - - - - - - - - - - -

DEPOSITION of FRANCIS BLOOM

January 23, 2019 10:30 a.m.-3:53 p.m.

Jones & Fuller Reporting

10 High Street

Boston, Massachusetts

Reporter: Cynthia F. Stutz, CSR

any memory of it.

Q. Do you have any memory of Mr. Perrot's trial, the trial that you prosecuted?

A. Yeah, certain parts of it.

Q. Do you have any memory of aspects of the investigation between when you were first called to the station on December 7th and the trial?

A. Independent memories?

Q. Let's start there.

A. When you say investigation, I mean, from my purposes the investigation was over by the time I got involved. I understand there were still physical evidence that was being processed, but the only thing that I may have done that I guess you could say was part of the investigation was the lineup. Other than that, I wouldn't consider anything else I did investigatory, for lack of a better word.

Q. Before you got involved in Mr. Perrot's case did you know either Miss Prekop, Miss Marchand or Miss Lichwalla?

A. No.

Q. And when you say that you were directed to go to the station to approve a lineup, can you

explain to me what your role was with respect to approving a lineup?

A. I have no memory of doing that there, but -- Excuse me. Let me withdraw that. I have no memory of going to the lineup.

Post arrest I have done lineups before. I've been directed by the DA, go up there. And my role in that kind of scenario was to make sure that the lineup was fair to whoever it was who was being looked at as a suspect. You know, the common sense stuff. Someone's got a beard, the defendant, you know, they put seven guys in there that are clean shaven. That type of thing.

Just, it would have been him telling me, Make sure there's no problems with the lineup. To me that meant make sure that it looks fair on its face by the time they bring the civilians in to look at it. That would have been my only reason being up there.

Q. So in the mid eighties did the District Attorney's office have a policy of sending assistant District Attorneys to supervise a lineup to make sure the results would be admissible?

A. I don't want to say a policy. What I

Q. Did you observe any questioning of Robert Timmerman by others at the police station?
A. No.
Q. I mean, did the Springfield Police Department have, you know, the interrogation room set up where somebody could monitor it either through a camera or through a window?
A. I don't think they had cameras then, I really don't.
Q. Did they have like a two-way window for those?
A. No.
Q. Do you know who did question Robert Timmerman?
A. No idea. No memory.
Q. Was it Thomas Kelly?
A. I have no idea.
Q. I want to show you some documents. But first -- So I think you said that you personally would not have taken physical evidence somewhere because that would have been making yourself a witness in the case, essentially?
A. Correct.
Q. Did you take evidence to Washington, D.C.

in this case to give it to the FBI?

A. No.

Q. Did you --

A. Was I with Tom Kennedy when he was transporting evidence. I believe that's correct. I never touched it.

Q. Why did you go with Thomas Kennedy to take evidence to the FBI?

A. To talk to the serologist and the hair and fiber person who had made findings concerning Mr. Perrot and to interview them before the trial.

Q. And that's Eubanks and Oakes that we're talking about here, correct?

A. Correct.

Q. Did you have an appointment to meet with either of them when you traveled to D.C.?

A. I must have.

Q. Why do you say you must have?

A. I didn't go to Washington hoping that they were going to be there. What if Eubanks was testifying in San Diego? The DA had to approve the plane and the, you know, the expenses for the plane and the hotel and the rest of it. I must have had an appointment with them.

CERTIFICATE

COMMONWEALTH OF MASSACHUSETTS

COUNTY OF SUFFOLK

I, CYNTHIA F. STUTZ, Certified Shorthand Reporter and Notary Public duly commissioned and qualified in and for the Commonwealth of Massachusetts, do hereby certify:

That the witness whose testimony is hereinbefore set forth, was duly sworn by me and that such testimony is a true and accurate record of the testimony given by the witness.

I further certify that I am neither attorney, nor counsel for, nor related to or employed by any of the parties to the action; I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of January, 2019.

Cynthia F. Stutz

CYNTHIA F. STUTZ, Notary Public

My Notary expires August 1, 2019