IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

CASE NO. 18-cv-10147

**************************************************

GEORGE PERROT, *
Plaintiff *
v. *
THOMAS KELLY, THOMAS JARVIS RICHARD KANE, *
CHARLES ARPIN, JOHN SCANLON, DAVID LOUDEN, *
THOMAS KENNEDY, CHIEF ERNEST STELZER, *
MARIANNE POPKO, PAUL GLANTZ, RONALD ST. GERMAIN,*
ANDREW CANEVARI, CHERYL CLAPPROOD, CAPTAIN *
JOHN BROWN, UNKNOWN OFFICERS OF THE SPRINGFIELD *
POLICE DEPARTMENT, the CITY OF SPRINGFIELD, *
MASSACHUSETTS, and FRANCIS BLOOM, *
Defendants *

**************************************************

DEPOSITION OF: ANDREW CANEVARI
APPEARING REMOTELY FROM:
BRADENTON, FLORIDA
July 21, 2023 10:06 a.m.
Brenda M. Ginisi
Court Reporter

something, do you understand what I mean?

A. Yes, ma'am.

Q. Now, I know that you have documents that are in front of you that were sent to you by your attorney.

A. Yes.

Q. But without thinking about those documents, what is your independent memory of your involvement in the investigation of the Emily Lichwala and Mary Prekop break-ins in 1985?

A. I had no involvement in those investigations, in those particular victims.

Q. So you have no involvement, at all, with the Emily Lichwala investigation?

A. That's correct.

Q. Okay. You didn't have any involvement on the Mary Prekop investigation?

A. That is correct.

Q. Did you have any involvement in the Mae Marchand investigation?

A. Yes.

Q. What was your involvement in the Mae Marchand investigation?

A. I was two-fold, actually. As I

wrote in this report, I'd have to refer to it. My independent recollection is minimal, at best. In fact, the only recollection I have I could say say satisfactorily, is my rereading these reports I wrote, and the evidence slips I had, because I remember going out there.

I remember going out there. I remember going out there with John Regnier, Detective John Regnier. And when we went out we observed the scene, the broken window, the fact that officers had been there before. There was some fingerprint powder.

And beyond that, I recall that we found a second window that -- that an attempt would be made to enter. And we made some observations there. Took some fingerprints, took some photographs. And I recall, we also collected some evidence, I thought, from a bed. I remember collecting bed sheets and turning those in for evidence, possibly.

Q. Okay. Do you remember the first window that you saw that was broken?

A. Yeah, that was -- that was -- you know, that was a mess. That was completely broken

A. No.

Q. Do you, personally, know George Perrot?

A. No. I only met him -- my recollection is I only met him that one night that he came to the police department. I was a shift supervisor on the four to 12. And I might have asked him some questions, and I might have witnessed the statement he gave. But beyond that, my recollection's I never met him before that or after that.

Q. Okay. Do you know an individual named Jeff Adkins?

A. I'd have to refer to my notes. But I think Jeff Adkins was one of the people who came in that night and gave us a statement.

Q. Okay. Is that your only recollection of any interaction with an individual named Jeff Adkins?

A. Yes.

Q. Okay. How been about an individual named Robert Timmerman.

A. I'd have to refer to my notes again. But I also believe Robert Timmerman came in that

(Exhibit 7, Report,
September 22, 1985, marked)

Q. (By Ms. Agbiro) Okay. Did you get a chance to review the copy you have?
A. Yes, ma'am.
Q. Okay. Now, is that your name at the bottom of this report?
A. Yes, it is.
Q. Does that mean that you drafted this report?
A. Yes, I did.
Q. Okay. And now, it says here that the initial investigation was conducted by Jarvis and Mulvagh, I guess. What was that? I couldn't hear you.
A. Brian Mulvagh, is the officer's name.
Q. Now, it states here that one of the officers identified by George Perrot as being one of the white male youth that were hired to paint around Mae Marchand's house?
A. Yes. That's what I wrote down.
Q. Okay. Now, it says that Perrot has

an extensive file with the department. What did you mean by that?

A. That means that he has an extensive arrest record.

Q. Okay. And how did you become aware of that arrest record?

A. I have no independent recollection. Whether I went and looked him up in records or -- that's what I assume I would have done. I wouldn't have said it unless I knew it.

Q. All right. And then it says here that -- that "Perrot called DB at about 7:00 p.m. on September 21st"; do you see that?

A. Yes.

Q. Does "DB" stand for detective bureau?

A. Yes, it does.

Q. And it says, that, "Perrot agreed to come in and talk to us"; is that right?

A. Yes.

Q. Okay. Who did Perrot talk to, when he came in on September 21st?

A. I don't have his statement so I don't know who actually took it. I'm assuming,

C E R T I F I C A T E

COMMONWEALTH OF MASSACHUSETTS

I, BRENDA M. GINISI, a court reporter and Notary Public, do hereby certify:

ANDREW CANEVARI, the witness whose testimony is hereinbefore set forth, was duly sworn by me, pursuant to Mass. R. Civ. P. 27, 29, 30, 30A and 31, and that such testimony is a true and accurate record of my stenotype notes taken in the foregoing matter, to the best of my knowledge, skill and ability.

I further certify that I am not related to any parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 15th day of August, 2023.

Brenda Ginisi

Brenda M. Ginisi          My Commission expires:
Notary Public             June 2, 2028