# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss. DOCKET NO. 85-5415 THRU 85-5420

COMMONWEALTH

v.

GEORGE PERROT
Defendant

I decline to act on this motion. The defendant's convictions were affirmed on appeal. The Massachusetts appellate courts already considered and rejected the arguments the defendant raises in this current motion for a new trial. Moreover, the defendant previously filed a motion for new trial, which this court (Wernick, J.) allowed. The Appeals Court reversed the allowance of the motion for new trial and once again affirmed the defendant's convictions. The Supreme Judicial Court denied the defendant's appeal from the Appeals Court's decision.① In the current motion for a new trial the defendant asks the court to once again review the same issues already considered by the Supreme Judicial Court and the Appeals Court. I decline to do so.

Constance M. Sweeney
Rg Admin. Judge - W.Mass 12/05/06

① For Appellate history refer to: 407 Mass. 539 (1990) 38 Mass. App. Ct. 478 (1995) 420 Mass. 1104 (1995) 58 Mass. App. Ct. 1102 (2003) and 441 Mass. 1104 (2004)

n. 12-5-06

## DEFENDANT'S MOTION FOR A NEW TRIAL

Now comes the defendant, pro se, and moves this Honorable Court to grant him a new trial pursuant to MASS. R. CR. PRO. 30(b). The Defendant states as grounds for his motion that he was denied a fair trial and the rights guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights, and the laws of the United States and the Commonwealth of Massachusetts as more fully set forth in his accompanying memorandum in support of his motion.

Respectfully submitted,

George Perrot

November 25, 2006

George Perrot, Pro Se
P. O. Box 100
South Walpole, MA 02071

RECEIVED
NOV 29 2006
CLERK OF COURTS
COUNTY

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

DOCKET NO.
85-5415
THRU
85-5420

COMMONWEALTH )
)
v. )
)
GEORGE PERROT )
Defendant )

HAMPDEN COUNTY
SUPERIOR COURT
FILED
NOV 29 2006
[signature]
CLERK-MAGISTRATE

DEFENDANT'S MOTION FOR A NEW TRIAL

Now comes the defendant, pro se, and moves this Honorable Court to grant him a new trial pursuant to MASS. R. CR. PRO. 30(b). The Defendant states as grounds for his motion that he was denied a fair trial and the rights guaranteed to him by the Sixth and Fourteenth Amendments to the United States Constitution and Article XII of the Massachusetts Declaration of Rights, and the laws of the United States and the Commonwealth of Massachusetts as more fully set forth in his accompanying memorandum in support of his motion.

Respectfully submitted,

[signature]

November 25, 2006

George Perrot, Pro Se
P. O. Box 100
South Walpole, MA 02071

136. n. 11/30/06

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, SS

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
HAMPDEN SUPERIOR COURT
NOS. 85-5415,16,18,20,25

COMMONWEALTH

V.

GEORGE PERROT

HAMPDEN COUNTY SUPERIOR COURT FILED NOV 29 2006 CLERK-MAGISTRATE

MEMORANDUM IN SUPPORT OF A MOTION FOR NEW TRIAL UNDER MASS. R. CRIM. P. 30(b)

Procedural History

There were two house breaks in Springfield on November 30, 1985 (Tr.I/119-26,127,134-35).

On December 16, 1985, a Hampden County grand jury indicted the defendant for armed robbery (85-5415), indecent assault and battery (85-5416), aggravated rape (85-5418), burglary and assault in a dwelling (85-5420), and breaking and entering with intent to commit a felony (85-5425) (Tr.I/98-100). There was a pre-trial motion to suppress the defendant's statements to the police admitting the housebreaks but not the rape.

On December 14, 1987, a jury convicted the defendant of all five charges. On appeal, the defendant argued error in (1) the denial of his pretrial motion to suppress oral and written statements, and (2) the admission in evidence of the pocketbook of one of the victims under the inevitable discovery rule.



137. n.11/30/06

The Supreme Judicial Court reversed the convictions on June 4, 1990. Commonwealth v. Perrot, 407 Mass. 539 (1990) (refusing to suppress the defendant's statements, but concluding that admitting a pocketbook found as a result of a different, illegally obtained statement, on grounds of inevitable discovery was error and the error was not harmless beyond a reasonable doubt).

On January 9, 1992, the defendant was convicted again of the same five charges. The defendant appealed arguing that: (1) the trial court erred in denying a motion to dismiss for prosecutorial misconduct in forging the defendant's confession to intimidate two other men into admitted certain charges against them, (2) the trial court improperly excluded all references to the forged confession, (3) the trial court should have granted his motion for a required finding of not guilty, (4) the trial court erred in admitting evidence of the "product rule" (statistical distribution of certain enzyme markers in the population, an argument Justice Murphy felt was prejudicial and excluded from the defendant's First Trial [Tr.IV/3-5, of defendant's First Trial]), (5) trial counsel provided ineffective assistance in introducing a statement that contained references to the defendant other alleged crimes, and (6) the jury was not drawn according to statutory procedure.

