UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GEORGE PERROT,                                    )
                                                  )
                    Plaintiff,                    )
                                                  )            NO. 18-cv-10147-MPK
v.                                                )
                                                  )
THOMAS KELLY, *et al*.,                           )
                                                  )
                    Defendants.                   )


**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR ACCESS TO
THIRD-PARTY ALISSA GRIFFIN'S MENTAL HEALTH RECORDS (#306) AND
DEFENDANT CITY OF SPRINGFIELD'S MOTION
TO COMPEL PRODUCTION OF DOCUMENTS (#309)**

KELLEY, U.S.M.J.

    This is a civil rights case brought under 42 U.S.C. § 1983 in which George Perrot contends

that he was wrongfully convicted, twice, of the November 1985 rape of a 78-year-old woman in

Springfield, Massachusetts. In January 2016, after plaintiff had served approximately thirty years

in prison, a Hampden County Superior Court judge granted him a new trial, concluding that

"justice may not have been done" at his 1992 trial because of the introduction of expert testimony

regarding hair comparison analysis that "exceeded the foundational science." *Commonwealth v.

Perrot* ("Perrot IV"), Nos. 85-5415, 5416, 5418, 5420, 5425, 2016 WL 380123, at *1 (Mass. Super.

Ct. Jan. 26, 2016); (#110-1 (court order)). On October 18, 2017, the Commonwealth filed a nolle

prosequi on all charges relating to the rape. (#126 ¶ 9.)

    Plaintiff claims that Springfield police officers and an assistant district attorney conspired

to violate his rights under the Fifth and Fourteenth Amendments by coercing him into making false

and incriminating statements, withholding evidence, fabricating evidence, destroying evidence,

1

conspiring to frame him, and maliciously prosecuting him. (#126 ¶¶ 137-138.)[1] He also sues the City of Springfield ("the City"), alleging that the police officers' wrongdoing was undertaken pursuant to a policy, practice, or custom of the Police Department. *Id*. ¶ 110.

Before the court are two motions. First, plaintiff moves for access to third-party Alissa Griffin's mental health records and Criminal Offender Record Information ("CORI"). (#306.) Second, the City moves to compel production of a "case timeline prepared by Mr. Perrot's attorneys" ("the Timeline") which was provided by plaintiff to his expert, Hayley Cleary, Ph.D. when she was writing her report. (#309.) The court heard argument on these motions on February 2, 2024; invited further briefing from the parties on plaintiff's motion; and ordered plaintiff to file an affidavit from Dr. Cleary stating whether she relied on the Timeline in writing her report, and to submit the Timeline for *in camera* review. *See* #317. The motions are fully briefed. *See* ##306, 311, 318, 323 (briefing on plaintiff's motion); ##309, 314 (briefing on the City's motion), #319 (Cleary Aff.). On March 12, 2024, the court allowed plaintiff's motion to the extent it sought Ms. Griffin's CORI. *See* #326. The remainder of plaintiff's motion (#306) is <u>allowed in part</u> and <u>denied in part, without prejudice</u>; and the City's motion (#309) is <u>allowed in part</u> and <u>denied in part</u>.

I.   <u>Plaintiff's Motion for Access to Third-Party Alissa Griffin's Mental Health Records (#306)</u>.

   a.   <u>Background</u>.

   The court assumes familiarity with the facts set out in the court's previous orders, including plaintiff's motion to exclude Ms. Griffin's deposition testimony (#288) and the City's motion to compel Ms. Griffin to appear for deposition (#293), *see* #296 at 1-4, and repeats only those facts

---

[1] He also raises state claims including violation of Mass. Gen. Laws, ch. 12, § 111, malicious prosecution, civil conspiracy, and negligent and/or intentional infliction of emotional distress. (#126 ¶ 137.)

relevant to the issues here. In short, Ms. Griffin met plaintiff after his release from prison in 2017 from the sentence for the convictions that are at issue in this case. She and plaintiff had what defendants describe as a "tumultuous intimate relationship" that ended in plaintiff's conviction for assault and battery against her. (#311 at 1-2.)

