**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**GEORGE PERROT,**
**Plaintiff,**
**v.** **C.A. No.: 18-CV-10147**

**Judith Kelly, as administrator for the Estate of THOMAS KELLY, et al,**
**Defendants**

# REPLY BRIEF IN SUPPORT OF DEFENDANT CHARLES ARPIN'S MOTION FOR SUMMARY JUDGMENT

Now that the Plaintiff has filed his opposition and response to Defendant Charles Arpin's Motion for Summary Judgment, Defendant Arpin replies to those pleadings with the following reasons to this Honorable Court in support of his Motion for Summary Judgment under Fed.R.Civ.P.56:

## I. THE PLAINTIFF HAS FAILED TO ADDUCE ANY ADDITIONAL FACTS BEARING ON THE LIABILITY OF DEFENDANT ARPIN

Notably absent in the Plaintiff's summary judgment materials is evidence of actions or conduct by Defendant Arpin related to anything other than the line-up. The materials mention his name infrequently, and they produce no significant facts bearing on his liability in this action. There are other defendants that the materials appear to ignore, as well. The Plaintiff should have dismissed these defendants.

## II. THE PLAINTIFF'S ATTEMPT TO DISTINGUISH *JOHNSON V. MAHONEY* BY ASSERTING JOHNSON'S CONVICTION WAS NOT VACATED IS INCORRECT

In his opposition memorandum at page 12, the plaintiff asserts that Donnell Johnson's criminal case was different from the Plaintiff's because Johnson's conviction was not vacated by a court as was the Plaintiff's. *Johnson v. Mahoney*, 424 F.3d 83, 85 & 88 (1st Cir. 2005). This is

incorrect. A simple review of the district court's docket in the case, Docket No. 1:02-cv-10730, reveals the allegation in the complaint that the conviction was vacated and then the nolle prosequi entered. Additionally, Judge Lasker's decision on the summary judgment motions stated that, upon the discovery of new evidence, Johnson's convictions were vacated. *Id*. at #90, p. 4. Finally, in Massachusetts, a district attorney is unable to nolle prosequi a case once sentence has been imposed, as it had in Johnson's case. Mass Crim P. R. 16. *See Commonwealth v. Dascalakis*, 246 Mass. 12, 19 (1923) (abrogated on other grounds by, *Commonwealth v. Bly*, 444 Mass. 640, (2005)). The Plaintiff here got his convictions vacated on the same grounds—new evidence, namely new scientific evidence related to FBI hair science—and the district attorney entered the nolle prosequi. Thus, the Plaintiff's claimed distinction between the two cases is without factual merit.

## III. THE PLAINTIFF'S ARGUMENTS MISSTATE THE NATURE OF THE DEFENDANTS' OBLIGATION UNDER *BRADY V. MARYLAND*

The Supreme Court imposed upon prosecutors the duty to disclose exculpatory and impeachment evidence to criminal defendants. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). In *Kyles v. Whitney*, 514 U.S. 419 (1995), the Court expanded the prosecutor's disclosure obligation to include evidence that is known only to police officers; the prosecutor must obtain and disclose that evidence. *Id*. at 437-38. According to the First Circuit, "The holding in *Kyles* is antithetic to any suggestion that [before 1995], *Brady's* affirmative disclosure obligation reached unreservedly to no-fault nondisclosure of *Brady* materials known only to police officers. A fortiori, it was not then clearly established that police officers owed any affirmative no-fault obligation to criminal defendants. Consequently, the detectives are entitled to qualified immunity." *Haley v. City of Boston*, 657

F.3d 39, 49 (1st Cir. 2011). Insofar as the Plaintiff is relying on this no-fault aspect of the *Brady* disclosure doctrine, his claim falls to the qualified immunity of the defendants.

