UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DOCKET NO. 18-CV-10147

GEORGE PERROT,
Plaintiff

v.

JUDITH KELLY, as Administrator for the Estate of THOMAS KELLY, THOMAS JARVIS, RICHARD KANE, CHARLES ARPIN, THOMAS KENNEDY, PAUL LANCE, MARIANNE POPKO, PAUL GLANTZ, RONALD ST. GERMAIN, ANDREW CANEVARI, CHERYL CLAPPROOD, UNKNOWN OFFICERS OF THE SPRINGFIELD POLICE DEPARTMENT, the CITY OF SPRINGFIELD, MASSACHUSETTS, FRANCIS BLOOM, WILLIAM EUBANKS and WAYNE OAKES,
Defendants

**REPLY IN SUPPORT OF DEFENDANT, RICHARD KANE'S, MOTION FOR SUMMARY JUDGMENT**

The Defendant, Richard Kane ("Kane"), hereby submits this brief Reply Memorandum in support of his motion for summary judgment on all claims against him by Plaintiff George Perrot ("Perrot").[1]

**1. Perrot's Limited Allegations Against Kane**

Throughout these proceedings, Perrot has sought to conflate the roles and alleged wrongdoings of various individual defendants involved in his 30+-year-old criminal convictions for rape, burglary and other crimes. This pattern continues in his Consolidated Opposition to

[1] In addition to the reasons set forth herein, Defendant Kane joins the arguments contained in the replies of the other Municipal Defendants.

Summary Judgment ("Opp.").[2] However, the questions remain: what, specifically, does Perrot allege *Defendant Kane* did that gives rise to an action by Perrot against Kane? Is there *any* support in the voluminous record for such an allegation? And does Defendant Kane enjoy qualified immunity for his alleged conduct?

Despite Perrot's conflation, Defendant Kane is *not* alleged to have done the following:

- Defendant Kane is *not* alleged to have fabricated a confession or any other statements by Perrot regarding the rape of Mary Prekop – the crime for which Perrot now claims he was wrongfully convicted – nor is there any support in the record for such an allegation;
- Defendant Kane is *not* alleged to have either fabricated or withheld evidence regarding the rape of Mary Prekop – the crime for which Perrot now claims he was wrongfully convicted – nor is there any support in the record for such an allegation;
- Defendant Kane is *not* alleged to have participated in any way, wrongful or otherwise, in Perrot's trials and convictions for the rape of Mary Prekop. Indeed, Defendant Kane is not alleged to have participated in any of Perrot's trials or convictions, and in fact he did not.

As Kane stated in his memorandum in support of summary judgment, Perrot's *only* specific factual allegation against Kane is as follows:

> [p]rior to [Perrot's] first conviction, Defendants, including Defendant Kane, fabricated a false statement, allegedly from [Perrot], *concerning the location of incriminating evidence*. That statement was false and fabricated – [Perrot] never gave it. Moreover, the things that [Perrot] did say, which were not incriminating, came after a police-initiated interrogation, of [Perrot], after he had been arraigned and appointed counsel, but without his counsel's presence, consent or even knowledge.

2 While it is understandable, from an administrative standpoint, that Perrot would submit a consolidated opposition to the multiple motions for summary judgment filed by the municipal defendants, doing so allows Perrot to again lump differently situated defendants together and omit the specifics of his allegations. Defendant Kane, for example, is mentioned by name only three times in Perrot's 67-page memorandum in opposition: once, in p. 22 fn. 6, for the trivial and inaccurate suggestion that Kane did not incorporate the arguments of co-defendants (specifically *Heck*) in support of summary judgment (Kane joins the arguments of his co-defendants in the first line of his memorandum in support), once (p. 37) in reference to a blood analysis (a) that does not form any part of Perrot's Amended Complaint, much less part of Perrot's allegations against Kane, and (b) with which Kane had nothing to do, and once more (p. 43) in reference to what Perrot now calls "peripheral evidence." Despite Perrot's lengthy opposition, he does not address Kane's central argument that he is entitled to qualified immunity for his conduct during the one interaction he had with Perrot. That is, Kane is entitled to qualified immunity because the right Perrot alleges was violated during that December 10, 1985 interaction – the right of a suspect not to be questioned outside the presence of his attorney, even where the suspect speaks voluntarily and after Miranda warnings – was not clearly established at the time of Kane's only interaction with Perrot.