The Appeals Court affirmed the conviction. Commonwealth v. Perrot, 38 Mass. App. Ct. 478 (1995), addressing the first two claims and concluding that the remaining claims were without merit,

Id. at 482. According to the Appeals Court, even though the prosecutor forged the defendant's name on a bogus confession immediately after the defendant's first conviction, implicating two of his friends to try to force these friends to confess, it was not error to refuse to dismiss the charges with prejudice because this "confession" failed to get the friends to confess and was not used against the defendant in his second trial. Before this second trial, a police officer discovered this bogus confession in the file, told the ADA, who disclosed it to the defendant's lawyer, who filed a motion to dismiss with prejudice on grounds of prosecutorial misconduct. The Appeals Court affirmed the denial of this motion because the forged confession was not used against the defendant at his second trial and he suffered no prejudice. Id. at 482.

The SJC denied the defendant's application for further appellate review. Commonwealth v. Perrot, 420 Mass. 1104 (1995).

On April 25, 2000, the defendant filed his first motion for a new trial arguing that the prosecutor made an improper closing argument, that trial counsel was ineffective for failing to preserve certain appellate issues, and that appellate counsel was ineffective in failure to argue these trial errors on appeal. The motion court determined that all issued raised were waived or asserted ineffective assistance and all are reviewed for substantial risk of a miscarriage of justice.

The specific errors that supported the motion court's decision to reverse were: (1) the prosecutor made references in closing argument to the absence of evidence, which the prosecutor had successfully excluded (the forged confession, which the Appeals Court had already determined was irrelevant); (2) the prosecutor's comments during closing argument regarding the presumption of innocence were improper; (3) the prosecutor vouched for his witnesses; (4) the prosecutor referred to evidence not in the record; (5) the prosecutor referred to excluded evidence; and (6) the prosecutor assumed the role of a thirteenth juror.

According to the motion court, the Appeals Court decision foreclosed the first issue, the second issue was error compounded by the jury instructions and mislead the jurors regarding the Commonwealth's burden of proof in a case where Ms. Prekop all but testified that the defendant was not her assailant, the voluntariness of his confession was strongly attacked based on credible evidence, and there were substantial issues as to how the gloves got into Ms. Prekop's bedroom and onto the bed (not the location of the attack). Regarding the defendant's third issue, that the prosecutor improperly vouched, the motion court agreed. The motion court similarly agreed with the defendant's fourth argument that the prosecutor reached extensively outside the record during closing argument. The motion court agreed that the defendant's fifth issue, reference to facts not in evidence, was

also error. Finally, the motion court concluded that the sixth issue, was further evidence of the prosecutor's excess, but would not require a new trial.

These issues combined, according to the motion court caused a substantial risk of a miscarriage of justice. Accordingly, on September 10, 2001, the Superior Court allowed the defendant's motion for a new trial. The prosecutor's errors were pervasive and counsel had not sound excuse for failing to object to these improper arguments, according to the motion court. Memorandum of Decision, 15-39, attached hereto.

Other issues raised in the motion for a new trial (but which were deemed to be without merit were that appellant counsel was ineffective for failing to raise the following issues, or in failing to claim that trial counsel was ineffective for failing to raise them: specifically that the Commonwealth withheld the following allegedly exculpatory evidence; (1) that police were unable to match a collected palm print or finger print referenced in a report by Officer Cheetham with anyone, and (2) that there was certain blood testing done in a related matter. According to the motion court, trial testimony did not show that the prints, which were unusable, were exculpatory, and the blood test exculpated the defendant in another case, but not this one. The defendant also argued that counsel was ineffective for not calling a hair expert,

and instead chose cross-examination (Tr.II/356-82). According to the motion court, there was not evidence that a hair expert could have helped the defense.

The defendant asserted error in the general versus specific intent instruction. According to the motion court, the instruction was not challenged and the issue was identity and not intent. Finally, the defendant sought to re-litigate the motion in limine to exclude evidence that the prosecutor used a forged confession to try unsuccessfully for force witnesses to implicate the defendant. The motion court would not hear this argument because the Appeals Court ruled that the forged confession evidence was irrelevant. Memorandum of Decision 33-34 n.17.

The Commonwealth appealed and the Appeals Court reversed on May 12, 2003, in an unpublished decision. The defendant filed a petition for further appellate review on January 14, 2001, prepared by Attorney James Fox, and accompanied by a pro se supplement dated December 29, 2003.

On March 10, 2004, the Supreme Judicial Court declined to review the case.

## STATEMENT OF THE EVIDENCE

### The Assault

On November 30, 1985, the victim, Mary Prekop, lived at 27 Malibu Drive, Springfield, Massachusetts in 1985, was awakened when her dog started barking (Tr.I/127-30). After checking her house and returning to her bedroom, she heard glass breaking (Tr.I/133-34). She picked up a stick she had taken into her bedroom, (Tr.I/133), went into her kitchen, turned on a light, and a man standing there (Tr.I/135).

According to Ms. Prekop, she hit the man with her stick, (Tr.I/135-36), he assaulted her, (Tr.I/136), pulled her into her bedroom, and raped her on the floor. (Tr.I/135-39,148). She gave a statement to the police giving the details of the assault (Tr.I/170-73).