On July 26, 2023, Ms. Griffin appeared for a deposition, in accordance with a deposition notice issued by the City and a subpoena served by the Essex County Sherriff's Department. (#279 at ¶¶ 1-3.) During the deposition, plaintiff complained that Ms. Griffin was intoxicated. Ms. Griffin, who admittedly suffers from substance use disorder, testified that she was not under the influence of anything, but rather that her symptoms were the result of a traumatic brain injury. *Id.* at ¶¶ 4-10; #281 at 1. The deposition proceeded and the parties agree that "Ms. Griffin provided unfavorable testimony for Mr. Perrot during her direct examination" (#295 ¶ 9), including that in 2018 plaintiff hit her over the head with a bottle, (#318-3 (Day 1 Griffin depo. trans.) at 14:5-12), that he "was on a lot of drugs and drinking very hard" at the time of the assault, *id*. at 14:16-21, that he strangled her, threatened her with a knife, stole her purse, *id.* at 15:2-9, and battered her with a backpack on concrete, causing her to sustain serious long-term head injuries, *id.* at 15:18-16:17. Most important for purposes of this case, she testified that during their relationship, plaintiff repeatedly told her that he was guilty of the 1985 break-in and rape that are the subject of this wrongful conviction case. *Id.* at 20:9-23:9; 26:9-13.

Defendants finished questioning Ms. Griffin, but about twenty minutes into plaintiff's cross-examination, Ms. Griffin left the deposition and refused to return. *Id.* ¶ 14. Following motion practice, the court ordered Ms. Griffin to appear for the rest of plaintiff's cross-examination. (#296 at 7.)

On December 11, 2023, plaintiff finished cross-examining Ms. Griffin. *See* #306-1 (Day 2 Griffin depo. trans.). She testified that she had used drugs and alcohol while with plaintiff, *see, e.g.*, *id.* at 73:9-19; that she could not remember whether she had been admitted to an intensive care unit for a 4-month stay following the 2018 incident in which she was hit on the head, *see* 79:13-80 – 80:12; that she had been admitted for inpatient treatment generally, for either physical or mental health care, twice in the past six to eight years, *see id.* at 80:4 – 81-13; and that she had no side effects from the "15 different medications" she was on for depression, PTSD, and anxiety, *see id.* at 86:21-88:8. She refused to answer some questions related to her mental health care, *see id.* at 85:1-88:6, although she testified that she had received treatment for her alcohol abuse and substance use disorder and was doing well now, *see id.* at 91:5-14.

b. <u>Plaintiff's motion.</u>

Plaintiff disputes much of Ms. Griffin's testimony, including that he confessed to her that he committed the crimes that are the subject of this case. (#306 at 1; #318 at 3.) He correctly asserts that her testimony, if believed by a jury, would have a substantial impact on his claims. (#318 at 3.) Because she testified concerning "various medical and mental health issues," including substance use disorder, from which she suffered during the time she interacted with plaintiff, he requires access to her treatment records so that he may fully explore her ability to perceive and recall events, as well as her credibility. *Id.*

Plaintiff's post-hearing brief clarified that he seeks Ms. Griffin's medical records from "four known providers," including records of medications, hospitalizations, diagnoses, treatment, and surgeries, as well as her mental health records, excluding therapy notes and communications protected by the federal privilege. *Id.* at 2, 7-8. Plaintiff limited his request to the years 2016 through 2021, because Ms. Griffin testified that plaintiff and Ms. Griffin were in an on-and-off relationship between 2017 and 2018, so plaintiff seeks records dating one year before Ms. Griffin

4

and plaintiff met and three years following the end of their relationship.  (#318 at 1-2.)  Ms. Griffin's brain injury occurred in 2018, so plaintiff seeks records for three years after that to understand the effects of the injury and her medications on her perception and memory over time. *Id.*

The City argues that the records requested are privileged under state and federal law, as well as protected by 42 U.S.C. § 290dd-2, which prohibits the disclosure of records concerning substance use disorder treatment.[2]  (#311 at 3-6; #323 at 8-10.)  The City also asserts that the information requested is disproportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1), because it seeks sensitive nonparty medical information for credibility, rather than merits, purposes.  *Id.* at 5-6.

c.  <u>Applicable law.</u>

The scope of discovery under Rule 26 of the Federal Rules of Civil Procedure is governed by a familiar standard:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  A court may, "'for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden.'"  *In re Intuniv Antitrist Litig.*, No.

---

[2] Defendants assert that Ms. Griffin's mental health records are protected from disclosure by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and its regulations.  (#311 at 3-6.)  Although Ms. Griffin's mental health records do constitute "protected health information" under HIPPA, such information may be disclosed in response to a court order.  *See* 45 C.F.R. § 164.512(e)(1)(ii).  In this case, all information disclosed in response to such an order would be further protected by the parties' joint confidentiality agreement (#315).