There is, however, another aspect to the *Brady* disclosure doctrine, to which the Plaintiff refers, but which he fails to keep clear in his arguments. *See Drumgold v. Callahan*, 707 F.3d 28, 38-39 (1st Cir. 2013) (Distinguishing between recent affirmative disclosure obligations of *Brady* and earlier *Mooney* and *Pyle* cases condemning deliberate suppression of evidence). The other theory involves the knowing use of perjured testimony or the deliberate suppression of material evidence leading to the conviction. *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). To succeed, the Plaintiff must show that "the withholding of evidence was a necessary condition for the conviction." *Drumgold v. Callahan*, 707 F.3d at 49. The reasonable probability standard required to make out a *Brady* violation in a criminal prosecution does not establish recovery under § 1983, however. The Plaintiff must also establish "a stronger causal link than is inherent in *Brady's* materiality standard," which is akin to the same materiality inquiry with a heightened proof requirement. *Id.* at 49, n. 13. Examining the Plaintiff's claim of each "suppressed" item will expose the Plaintiff's shortcomings.

### A. Original Statement from December 7, 1985

The Plaintiff boldly asserts that Defendant Jarvis never disclosed the original signed statement by citing to a sidebar discussion at the first criminal trial about whether the document offered in evidence was an original or a copy. (p. 31). Assistant District Attorney Bloom represents in the quoted portion of the conference that he put the original in evidence during the motion to suppress hearing, so it is unclear why the Plaintiff claims here that Defendant Jarvis never disclosed the original to the prosecutor. Apparently, the issue resolved itself during the trial because the Plaintiff fails to cite to any further discussion about the "original" during either of the

trials or the many post-trial motions and appellate challenges.[1] How material could "the original" be when the Plaintiff left the issue dormant for almost forty years? His speculations on what the original might disclose if examined and tested and his conjecture that some defendant discarded the document are insufficient to satisfy the threshold materiality burden, let alone his causation burden in this action.

**B. Jarvis's Handwritten Interrogation Notes**

The Plaintiff next tries to shoehorn Defendant Jarvis's destruction of all his notes when he cleaned out his desk upon retirement into some sort of bad faith destruction of evidence "potentially" exculpatory for the Plaintiff. (pp. 33-34). The argument ignores the plain language of the Court, "We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood v. Arizona*, 488 U.S. 51, 58 (1988). Notably, the criminal defendant failed in *Youngblood* to show a due process violation when the police failed to refrigerate and test semen samples taken on the night of the crime. The criminal defendant in *California v. Trombetta*, 467 U.S. 479, 488 (1984), also failed when challenging the police failure to preserve the breath samples used in alcohol breath tests. In *Illinois v. Fisher*, 540 U.S. 544, 545-46 (2004) (*per curiam*), the state destroyed the seized drugs according to its usual procedures approximately eleven years after the defendant's arrest while he was a fugitive from justice during most of that time. He failed because he could not show bad faith by the police. *Id*. at 548-49. You cannot infer bad faith on the part of detective who cleans out his desk when he retires.

**C. Kelly's Interviews of Adkins and Timmerman**

---

[1] Oops! Even worse for the Plaintiff's claim is the sidebar discussion after lunch where his attorney acknowledges that the document offered by ADA Bloom is the original statement. (Plaintiff's Exhibit #10, pp. 158-59, Bates stamped CITY 003175-003176).

The Plaintiff next speculates about the disposition or destruction of notes about which there is no evidence that they ever existed. (pp. 34-35). There is nothing in the record that shows whether Sgt. Kelly took notes during his interviews of Adkins and Timmerman or, at least, the Plaintiff cites to none. If there were no notes, then they could not be destroyed in bad faith, but the Plaintiff does not even attempt to argue Sgt. Kelly's bad faith destruction. Besides, the record clearly shows that they were friends of the Plaintiff. He certainly could have asked his friends about their interviews with Sgt. Kelly. He obviously knew what they were going to say, so how material could any notes of unknown existence be? Despite the lack of any documentation by Sgt. Kelly, the Plaintiff called Timmerman as a trial witness, even though he argues that he could not "intelligibly assess whether to call the two friends as witnesses." (p. 35).