Amended Complaint, ¶102 (emphasis added). This allegation refers solely to the interaction Kane had with Perrot on December 10, 1985, when Kane was sent by his commanding officer (Captain Brown) to the York Street Jail to observe and collect the blood draw from Perrot, who was being detained after his arraignment. Kane was acting in a purely custodial capacity (as the District Attorney described it in Perrot's first trial) for a "legitimate purpose" (as the trial judge described it in Perrot's first trial).[3] Kane "wasn't even involved in these cases." Attachment 1 at 19:11-20. Kane did not order the blood draw, he did not perform the blood draw, he did not analyze the blood, he did not requisition an analysis of the blood draw and he did not have any further connection with any analysis of the blood. Kane had never seen Perrot before December 10, 1985 and did not see him subsequently. Kane was not involved in the investigation of the assault on Mary Prekop. Kane did not testify at any of Perrot's trials.

To the extent that Perrot alleges that "Kane[] fabricated a false statement, allegedly from [Perrot], concerning the location of incriminating evidence[,]" the allegation is false, unsupported and irrelevant to Perrot's conviction for the assault on Mary Prekop. As set forth in Kane's memorandum in support of summary judgment, while Kane was observing the blood draw, Perrot volunteered information regarding the location of a pocketbook taken from *a different crime scene* – the burglary of Emily Lichwala at 33 Covel Street. While Perrot *denied* assaulting anybody in his conversation with Kane, he did say that he had tossed Lichwala's pocketbook in some bushes. This statement, given after Kane informed Perrot of his Miranda rights, was seemingly accurate – the pocketbook was located exactly where Perrot said it would be. This statement was nonetheless *excluded* from Perrot's first trial because the Court determined that it was solicited in violation of

[3] Defendant Kane hereby submits, as Attachment 1 hereto, a true and accurate copy of pages 1, 16-19 and 23 of the trial transcript from December 8, 1987.

Perrot's 6th Amendment right to have his attorney present.[4] At Perrot's second trial, *both the statement and the pocketbook itself were excluded*. Nonetheless, Perrot was still convicted of burglary and other crimes in the Lichwala matter and he has not received any post-conviction relief for those crimes. Perrot himself acknowledges that he is barred from bringing suit or recovering damages against anyone for actions related to the Lichwala matter because that conviction still stands (as Perrot was not exonerated). Opp., p. 1, fn. 1. Perrot further acknowledges that he is precluded from relitigating the truthfulness of the statements he gave regarding the Lichwala matter in his post-arrest confession – a confession with which Defendant Kane was *not* involved. Opp., p. 16.

It is undisputed that Kane's involvement with Perrot is limited to going to the York Street Jail in a custodial capacity on December 10, 1985 and receiving a voluntary, accurate statement regarding the location of evidence regarding Lichwala (in the form of a pocketbook) of crimes for which Perrot was convicted and is not challenging here. Indeed, he is precluded from challenging the Lichwala conviction. While Perrot disputes making portions of this voluntary, accurate statement to Kane at the jail (but admits making others), there is no evidence that Perrot did not give the entirety of this voluntary, accurate statement other than his own self-serving testimony. In any event, this voluntary, accurate statement was excluded from Perrot's trial as being obtained in violation of Perrot's 6th Amendment rights. The pocketbook itself was excluded from Perrot's second trial. Perrot was convicted in both trials of crimes relating to Emily Lichwala *and* crimes relating to Mary Prekop. The allegedly "fabricated" statement he gave to Kane at the York Street Jail (about the location of the pocketbook) concerned only the Lichwala matter, for which Perrot's conviction stands.

[4] In its ruling the Court relied on the case of *Michigan v. Jackson*, 106 S. Ct. 1404 (1986) which was decided by the U.S. Supreme Court *after* Kane's interaction with Perrot.

**2. Qualified Immunity**

With regard to the limited interaction Kane *did* have with Perrot, Kane is entitled to qualified immunity for his conduct during his interaction with Perrot on December 10, 1985 because a suspect's 6th Amendment right to have counsel present during any questioning (even suspect-initiated, Mirandized questioning) had not been "clearly established" on December 10, 1985. Indeed, the Supreme Court's April 1986 articulation of this right in *Michigan v. Jackson*, 106 S. Ct. 1404 (1986), was so new and, at the time, counterintuitive that neither the District Attorney nor Perrot's first trial judge was familiar with it on the eve of Perrot's December 1987 trial.

Perrot argues that "there is sufficient evidence in the record that would allow a jury to conclude that Defendants suppressed and fabricated evidence and that they conspired to frame Perrot for the crimes against" Mary Prekop. Opp. at 45. There is, however, *no evidence at all* that Defendant Kane suppressed or fabricated evidence or that he conspired to frame Perrot for the crimes against Mary Prekop. Indeed, there is not even an allegation that he did so. To the extent that Perrot alleges that Kane solicited a false statement from him at the jail regarding the location of the Lichwala pocketbook – an allegation unsupported in, and indeed contradicted by, the record – that statement concerned a different crime than the one Perrot complains of here, and, in any event, that statement *was not used* against Perrot during his trials. Perrot's claim against Kane boils down to the claim that, on December 10, 1985, Kane allowed Perrot, after Miranda warnings, to speak about an unrelated investigation when Kane should have stopped him. Kane, however, had no reason to know on December 10, 1985 that it was his obligation to stop a Mirandized suspect from speaking voluntarily. This "right" would not be articulated – much less "clearly

established" – for another 5 months. Accordingly, Kane is entitled to qualified immunity for his (exceedingly limited) interactions with Perrot.