### The Defendant Is Innocent

Ms. Prekop described her alleged assailant as average in height and weight, clean shaven, (Tr.I/141), with black wavy hair,(the hair collected at the scene was brown) (Tr.I/146), and wearing a blue jacket, dark pants, and white sneakers (Tr.I/153-56,172). One week after this assault, Ms. Prekop could not identify her assailant from a line-up, which included the defendant (Tr.I/147; Tr.II/230-31,396; Tr.III/540). She insisted that the person who assaulted her was not in the line up. By inference and by uncontroverted direct evidence, the defendant had facial hair at

the time an assailant broke into Ms. Prekop's house and was not "clean shaven" as she insisted (Tr.III/540). Moreover, Ms. Prekop could not identify a photograph of the defendant as her assailant at trial and she testified that her assailant did not have a beard or mustache (Tr.III/158). She also could not identify the defendant at trial (Tr.III/160).

After the assault, and after Ms. Prekop received medical treatment, (Tr.I/143), she returned home where she found a pair of knit gloves that did not belong to her (Tr.I/144). When presented with the written statement that she made to the police, which referred to these gloves, among other things, Ms. Prekop insisted that she did not mention the gloves to the police and suggested that the police altered her statement by adding this reference to the gloves (Tr.I/144).

Ms. Prekop also testified that she found no blood on herself or on her bed and that the entire incident took place on the floor and not on the bed (Tr.I/163-64). She explained that the only bloodstain on her sheet was several years old and was left by her uncle who had a lung disease (Tr.I/164). This stain was still visible at the time Ms. Prekop was assaulted (Tr.I/164).

The Forensic Evidence

Lieutenant Thomas Kelly went to Ms. Prekop's home after the incident (Tr.I/187-88,190). She left for the hospital about ten minutes later (Tr.I/188). Lieutenant Kelly reportedly found two gloves in her bedroom, although he testified that one was on the bed and one on the floor, he later admitted that both gloves were on the floor (Tr.I/192; Tr.III/448-49). This was in conflict with Ms. Prekop's testimony that she found the gloves, hours later, when she returned from the hospital. Each of the gloves reportedly had a stain (Tr.I/196).

Lieutenant Kelly testified that he collected Ms. Prekop's bed sheet, which reportedly had the blood stain and some fibers (Tr.I/194-95). The FBI laboratory in Washington extracted blood and a single hair from the sheet, (Tr.II/290-92,352), and blood from the glove (Tr.II/284-85).

On December 7, 1985, the police arrested the defendant for purse snatching at a restaurant and for a subsequent break-in at another residence (Tr.II/389-90). After interviewing the defendant, Lieutenant Kelly obtained for a search warrant for his home at 87 Malibu Drive (Tr.II/405). Lieutenant Kelly brought the gloves to the defendant's residence where the defendant's sister, Nancy Wescott told him that she had a similar pair that were missing (Tr.II/406-07). Trial counsel did not object to this highly prejudicial hearsay testimony through which Lieutenant Kelly

attempted to connect the defendant with to the gloves.

Moreover, Ms. Wescott testified, by contrast, that she merely told Lieutenant Kelly that the gloves looked familiar and may belong to the defendant's girlfriend (Tr.III/546). According to Ms. Wescott, she told Lieutenant Kelly that the gloves did not belong to her (Tr.III/546).

On March 31, 1987, a Sergeant Thomas Kennedy, witnessed as the Commonwealth obtained a second blood sample from the defendant, (Tr.II/233-35), that was personally hand delivered by ADA Bloom (Tr.II/308). A blood expert testified that there was insufficient blood on the gloves to test for blood type so he tested only for genetic markers (Tr.II/286-87). According to this expert, the only test possible was an enzyme test showing type PGM 1+ on both gloves (Tr.II/287). The blood stain on the sheet contained four markers, PGM +1, EAP BA, HP 2-1, and TfC, which were four of a possible thirteen tested for (Tr.II/292-294,297). According to this expert, approximately eight percent of the population would be expected to have this combination of four markers (Tr.II/292-294,301).

Ms. Prekop was excluded as a donor for this blood from the bed sheet, but the defendant could not be excluded (Tr.II/299-300). This expert admitted that, if the blood stain were fresh, it would have been possible to test for all thirteen markers (Tr.II/308).

A hair analysis expert testified that only one human hair was recovered from the scene that was testable (Tr.II/352). According

to this expert, this hair was similar in microscopic characteristics as the defendant's hair (Tr.II/353). Mr. Prekop's hair was dissimilar (Tr.II/353). The hair analysis expert, however, admitted that, unlike fingerprint comparisons, hair comparisons do not constitute a basis for identification of a person (Tr.II/370-71). The hair recovered from Ms. Prekop's sheet also allegedly had a natural root, which was never tested (Tr.II/358).

The Defendant's Alleged Statements to Police

During his post-arrest interrogations, the defendant first denied breaking in to Mr. Prekop's home, but allegedly eventually admitted breaking into other houses on Covel and Malibu Streets. He consistently denied assaulting anyone. See Perrot, 407 Mass. at 541-42. He insistently denied both the fact of his statements to the police and their validity. Id. at 549, and, in the alternative, asserted that the statements were not voluntary.