16-cv-12396-ADB, 2018 WL 6590616, at *3 (D. Mass. Dec. 14, 2018) (quoting Fed. R. Civ. P. 26(c)(1)). Courts have "broad discretion to decide when a protective order is appropriate and what degree of protection is required." *W.N. Motors, Inc. v. Nissan N. Am., Inc.*, No. 21-cv-11266-ADB, 2022 WL 1568443, at *2 (D. Mass. May 18, 2022) (quoting *ClearOne Commc'ns, Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011)).

The court must consider whether the documents sought are privileged. "The Supreme Court has recognized the psychotherapist-patient privilege as a matter of federal common law."[3] *Silvestri*

---

[3] In its supplemental opposition, the City asks the court to apply Massachusetts privilege law in this case but cites no law supporting that request. *See* #323 at 6-7. *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass. 1997), which the City cites in support of its position along with *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996)—the Supreme Court's seminal case establishing the federal psychotherapist-patient privilege—leads to the opposite conclusion:

> Rule 501 [of the Federal Rules of Evidence] does not instruct a federal court on which law of privilege to use in a federal question case where the court is also hearing a state law claim pursuant to supplemental jurisdiction. Every circuit that has reached this issue has held that, in a situation such as the one before this court, the federal law of privilege applies. *See, e.g., Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir.1992); *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir.1992); *von Bulow v. von Bulow*, 811 F.2d 136, 141 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Thompson Co. v. General Nutrition Corp., Inc.*, 671 F.2d 100, 104 (3rd Cir.1982); *Memorial Hospital for McHenry County v. Shadur*, 664 F.2d 1058, 1061 n. 3 (7th Cir.1981). Furthermore, the legislative history of Rule 501 supports the use of the federal law of privilege in this situation. The Senate Report accompanying Rule 501 states that "[i]t is also intended that the Federal law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case." S.Rep. No. 1277, 93rd Cong., 2d Sess. (1974), *reprinted in*, 1974 U.S.C.C.A.N. 7051, 7059 n. 16. This court, therefore, will use the federal law of privilege to decide the issue before it.

*Vanderbilt*, 174 F.R.D. 226-27. *Vanderbilt* is in accordance with Federal Rule of Evidence 501, which provides that federal common law governs a claim of privilege, unless the Constitution, federal statute, or the Supreme Court says otherwise, *see* Fed. R. Evid. 501, as well as with the decisions of other courts in this district, which have applied federal privilege law in cases asserting both state and federal claims. *See, e.g., Silvestri v. Smith*, No. 14-cv-13137-FDS, 2016 WL 778358, at *2 n.1 (D. Mass. Feb. 26, 2016) ("There is no dispute that where, as here, a case includes both federal and state law claims, 'the federal law of privilege applies.'" (quoting *Vanderbilt*, 174 F.R.D. at 226-27); *In re Intuniv Antitrust Litig.*, 2018 WL 6590616, at *3 (applying federal

*v. Smith*, No. 14-cv-13137-FDS, 2016 WL 778358, at *2 (D. Mass. Feb. 26, 2016) (quoting *In re*

*Grand Jury Proceedings (Gregory P. Violette)*, 183 F.3d 71, 73 (1st Cir. 1999)) (cleaned up).   The

privilege only applies to "communications" between a patient and her mental health provider that

are made "in the course of diagnosis or treatment."  *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996).  The

privilege does "not apply to 'facts regarding the occurrence of psychotherapy, such as the name of

the psychotherapist or dates and costs of treatment[,]' . . . [or] other non-communicative

information such as the nature of any diagnosis or treatment for a mental health

condition."  *Silvestri*, 2016 WL 778358, at *2 (quoting *Jaffee*, 518 U.S. at 15).