**D. Suspect's Shoeprint at Prekop's Residence**

The plaintiff's claims regarding the nondisclosure of a shoeprint at Prekop's residence are likely tangled up in the footprints in the snow related to the Ellendale Circle and Denny's incidents that led to his arrest on December 7, 1985. (pp. 35-36). The two females and the police did track his footprints through the snow to his house that night. Nevertheless, he admits someone told him on December 7, 1985, about his shoe being a match to a footprint left at the Prekop residence. So, he knew from the date of his arrest about a footprint left at the Prekop residence. Now, despite that disclosure, he wants to complain that he was unable to examine that footprint, but that was a choice his defense made on more than one occasion if it was still there up during the second trial in 1992. This argument cannot succeed because he had knowledge of the print from the beginning.

## IV. THE PLAINTIFF CONFUSES THE MATERIALITY THRESHOLD FOR CHALLENGING CRIMINAL CONVICTIONS WITH THE ABSOLUTE IMMUNITY UNDER § 1983 FOR TESTIMONY

While the Plaintiff pays lip service to the defendants' absolute immunity under § 1983 for any testimony, he argues that they are nonetheless liable for their testimony because the testimony was material to his convictions. (pp. 43-45). Assessing the validity of a criminal conviction in the face of admittedly false testimony requires a standard different from that necessary for liability under § 1983, where there is absolute immunity for testimony. For example, the Plaintiff cites to *Alcorta v. Texas*, 355 U.S. 28 (1957) (*per curiam)*. That case came to the Supreme Court from the denial of Alcorta's habeas petition to the Texas courts after the only eyewitness to the crime recanted his trial testimony as false. 355 U.S. at 29-31. Another case upon which the Plaintiff relies, *United States v. Ausby*, 916 F.3d 1089 (D.C. Cir. 2019) (*per curiam*), was a direct appeal from the district court's denial of Ausby's new trial motion related to microscopic hair analysis. 916 F.3d at 1090. The FBI's microscopic hair analysis testimony was also at the center of *United States v. Butler*, 955 F.3d 1052 (D.C. Cir. 2020). Butler moved to vacate his fifty-year old murder conviction based on the false hair evidence underlying that conviction. 955 F.3d at 1053.

By contrast, in § 1983 cases, materiality of the testimony to the conviction is not considered because the witness is immune absolutely for all grand jury and court testimony. *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 332-33 (1983). A plaintiff may not end run this immunity by trying to frame a conspiracy claim grounded in this "false" testimony. *Id*. *See Padmanabhan v. Hulka*, No. 18-1301, 2019 WL 10378226, p. 2 (1st Cir. 2019) (unpublished) (Plaintiff's allegation that one defendant conspired with other defendants concerning his allegedly perjurious testimony failed to state a valid claim); *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir. 1993) (Claim alleging conspiracy to present false testimony

failed); *Mitchell v. City of Boston*, 130 F.Supp.2d 201, 212 (D.Mass. 2001) (Absolute immunity should extend to conduct inextricably tied to participation in judicial process).

Here, the Plaintiff points only to testimonial conduct by Defendants Kelly, Popko, and Jarvis as the basis of his claim. (pp. 44-45). That claim must fall to testimonial immunity. While the Plaintiff may rely upon conduct unrelated to the judicial proceedings to support his liability claims, he has made no effort to parse out the testimonial parts cloaked in absolute immunity.

## V. CONCLUSION

This Honorable Court should grant Defendant Arpin's Rule 56 motion for summary judgment for the reasons contained here and in the similar motions of all other defendants, and it should enter judgment in favor of this defendant on all claims.

Respectfully submitted,
DEFENDANT CHARLES ARPIN
By his attorney,

/s/ Austin M. Joyce
Austin M. Joyce, Esq.
BBO# 255040
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, MA 01609
508-754-7285
ajoyce@rja-law.com

June 6, 2024

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants of this 6th day of June 2024.

/s/ Austin M. Joyce
Austin M. Joyce