### 3. Perrot's Belated SERI Allegation Is Not Viable Against Kane (Or Any Defendant)

Perrot's opposition to summary judgment refers to Kane by name only twice (not counting fn 6). The first reference (at p. 37) concerns an alleged "missing" blood analysis performed by an entity called Serological Research Institute ("SERI"). The allegation seems to be that one of the vials of blood from the December 10, 1985 blood draw was submitted for testing to SERI by the Springfield Police and that the results of that testing were "suppressed." There is no evidence of this, regarding Kane or any other defendant. There are no allegations in the Amended Complaint regarding this alleged suppression and no support in the record for the notion that Defendant Kane (or anybody else) was involved with it in any way. Defendant Kane testified during his deposition that, on December 10, 1985, after returning to Police headquarters with the three vials of blood, he tagged them with evidence receipts and turned them over to the "property division," which signed for them. Exh. M (Kane Depo.) at 81:1-24.[5] Defendant Kane knew he gave the evidence to the property division but, 38 years later, had "no clue" who the individual there was. Exh. M (Kane Depo.) at 81:19-24. Indeed, Plaintiff's Exhibit 32 reflects this chain of custody – Kane tags one vial of blood as "blood samples for John Cope Abbott," the SERI analyst, and the remainder as "blood samples for FBI." Kane only knew "John Cope Abbott" as "this fellow out of Northern Massachusetts" who was "a lab technician that the City had contracted with." See Exh. M (Kane Depo.) at 82:20-23. The "Evidence Receipt and Storage" document from SERI, included in Exhibit 32, reflects that Kane's supervisor, Captain John Brown, was the "submitter"

[5] Defendant Kane hereby submits, as Attachment 2 hereto, a true and accurate copy of pages 77 to 82 of his deposition transcript as additions to Exhibit M.

of blood evidence for analysis. There is *no* support in the record for the contention that Defendant Kane had anything to do with any analysis of this blood evidence.[6] Indeed, as described *infra*, Perrot's allegations against Defendant Kane are specifically limited to the statements made by Perrot to Kane on December 10, 1985 – not the alleged results of any blood analysis. Perrot confirmed in his answers to interrogatories that his claims against Kane are based entirely on his conversation with Kane during the blood draw. See generally Exh. QQ (Perrot's Responses to Kane's Interrogatories), with particular reference to Responses 4, 6-8, 15. The trial records from 1987 and 1992, produced in this matter, reflect significant forensic analysis of evidence, including blood analysis conducted on behalf of both the prosecution and defense counsel. Over the course of 30+ years, two criminal trials, several appeals and post-conviction motions and civil discovery, it appears that the first time that Perrot has alleged that a SERI blood analysis document was "suppressed" is here, in 2024, in opposition to the Defendants' motions for summary judgment. The allegations are utterly unfounded. More importantly – from Defendant Kane's perspective – such allegations have nothing to do, nor could they, with Perrot's claims against Defendant Kane.

## CONCLUSION

For the reasons stated herein and in his memorandum in support of his motion for summary judgment, and for any applicable reasons set forth in the motions of the other Municipal Defendants, Defendant Kane respectfully requests that this Court enter summary judgment in his favor on all claims set forth against him.

---

[6] While Plaintiff questioned Defendant Kane about the evidence receipts for the blood vials at his deposition, Plaintiff never asked about the SERI "Evidence Receipt and Storage" document. Plaintiff likewise never asked Defendant Kane whether he was involved in any way with SERI's analysis of the blood samples. (He was not.) There is no support in the record for the contention that Kane had anything more than a brief custodial interaction with these blood samples. There is also no support in the record for the contention that the results of this alleged SERI analysis, whatever they were, were exculpatory, suppressed, or otherwise wrongfully mishandled by Kane or any other defendant.

The Defendant,
Richard Kane

By His Attorneys,

*/s/Carole Sakowski Lynch*

Carole Sakowski Lynch, BBO #547718
MORRISON MAHONEY LLP
1500 Main Street, Suite 2400
Post Office Box 15387
Springfield, MA 01115-5387
(413) 737-4373
(413) 739-3125 (fax)
clynch@morrisonmahoney.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 7, 2024.

*/s/Carole Sakowski Lynch*
Carole Sakowski Lynch