There was evidence that the defendant ingested drugs and alcohol shortly before his arrest (Tr.III/509,538). He was either not permitted to sleep or was unable to sleep during many, many hours of interrogation (Tr.III/436,466-67,471-72,483,501,507-09,512). He was interrogated over and over during a period of approximately twelve hours starting at about 5:00 a.m., (Tr.III/393-94,397-98), and his sister testified that she saw bruises on his face and chest at the police station (Tr.III/539-41).

Detective Jarvis testified that, during the police interview, The defendant raised his voice, became very upset with himself and cried, and asked for Detective Jarvis' gun so that he could kill himself (Tr.iiI/486,513). There was no instruction on consciousness of guilt requested or given, and trial counsel did not object to the absence of this instruction (Tr.IV/630-69).

## ARGUMENT

THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL BECAUSE COUNSEL FAILED: (1) TO TEST THE HAIR ROOT OR TO CALL AN OPPOSING EXPERT; (2) TO OBJECT TO HIGHLY PREJUDICIAL HEARSAY EVIDENCE THAT CONNECTED THE DEFENDANT TO THE GLOVES ALLEGEDLY FOUND AT THE SCENE; (3) TO OBJECT TO PREJUDICIAL, IMPROPER PROSECUTORIAL ARGUMENT THEREBY LOSING A MORE FAVORABLE STANDARD OF REVIEW ON APPEAL; (4) TO REQUEST A NECESSARY CONSCIOUSNESS OF GUILT INSTRUCTION; (5) TO INVESTIGATE MS. PREKOP'S UNCLE'S BLOOD TYPE; AND (6) TO INTERVIEW CORROBORATING WITNESSES, AND THERE WAS SIGNIFICANT EVIDENCE THAT KELLY LIED ABOUT HIS INVESTIGATION; ALL OF WHICH COMBINED TO CAUSE A SUBSTANTIAL RISK OF A MISCARRIAGE OF JUSTICE BECAUSE: (1) MS. PREKOP VIRTUALLY TESTIFIED THAT THE DEFENDANT WAS NOT HER ASSAILANT; (2) THERE WAS SIGNIFICANT EVIDENCE THAT LIEUTENANT KELLY LIED ABOUT THE CONFESSION AND THE SISTER'S ALLEGED HEARSAY STATEMENTS ABOUT THE GLOVES AND MAY EVEN HAVE PLANTED THE GLOVES AT THE SCENE; AND (3) THERE WAS SUBSTANTIAL EVIDENCE THAT THE DEFENDANT'S CONFESSION WAS INVOLUNTARY.

### A. <u>This Court Should Allow A Motion for a New Trial If The Defendant Was Denied Effective Assistance of Counsel.</u>

This court "may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). It normally has discretion to allow or deny a motion for new trial. <u>Commonwealth v. Jones</u>, 432 Mass. 623, 632 (2000); <u>Commonwealth v. Moore</u>, 408 Mass. 117, 125 (1990). There is

no discretion, however, to deny the motion if the original proceeding was infected with prejudicial constitutional error. Commonwealth v. Francis, 432 Mass. 353, 372 (2000), writ of habeas corpus den, Francis v. Spencer, 2003 U.S. Dist. Ct. LEXIS 11819; Earl v. Commonwealth, 356 Mass. 181, 184 (1969).

Ineffective assistance of counsel is properly raised on the Rule 30 motion. See Bates v. Commonwealth, 434 Mass. 1019, 1020 (2001) (claim of ineffective assistance of appellate counsel may be raised in motion pursuant to Rule 30).

The Sixth Amendment to the United States Constitution guarantees the defendant's fundamental right to competent counsel. U.S. Const. amend VI; Powell v. Alabama, 287 U.S. 45, 66 (1932). The Fourteenth Amendment makes this right applicable to state prosecutions. Gidion v. Wainwright, 372 U.S. 335, 339-40 (1963); Commonwealth v. Sanders, 435 Mass. 691, 694 n.4 (2002).

Article twelve of the Massachusetts Declaration of Rights also guarantees the right to competent counsel. Mass. Const., pt.1, art. 12. Article 12 provides greater protections than does the Sixth Amendment. Commonwealth v. Richard, 398 Mass. 392, 393 (1986) (article 12 provides broader protection than does the sixth amendment). Both state and federal law require a showing of substandard performance and prejudice. Commmonwealth v. Saferian, 366 Mass. 89, 96 (1974); Strickland v. Washington, 466 U.S. 668, 692 (1984).

Because this is the defendant's second motion for a new trial, all claims are waived and the standard of review is for substantial risk of a miscarriage of justice. Commmonwealth v. Curtis, 417 Mass. 619, 626 (1994). An error creates a substantial risk of a miscarriage of justice unless a reviewing court is persuaded that it did not materially influence the guilty verdict. Commonwealth v. Freeman, 352 Mass. 556, 563-64 (1967). The traditional treatment of the substantial risk issue calls for courts to decide if they have serious doubt about whether the result of trial might have been different had the error not been made. Commonwealth v. LeFave, 430 Mass. 169, 174 (1999). A court considers the strength of the Commonwealth's case, the nature of the error, if it was significant enough in context to infer that the jury would have decided otherwise, and whether the failure to object was reasonable. Commonwealth v. Alpha, 430 Mass. 8, 13 (1999).