Although plaintiff has not directly requested Ms. Griffin's substance use disorder records,

the court notes that the Public Health Service Act ("PHSA"), 42 U.S.C. § 290dd-2, strictly protects

the "[r]ecords of the identity, diagnosis, prognosis, or treatment of any patient which are

maintained in connection with the performance of any program or activity relating to substance

use disorder education, prevention, training, treatment, rehabilitation, or research, which is

conducted, regulated, or directly or indirectly assisted by any department or agency of the United

States[.]"[4]  42 U.S.C. § 290dd-2(a); *see U.S. v. Shinderman*, 515 F.3d 5, 11 (1st Cir. 2008) ("In

---

psychotherapist-patient privilege in case involving federal and Massachusetts state law claims);
*see also McEvoy v. Hillsborough Cty.*, No. 09-cv-431-SM, 2011 WL 1813014, at *5-6 (D.N.H.
May 5, 2011) (in Section 1983 case, recognizing that "[e]ven where federal courts are not required
to apply state evidentiary privileges . . . federal courts may, and in some cases should, recognize
state evidentiary privileges where to do so would not come at a substantial cost to federal
procedures and substantive policies," applying federal law to questions of privilege pursuant to
Rule 501, and noting that its ruling is "consistent with state privilege law").  The court therefore
applies federal law to the privilege questions presented here.

[4] The First Circuit has clarified:

The regulations promulgated pursuant to this statute define "records" to mean "any
information, whether recorded or not, relating to a patient received or acquired by
a federally assisted alcohol or drug program." 42 C.F.R. § 2.11. A "patient" is
defined as "any individual who has applied for or been given diagnosis or treatment

the interest of guaranteeing the efficacy of substance abuse treatment programs, Congress has directed that all substance abuse treatment records be kept confidential."). The PHSA protects against disclosure of records which "[w]ould identify a patient as having or having had a substance use disorder either directly, by reference to publicly available information, or through verification of such identification by another person" and which "[c]ontain[s] drug abuse information obtained by a federally assisted drug abuse program. . . . for the purpose of treating a substance use disorder, making a diagnosis for that treatment, or making a referral for that treatment" ("PHSA protected records"). 42 C.F.R. § 2.12(a)(1)(i), (ii); *see Briggs v. Adel*, No. CV-18-02684-PHX-EJM, 2020 WL 4003123, at \*16 (D. Ariz. July 15, 2020) ("Information is not protected under PHSA unless it both identifies its subject and identifies the subject as having or having had a substance use disorder, and is obtained for the purpose of treatment, diagnosis, or referral for treatment.").

"The PHSA and the regulations implementing it are distinct from and more protective than the nondisclosure requirements for 'health information' established by HIPAA regulations." *U.S. v. Smith*, 511 F.3d 77, 80 n.2 (1st Cir. 2007). Under the statute, such records may be disclosed under a narrow set of circumstances including consent, audit, or by court order "granted after application showing good cause." 42 U.S.C. § 290dd-2(b)(2)(A)-(C); *see Shinderman*, 515 F.3d at 11. The court must assess "good cause" by "weigh[ing] the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the

---

for alcohol or drug abuse at a federally assisted program." *Id.* "Drug abuse" is broadly defined to encompass "the use of a psychoactive substance for other than medicinal purposes which impairs the physical, mental, emotional, or social well-being of the user." *Id.*

*U.S. v. Smith*, 511 F.3d 77, 81-82 (1st Cir. 2007).

treatment services."  42 U.S.C. § 290dd-2(C). If disclosure is necessary, the court must impose

appropriate safeguards against unauthorized disclosure.  *Id.*

"Applicable regulations confirm and elaborate upon the statute's commitment to

confidentiality." *Shinderman*, 515 F.3d at 11; *see* 42 C.F.R. §§ 2.1-2.67.  "The regulations warn

that such records 'may be [used or disclosed] only as permitted by [these] regulations . . . and may

not otherwise be [used or disclosed] in any civil, criminal, administrative, or legislative

proceedings conducted by any Federal, State, or local authority.'"  *Shinderman*, 515 F.3d at 11

(quoting 42 C.F.R. § 2.13 (alterations added to align with current regulation language)).  A court

may order disclosure of such records only if:

(1) The disclosure is necessary to protect against an existing threat to life or of serious
bodily injury, including circumstances which constitute suspected child abuse and
neglect and verbal threats against third parties;

(2) The disclosure is necessary in connection with investigation or prosecution of an
extremely serious crime, such as one which directly threatens loss of life or serious
bodily injury, including homicide, rape, kidnapping, armed robbery, assault with a
deadly weapon, or child abuse and neglect; or

(3) The disclosure is in connection with a civil, criminal, administrative, or legislative
proceeding in which the patient offers testimony or other evidence pertaining to the
content of the confidential communications.