B. Trial Counsel Failed to Test the Alleged Natural Root of A Brown Hair Collected From a Bed At the Scene, Which Was Presented and Argued as Belonging To The Defendant Even Though Ms. Prekop Said her Assailant's Hair Was Black and the Alleged Assault Did Not Happen In the Place From Where the Hair Was Collected.

Trial counsel failed to determine whether the findings of the Commonwealth's hair expert were accurate and whether other available tests might have excluded the defendant. Commonwealth v. Baker, 440 Mass. 519, 520 (2003); Commonwealth v. Haggerty, 400 Mass. 437, 440-41 (1987). The Commonwealth's expert testified that

a hair found in the victim's home was consistent with the defendant's hair. According to the defendant, the hair could have been independently tested because the Commonwealth's expert testified that it had a natural root, amenable to DNA testing. This testimony was virtually verbatim to his testimony at the defendant's first trial, so trial counsel was aware of the natural root's existence.

The defendant told trial counsel that he had cut his own hair in the police station, and the hair on the police slides may belong to the defendant, but would not contain a natural root. Here, as in Commonwealth v. Conley, 43 Mass. App. Ct. 385, 389 (1997), the defendant made it clear to trial counsel that he wanted an independent analysis conducted on the root of the questioned hair. Trial counsel moved for funds to test it, but failed to do so. Instead, he merely consulted with a hair expert on how to cross-examine the Commonwealth's expert. Counsel left the defendant with the incorrect assumption that counsel had tested the hair root and that it was unhelpful. This failure to follow through on testing the hair root left it open to the prosecutor to suggest strongly that the hair belonged to the defendant, a prejudicial argument because a person cannot be identified by hair comparison.

Trial counsel is under a duty imposed by both state, see Commonwealth v. Saferian, 366 Mass. 89, 96 (1974), and federal, see Strickland v. Washington, 466 U.S. 668, 690 (1984), constitutional

law to conduct an independent investigation of the facts, including an investigation of the forensic, medical, or scientific evidence on which the Commonwealth intends to rely to prove the defendant's guilt. See Commonwealth v. Alvarez, 433 Mass. 93, 103-04 (2000); Commonwealth v. Farley, 432 Mass. 153, 156-57 (2000); Commonwealth v. Roberio, 428 Mass. 278, 281 (1998), S.C. ante 245 (2003); Commonwealth v. Haggerty, 400 Mass. 437, 441-42 (1987); United States v. Baynes, 687 F.2d 659, 668 (3d Cir. 1982). All the more so when the client "insists that the test would help establish his innocence." See Jones v. Wood, 114 F.3d 1002, 1011 (9th Cir. 1977). Trial counsel was aware that the Commonwealth relied heavily on the hair evidence and failed to investigate a critical source of potentially exculpatory evidence. A lawyer owes his client "a duty to make reasonable investigation, or to make a reasonable decision that makes a particular investigation unnecessary, and failure to investigate can certainly constitute ineffective assistance." Washington v. Smith, 219 F.3d 620, 631 (7th Cir. 2000), quoting Strickland, 466 U.S. at 691, 104 S.Ct 2052.

This is not a case where "arguably reasoned tactical or strategic judgments are called into question." Commonwealth v. Rondeau, 378 Mass. 408, 413 (1979). Rather this is a case where defense counsel did not investigate the only realistic defense that the defendant had. The defense was that the police planted the blood and hair after taking samples from the defendant, and altered

police reports and statements given by both the defendant and the victim; yet counsel never tested the reported natural root of the questioned hair reportedly found in the victim's home. In that respect, the defendant's case is similar to those cases where at trial defense counsel abandons the only defense available to a defendant and leaves the defendant without any defense at all. See Commonwealth v. Westmoreland, 388 Mass. 269 (1983); Commonwealth v. Street, 388 Mass. 281 (1983). Failure to investigate the only defense a defendant has, if facts known to, or with minimal diligence, accessible to counsel support that defense, falls beneath the level of competency expected. See Osborne v. Commonwealth, 378 Mass. 104, 111 (1979); Commonwealth v. Cepulonis, 9 Mass. App. Ct. 302, 305 (1980). The hair evidence was presented to the jury unrebutted. For this reason, it was manifestly unreasonable strategy for trial counsel to rely merely on cross-examination. In the unlikely event that testing is no longer feasible, by reason of contamination or otherwise through no fault of the defendant, a new trial should be granted and the defendant permitted to describe to the jury the circumstances of his request for testing and to have the jury instructed that despite his request, such testing did not occur. Cf. Commonwealth v. Olszewski, 416 Mass. 707, 716-17 (1993), cert. denied, 513 U.S. 835 (1994); Conley, 43 Mass. App. Ct. at 396, quoting Jones v. Wood, 114 F.3d 1002 (9th Cir. 1997).