42 C.F.R. § 2.63(a).  Moreover, the court must find that:

(1) Other ways of obtaining the information are not available or would not be effective;
and

(2) The public interest and need for the disclosure outweigh the potential injury to the
patient, the physician-patient relationship and the treatment services.

42 C.F.R. § 2.64(d).  The order itself must "[l]imit use or disclosure to only those parts of the

patient's record, or testimony relaying those parts of the patient's record, which are essential to

fulfill the objective of the order"; "[l]imit use or disclosure to those persons whose need for

information is the basis of the order"; and include "such other measures as are necessary to limit

use or disclosure for the protection of the patient, the physician-patient relationship and the treatment services[.]"  42 C.F.R. § 2.64(e) (including safeguards such as "sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record, or testimony relating the contents of the record, has been ordered"). The regulations further provide that an order authorizing disclosure under these regulations "is a unique kind of court order.  Its only purpose is to authorize a use or disclosure of patient information which would otherwise be prohibited by 42 U.S.C. 290dd–2 and the regulations in this part. Such an order does not compel use or disclosure. A subpoena or a similar legal mandate must be issued to compel use or disclosure. This mandate may be entered at the same time as and accompany an authorizing court order entered under the regulations in this part."  42 C.F.R. § 2.61.

     d.  <u>Discussion</u>.

As an initial matter, plaintiff's January 4, 2024 letter to Ms. Griffin, notifying her of plaintiff's request, says only that he is seeking "a limited set of [her] mental health records." (#318-1.) The letter does not inform her that plaintiff seeks medical records "from four known providers" covering certain time periods, as he asserts in his supplemental filing.  (##306, 318-1.)  Therefore, before plaintiff may obtain a court order for the medical records, he must properly notify Ms. Griffin as to what records he is seeking and from what providers.

It is not clear to the court whether the "four known providers" from whom plaintiff intends to seek records are general healthcare providers or mental health providers. If any of these providers were treating Ms. Griffin for mental health issues, the court finds that the records plaintiff seeks—namely, Ms. Griffin's non-communicative mental health records pertaining to her diagnoses and treatment—are not privileged.[5]  *See Jaffee*, 518 U.S. at 15.  Disclosure of

---

[5] As noted above, plaintiff has stated explicitly that he is not seeking therapy records or other communications between Ms. Griffin and her mental health providers.  (#318 at 2, 7-8.)  To be

information pertaining to Ms. Griffin's diagnoses and treatment will not reveal psychotherapist-patient privileged communications because such documents will not contain communications between Ms. Griffin and her therapist(s).  *See In re Intuniv Antitrist Litig.*, 2018 WL 6590616, at *3; *Silvestri*, 2016 WL 778358, at *2 (allowing motion to compel as to interrogatory related to plaintiff's "mental health diagnoses and treatment" where plaintiff could not show that such disclosure would reveal the substance of any privileged communications).

Plaintiff has not, however, shown good cause under the PHSA to authorize disclosure of Ms. Griffin's PHSA protected records (if any such records exist). [6] [7]  *See U.S. v. Cresta*, 825 F.2d 538, 551-52 (1st Cir. 1987) ("The burden was on [appellant] to establish good cause for the release

---

clear, the court denies plaintiff's motion to the extent it seeks any records reflecting plaintiff's communications with her mental health providers, which are protected by the federal psychotherapist-patient privilege.

[6] Plaintiff's vague request for Ms. Griffin's "mental health records" does not allow the court to assess whether the programs she attended were in connection with substance use disorder treatment and/or "conducted, regulated, or directly or indirectly assisted by any department or agency of the United States."  42 U.S.C. § 290dd-2(a); *see* 42 C.F.R. §§ 2.11, 2.12  (defining programs falling under 42 C.F.R. Part 2 ("Part 2 programs")).  In an abundance of caution, the court assumes that, to the extent Ms. Griffin received substance use disorder treatment, those services were provided by Part 2 programs and the PHSA applies.  If this assumption is incorrect, plaintiff may so notify the court, and include adequate identification and evidence to show that the PHSA does not apply here.

[7] The court notes that plaintiff's letter to Ms. Griffin (#318-1) does not satisfy the notice requirements of 42 C.F.R. § 2.64, which require that the "patient and the person holding the records from whom disclosure is sought have received:

(1) Adequate notice in a manner which does not disclose patient identifying information to other persons; and

(2) An opportunity to file a written response to the application, or to appear in person, for the limited purpose of providing evidence on the statutory and regulatory criteria for the issuance of the court order as described in § 2.64(d).