Further, the Commonwealth claimed that there were two half-dollar sized blood stain found on the victim's bed sheet. The Commonwealth's expert testified that he could have abstracted all thirteen genetic markers found in a blood stain approximately half dollar in size if the blood was fresh. (Tr.II/308-09). However, he could only abstract four (4) genetic markers out of the possible thirteen (13) found in blood, which supports the victim's testimony that this blood stain was old and deposited by her sick uncle years prior. The Commonwealth alleged to have used up the entire questioned blood sample during their testing, leaving the hair evidence the only potential physical evidence left to independently test linking the defendant to the assault on Ms. Prekop. Yet the hair evidence was not refuted. Testimony that the defendant's hair was consistent with the hair recovered was significant and was not adequately challenged by trial counsel. The defendant also provided trial counsel with an affidavit from Mrs. Olive Edwards dated December 9, 1989 (attached hereto) well before trial. This affidavit outlined Ms. Prekop's trial testimony pertaining to the blood evidence years before she testified. Yet counsel, after hearing Ms. Prekop's testimony, still never tried to test the hair or to find out what the uncle's blood type was to determine if his blood also exhibited these same four (4) genetic markers that the Commonwealth reportedly found.

This is not a case where counsel made a reasonable decision to cease further investigation as a result of having "discovered evidence to suggest that challenging the prosecutions physical or scientific evidence would have been counterproductive, or that further investigation would have been fruitless." Wiggins v. Smith, 539 U.S. 510, 525, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Nor is this a case of "diligent counsel drawing a line when they have good reason to think further investigation would be a waste." Rompilla v. Beard, - - U.S. - -, 125 S.Ct. 2456, 2463, 162 L.Ed. 360 (2005). Rather, counsel here never discovered any evidence to suggest one way or another whether such challenges would be counter-productive or such investigation fruitless, nor did counsel have any reasonable basis to conclude that such investigation would be wasteful. Trial counsel here simply did not conduct an independent investigation into the facts surrounding the defendant's case. See also State v. Hicks, 195 Wis. 2d 620, 536 N.W.2d 487, 492 (1995)(Noting that "Hicks'" trial counsel understood that the hair samples were going to be a major issue in the case, but he provided no reasoned basis for failing to pursue a testing process that he knew had the potential to provide exculpatory evidence on this major issue); Driscol v. Delo, 71 F.3d 701, 709 (8th Cir. 1995) (Finding that "defense counsel's failures to prepare for the introduction of the state's scientific evidence, and to subject the state's theories to the rigors of adversarial testing involving an

issue of utmost importance in the state's case constituted ineffective assistance"); Sims v. Livesay, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (Finding that defense counsel "did not make a reasonable decision that further investigation of the physical evidence was unnecessary," and noting that he did not make an independent investigation, and failed to ask a defense expert to examine the evidence), as was the case in the defendant's case.

C. Trial Counsel Failed to Object to Highly Prejudicial Hearsay Evidence That Unfairly Connected The Gloves Allegedly Collected From the Scene to The Defendant's Sister.

Lieutenant Kelly testified that he brought the gloves to the defendant's residence where the defendant's sister, Nancy Wescott told him that she had a similar pair that were missing (Tr.II/406-07). Trial counsel did not object to this highly prejudicial hearsay testimony through which Lieutenant Kelly attempted to connect the defendant with to the gloves. Moreover, Ms. Wescott testified, by contrast, that she merely told Lieutenant Kelly that the gloves looked familiar and may belong to the defendant's girlfriend (Tr.III/546). According to Ms. Wescott, she told Lieutenant Kelly that the gloves did not belong to her (Tr.III/546). The defendant's alleged confession that he wore his sister's gloves to the scene, and Ms. Wescott's alleged admission that gloves ostensibly collected from the scene belonged to her,

and even the fact that the gloves were found at the scene, all came from Lieutenant Kelly.

Lieutenant Kelly's testimony that Ms. Wescott told him that the gloves were hers was an out-of-court statement offered for its truth, inadmissible hearsay evidence. Commonwealth v. DelValle, 351 Mass. 489, 491 (1966); Commonwealth v. Keizer, 377 Mass. 264, 269 n.4 (1979 (definition of hearsay). Trial counsel did not object to this testimony, thereby permitting the Commonwealth to put on the appearance that Ms. Wescott corroborated Lieutenant Kelly's claim that the defendant confessed to wearing his sister's gloves. Ms. Wescott denied this herself, but because she is the defendant's sister it is likely that the jury found her denial less credible that Lieutenant's Kelly's assertions. An argument A.D.A. Vottero took full advantage of in his closing argument, (Tr.IV/628-29), stating that "no-one can fault the fact that no matter how you behave, your family will always be your family and believe you no matter what." This clearly insinuated that the defendant's sister was lying because she is family. This was yet another prejudicial argument not objected to by trial counsel. See Commonwealth v. Shelly, 374 Mass. 466, 468-70 (1978). If trial counsel had prevented Lieutenant Kelly from testifying that Ms. Wescott told him that the gloves belonged to her, there would have been a fair greater likelihood that the jury would not have believed Lieutenant Kelly. See Darden v. Wainwright, 477 U.S. 168, 183, 106 S.Ct. 2464,

91 L. Ed. 2d 144 (1986) (where the court held that a "decision not to object to the prosecutor's trial efforts may be considered sound trial strategy). However, the decision in no way condones a lawyer's failure to object to plain misconduct as legitimate trial strategy. Here, trial counsel's failure to object fell below an objective standard of reasonableness and constituted omission outside the wide range of professionally competent assistance. Also, here, as in Washington v. Hofbauer, 228 F.2d 689, 707 (6th Cir 2000), trial counsel's failures to object were based on simple incompetence and not on sound trial strategy.