42 C.F.R. § 2.64(b); *see Briggs*, 2020 WL 4003123, at *17 n. 11.

of the [hospital] records" of government witness under PHSA.).  The court is aware of no federal

case where a court authorized the production of a third party witness's PHSA protected records in

a civil matter for credibility purposes only.[8]  Although Ms. Griffin's testimony, if believed by a

jury, would surely have a devastating impact on plaintiff's case, Ms. Griffin's substance use does

not relate directly to the claims or defenses in this case, only to her credibility as a witness.  The

court therefore finds, on the record before it, that the strong interest in ensuring confidentiality in

substance use disorder treatment outweighs disclosure of Ms. Griffin's PHSA protected records.

42 C.F.R. § 2.64(d)(2); *see Whyte v. Connecticut Mut. Life Ins. Co.*, 818 F.2d 1005, 1010 (1st Cir.

1987) ("[C]onfidentiality is necessary to ensure successful [substance use] treatment. Without

guarantees of confidentiality, many individuals with [substance use] problems would be reluctant

to participate fully in [substance use] programs.  The regulations, especially [42 C.F.R.] § 2.63,

were specifically drafted with these considerations in mind.").  Plaintiff's motion therefore is

denied to the extent it seeks Ms. Griffin's records reflecting any substance use diagnosis, treatment,

---

[8] *Cf., e.g.*,  *Schnatter v. 247 Grp., LLC*, No. 3:20-cv-00003-BJB-CHL, 2024 WL 1337377, at *9 (W.D. Ky. Mar. 28, 2024) (allowing production of plaintiff's substance use treatment records where "the facts of [plaintiff's] substance use are 'pretty unsettled,'" because plaintiff testified in a deposition that he had not received treatment, "and the discovery is relevant to his claims, defenses, and for the purposes of impeachment and credibility"); *Tarashuk v. Orange Cty.*, No. 5:19-cv-02495-JMC, 2022 WL 473231, at *2, 6 (D.S.C. Feb. 15, 2022) (allowing disclosure of defendant city EMT's substance use treatment records where defendant had a long history of prescription drug abuse that substantially affected her employment as a paramedic, and plaintiff sought the records, in part, "to determine whether she was under the influence of drugs when she treated [plaintiff] the morning that he died, or whether she had relapsed before and during her employment with" the county (internal punctuation omitted)); *Gordon v. Carter*, No. 3:15cv396-LC-HTC, 2019 WL 13405490, at *4 (N.D. Fla. Nov. 21, 2019) (allowing disclosure of plaintiff's substance use disorder records because they were relevant to the issue of damages, specifically "whether [p]laintiff's mental conditions, for which he seeks damages, are caused by [d]efendants' conduct or substance use dependency"); *McEvoy*, 2011 WL 1813014, at *9 (allowing disclosure of nonparty inmate mental health records where plaintiffs "asserted a clear need for the records requested in order to prove their municipal liability claim" and the records would be "redacted to obscure any information that might identify any individual as the person to whom the record applies" in accordance with HIPAA, PHSA, and state law).

or rehabilitation.  Given the importance of Ms. Griffin's testimony in this case, however, plaintiff's motion is denied without prejudice to renewal upon proper application and notice to her under 42 C.F.R. § 2.64, or upon showing that the PHSA does not apply, *see supra* note 7.  Any such application to the court shall include proposed safeguards and appropriate limits on the requested disclosures, as contemplated by 42 C.F.R. § 2.64(e).

As to Ms. Griffin's noncommunicative mental health records unrelated to any substance use disorder treatment, the court finds that plaintiff has adequately asserted the importance of such information to his case.  If, for instance, Ms. Griffin suffers from a mental health disorder that impacts her ability to perceive events or has symptoms of psychosis or hallucinations, the condition may have impacted Ms. Griffin's understanding or memory of plaintiff's alleged confessions. Plaintiff has a right to know such information about the City's key and only witness who is challenging the foundation of his case.  Therefore, plaintiff's motion is allowed to the extent it seeks Ms. Griffin's noncommunicative mental health records unrelated to substance use disorder treatment.