As will be argued below, this error by trial counsel combined with his other errors to cause a substantial risk of a miscarriage of justice.

D. Trial Counsel Failed to Object to the Prosecutor's Improper Closing Argument and to Properly Preserve Them for Appellate Review.

When the defendant filed his first motion for a new trial, on April 25, 2000, he did so, in part, on grounds that the prosecutor made an improper closing argument: (1) the prosecutor made references in closing argument to the absence of evidence, which the prosecutor had successfully excluded (the forged confession, which the Appeals Court had already determined was irrelevant); (2) the prosecutor's comments during closing argument regarding the presumption of innocence were improper; (3) the prosecutor vouched

for his witnesses; (4) the prosecutor referred to evidence not in the record; (5) the prosecutor referred to excluded evidence; and (6) the prosecutor assumed the role of a thirteenth juror.

According to the motion court, the prosecutorial argument issue was filled with error that combined to cause a substantial risk of a miscarriage of justice. Memorandum of Decision, 15-39, attached hereto.

Trial counsel, however, failed to object to the prosecutor's improper closing argument and to properly preserve them for appellate review. See Washington v. Hofbauer, 228 F.3d 689, 707 (6th Cir. 2000). This failure lost a more favorable standard of review, prejudicial error, and forced the defendant to show instead a substantial risk of a miscarriage of justice, which is a significantly more burdensome standard, rarely successful.

E. Trial Counsel Failed to Request a Necessary Consciousness of Guilt Instruction.

As stated above, Detective Jarvis testified that, during the police interview, the defendant raised his voice, became very upset with himself and cried, and asked for Detective Jarvis' gun so that he could kill himself (Tr.III/486,513). There was no instruction on consciousness of guilt requested or given, and trial counsel did not object to the absence of this instruction (Tr.IV/630-69).

Crying, becoming upset and expressing the desire to shoot himself was plainly "consciousness of guilt" evidence. See

generally Commonwealth v. Carrion, 407 Mass. 263, 276-277 (1990), and cases cited for circumstances justifying a "consciousness of guilt" instructions, which include a recitation that even an innocent person may do things (like express the desire to shoot himself) for a variety of innocent reasons. See Commonwealth v. Perez, 444 Mass. 143, 147-48 (2005) (where the judge gave comprehensive instructions on consciousness of guilt evidence, reminding the jury that there may be numerous reasons why an innocent person might do things to suggest guilt).

Trial counsel's failure to request such an instruction left it open to the jury to conclude only that the defendant must be guilty of rape if he wanted to shoot himself. The defendant was entitled to a more instruction that would cause the jury to view this testimony with more even fairness. He was entitled to have the trial court explain that even an innocent person may have motive or reason to make such a statement. Trial counsel's failure to ensure that the jury instructions included a "consciousness of guilt" instruction further prejudiced the defendant and made it more likely that he would be wrongfully convicted.

F. <u>The above Errors and Omissions by Trial Counsel Caused a Substantial Risk of a Miscarriage of Justice Because Ms. Prekop Virtually Testified That The Defendant Was Not Her Assailant; (2) There Was Significant Evidence That Lieutenant Kelly Lied about the Confession, the Investigation, and the Sister's Alleged Hearsay Statements about the Gloves and May Even Have Planted the Gloves at the Scene; and (3) There Was Substantial Evidence That The Defendant's Confession Was Involuntary.</u>

1. <u>Ms. Prekop Was Fairly Clear That The Defendant Was Not her Assailant</u>.

Ms. Prekop described her alleged assailant as average in height and weight, clean shaven, (Tr.I/141), with black wavy hair, (the hair collected at the scene was brown) (Tr.I/146), and wearing a blue jacket, dark pants, and white sneakers (Tr.I/153-56,172). One week after this assault, Ms. Prekop could not identify her assailant from a line-up, which included the defendant (Tr.I/147; Tr.II/230-31,396; Tr.III/540). She insisted that the person who assaulted her was not in the line up. By inference and by uncontroverted direct evidence, the defendant had facial hair at the time an assailant broke into Ms. Prekop's house and was not "clean shaven" as she said (Tr.III/540). Moreover, Ms. Prekop could not identify a photograph of the defendant as her assailant at trial and she testified that her assailant did not have a beard or mustache (Tr.III/158). She also could not identify the defendant at trial (Tr.III/160).

2. Lieutenant Kelly's Account of The Defendant's Alleged Confession and His Efforts to Connect The Defendant to the Gloves are Suspect.

There also was significant record evidence that the lead investigator, Lieutenant Kelly, lied at trial. According to Lieutenant Kelly, he collected a bed sheet, a pillow case, and a pair of ladies gloves from the scene before Ms. Prekop returned from the hospital. By contrast, Ms. Prekop's fresh complaint indicated that she found the gloves herself after returning from the hospital. Additionally, in her statement to the police, there was information that Ms. Prekop told the police about the gloves. Ms. Prekop denied saying this and said that the police added this information after she signed the statement. The last paragraph of Ms. Prekop's statement including information about the gloves does not line up with the rest of the typed statement, suggesting an addition later.