The court is concerned that such records may include information protected by the PHSA, and in any event they are sure to disclose sensitive personal information regarding a nonparty. Therefore, although the parties' stipulated confidentiality agreement does not include an "Attorney's Eye's Only" provision, *see* #315, all records disclosed in accordance with this Order shall be designated ATTORNEY'S EYES ONLY and subject to *in camera* review before public use in this proceeding.

II.   The City's Motion to Compel Production of Documents (#309).

The City moves to compel the Timeline that Dr. Cleary referenced in the "Materials Reviewed" section of her expert report.  *See* #309-1 at 2.  Ms. Cleary's report "evaluate[s] the potential presence of factors that could have contributed to coerced, unreliable, or false statements"

13

in plaintiff's case.  *Id.* at 1.  The City argues that the Timeline falls within the exceptions provided in Rule 26(b)(4)(C) of the Federal Rules of Civil Procedure to the attorney work product doctrine and therefore is discoverable.

Plaintiff claims the Timeline is protected attorney work product because it "captures counsel's initial theories and mental impressions of the case," and does not contain any facts that have not already been disclosed in discovery.  (#314 at 3-4.)  Plaintiff argues that defendant would not be prejudiced if the Timeline is not produced because it does not reveal any information not already known to the City or readily available through discovery.  *Id.*  Plaintiff submitted an affidavit from Dr. Cleary averring that although she reviewed the Timeline (which is clearly marked as attorney work product), she had prepared her own timeline before reviewing counsel's Timeline, and only used the Timeline to "crosscheck" her own understanding of the events, which she concluded she had already correctly understood.  (#319.)  Plaintiff submitted the Timeline for *in camera* review per this court's order.  *See* #317.[9]

a.  Relevant law.

Rule 26(b)(4)(C) of the Rules of Civil Procedure provides that the work product doctrine, *see* Fed. R. Civ. P. 26(b)(3)(A), (B), protects communications between a party's attorney and any expert witness required to serve a report unless those communications

(i)     relate to compensation for the expert's study or testimony;

(ii)    identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

---

[9] Plaintiff further argues that the Timeline is not responsive to any of the City's requests for production ("RFP") which include the request for "All documents relating to any official investigations conducted into the circumstances surrounding your wrongful conviction, including internal investigations, external reviews, or independent inquiries that were initiated by you."  *See* #314 at 3; #309 at 2 ¶ 5.  In its broad discretion, *see Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 59 (1st Cir. 2006) ("Trial courts have broad discretion in shaping the parameters of pretrial discovery[.]"), the court finds that the Timeline falls within the City's RFP No. 28.

> (iii)   identify assumptions that the party's attorney provided and that the expert
> relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C); *see Woods Hole Oceanographic Instit. v. ATS Specialized, Inc.*, No. 17-cv-12301-NMG, 2021 WL 1821339, at *1 (D. Mass. May 6, 2021) ("Communications between a party's attorney and an expert witness are protected under the work product doctrine unless they" fall under one of the Fed. R. Civ. P. 26(b)(4)(C) exceptions.).

    b.  <u>Discussion</u>.

The court reviewed the Timeline *in camera* and finds that most of it is irrelevant to Dr. Cleary's report.  The court credits Dr. Cleary's assertion that she did not rely on the Timeline in forming the opinions in her report and used it merely as a crosscheck for her own understanding, *see* #319.  Therefore, the court finds that most of the Timeline is protected by the work product doctrine as Dr. Cleary did not rely on the assumptions included in it in forming the opinions in her report.  *See* Fed. R. Civ. P. 26(b)(4)(C)(iii). The court will, however, allow defendant's motion to compel those portions of the Timeline that relate to plaintiff's alleged false confession, because even though the court credits Dr. Cleary's assertion that she only used the Timeline as a crosscheck for her own understanding, the court finds that it is possible that the assumptions communicated to her in the Timeline may have influenced her final opinions. Thus, those portions of the Timeline are not protected as work product.  *Id.*

The court orders plaintiff to submit a proposed redacted Timeline for *in camera* review by no later than April 29, 2024.  Plaintiff shall not redact information relevant to plaintiff's allegedly false confession.

III.   <u>Conclusion</u>.

For the above reasons, plaintiff's motion to compel Alissa Griffin's mental health records (#306) is allowed in part and denied in part, without prejudice; and the City's motion to compel production of the Timeline (#309) is allowed in part and denied in part.


/s/ Page Kelley
PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE

April 22, 2024