Lieutenant Kelly further testified that he talked to Ms. Wescott, the defendant's sister, and that she told him that the gloves belonged to her. This is not true. Ms. Wescott told the police that the gloves merely looked familiar, they looked like the defendant's girlfriend's gloves. A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. United

States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976) (footnotes omitted).

Trial counsel failed to interview Ms. Prekop's sister regarding her observations of Ms. Prekop's room pertaining to the gloves, pillowcase and bed sheet, which would have served to corroborate Ms. Prekop's trial testimony pertaining to Lieutenant Kelly's falsehoods with these articles of evidence. Ms. Prekop testified that she and her sister cleaned her room, and put clean "linen" on the bed when she returned home, and that's when she first noticed the gloves, (Tr.I/144,162), after Lieutenant Kelly already reportedly completed his investigation (Tr.I/188). Kelly himself reportedly removed these articles of evidence, (Tr.I/214). The defendant brought these inconsistencies to trial counsel's attention through transcripts of his first trial, and also informed trial counsel that both Lieutenant Kelly and original ADA Bloom spoke with Ms. Prekop's sister. Further, Mrs. Olive Edwards' affidavit that the defendant gave to trial counsel also states that Ms. Prekop's sister was present when Ms. Prekop cleaned her bedroom; yet trial counsel still failed to interview her.

Trial counsel should also have interviewed the defendant's former girlfriend and put her on the stand pertaining to her conversation with Detective Jarvis about the gloves. Detective Jarvis took these gloves over to the defendant's former girlfriend's house after Lieutenant Kelly executed the search of

the defendant's home and reported his alleged conversation with the defendant's sister about the gloves, (Tr.III/456), which serves to corroborate that the defendant's sister merely told Lieutenant Kelly that the gloves looked familiar, like a pair that defendant's former girlfriend owned.

Despite this, Lieutenant Kelly testified that the defendant's sister told him (Kelly) that these gloves were hers, not that they looked familiar, like a pair the defendant's girlfriend owns. The defendant brought these inconsistencies to trial counsel's attention well before trial. However, counsel made no attempt to investigate any of the facts surrounding the defendant's case.

Assistant District Attorney Vottero took full advantage of these inconsistencies with improper closing argument. He asked, "What kind of world is it where George Perrot is innocent? It's a world where two F.B.I agents get together and risk their reputations and careers to create evidence to reach conclusions not supported. It's a kind of world where Tom Kelly and Mr. Jarvis get together to create evidence to pin on this poor man . . . . "(Tr.IV/626-27). When, in fact, the record reflects that Lieutenant Kelly did create evidence. The record certainly reflects that Lieutenant Kelly lied about his investigation with the gloves and the bed sheet.

3. There Is a Grave Risk That The Defendant's Alleged "Confession" That the Commonwealth Relied upon So Heavily Was Involuntary.

There was evidence that the defendant ingested drugs and alcohol shortly before his arrest (Tr.III/509,538). He was either not permitted to sleep or was unable to sleep during many, many hours of interrogation (Tr.III/436,466-67,471-72,483,501,507-09,512). He was interrogated over and over during a period of approximately twelve hours starting at about 5:00 a.m., (Tr.III/393-94,397-98), and his sister testified that she saw bruises on his face and chest at the police station (Tr.III/539-41).

In summary, the defendant was a house breaker and he admitted that he was. He was not a rapist. Ms. Prekop virtually testified that he was not her assailant. The motion court correctly noted that there was outrageous police and prosecutorial overzealousness throughout the history of the defendant's investigation and prosecution: (1) a forged confession, although not ultimately used, (2) probable planting of the gloves, or at least lies about that Ms. Westcott said about the gloves, (3) false additions to Ms. Prekop's statement to the police, which Ms. Prekop corroborated during trial, and (4) false testimony about where the gloves were found as police struggled to get it straight whether the assault happened on the bed or on the floor. This misconduct, combined with Ms. Prekop's persistent insistence that her assailant was clean

shaven, while the defendant indisputably had facial hair at the time Ms. Prekop was attacked, and combined with Ms. Prekop's repeated inability to identify the defendant as her assailant strongly supports the conclusion that the defendant was innocent of the charges beyond house breaking. The police and the prosecutor wrongfully plotted and lied to convict the defendant for crimes he did not commit because the facts and circumstances and his own history made him a vulnerable target for this misbehavior.

In any event, the mere existence of a confession, even if voluntary, does not automatically mean that the evidence against a defendant is overwhelming. Commonwealth v. Phinny, Jr., 466 Mass. 155 (2005).

CONCLUSION

For the above reasons, Defendant George Perrot respectfully requests that this Court allow his motion for a new trial.

GEORGE PERROT, Pro Se
P. O. Box 100
So. Walpole, MA 02071

Dated: November 25, 2006

CERTIFICATE OF SERVICE

I, George Perrot, hereby certify that I have mailed a copy of this document to the assistant district attorney addressed as follows:

Officer of the District Attorney
ATTN: Brett Vottero, ADA
Hall of Justice
50 State Street
Springfield, MA 01102

by first class mail postage prepaid.

George Perrot, Pro Se

Dated: November 25, 2006