C O M M O N W E A L T H OF M A S S A C H U S E T T S

Hampden, ss

Dept. of the Trial Court
Superior Court Division
Nos. 85-5415 thru 5418,
5420, 5422, 5423, 5425

COMMONWEALTH

VS

GEORGE PERROT

MOTIONS AND TRIAL HELD IN HAMPDEN COUNTY SUPERIOR COURT, SPRINGFIELD, MASSACHUSETTS, BEFORE MURPHY, J., AND A JURY, CONTINUING ON DECEMBER 8, 1987.

APPEARANCES

FRANCIS BLOOM, ASSISTANT DISTRICT ATTORNEY — Representing the Commonwealth

JAMES HAMMERSCHMITH, ESQ. — Representing the Defendant

Janis H. Trenholm
Official Court Reporter

VOLUME II

Commonwealth versus Sherman are police-initiated interrogation.

This is not a police-initiated interrogation. Officer Kane went down there, and I don't think there is any dispute on this, for a custodial purpose, and that is important, Judge, because I think what the Courts are trying to protect against are overzealous activity on behalf of the police department when it is recognized that the Sixth Amendment has been triggered.

Now, if in this case this statement was to go out, then, in essence, hypothetically, Judge, I don't understand the distinction between our case and this scenario, for example: tonight there is a fire somewhere and a black and white gets a call and goes to the fire. Within the course of fighting the fire, they take two people out of the building. Perfectly legitimate law

enforcement purpose of the black and white that is scouring or servicing that community. They take the man of the house out, and as he is coming down the stairs, they are talking to him about how he believes the fire started and they talk about something that happened in the kitchen, it's a grease fire or whatever. Within the course of that, he turns and says to the officer, you know, this has been a lousy week for me, I got arraigned for a rape two days ago in Superior Court, and then starts to make admissions. The individual, the cop, has enough brains to stop him right there, Mirandizes him, no dispute that he makes a voluntary waiver, and then makes an inculpatory statement.

That statement goes out because he had had a lawyer? I don't think that is the stage that the law has gone to, Judge. They are trying to protect against the police ignoring the

Sixth Amendment.

In the Michigan case, the cops ignored the Sixth Amendment. They knew that this guy requested a lawyer, they knew that a lawyer had been appointed, whether a meeting had been conducted or not, and they threw that aside and went down there hoping to get a statement before this guy had an opportunity to talk to whoever the lawyer in town was who was ultimately going to talk to him, to whom the letter had been sent out.

Kane isn't even involved in this case, Your Honor. He goes down for one purpose only, that is during the course of this trial now, today, if there is a dispute that the blood that the F.B.I. wants to talk about came from the arm of George Perrot, I can bring Kane in here and say I know this came out of Perrot's arm, because I stood there when Aberdale stuck the needle into his arm and saw the blood go in

there. That is the only reason he was down there. The police weren't trying to interfere with his Sixth Amendment right, he had already given a statement putting himself in -- you know that as part of the facts now -- putting himself inside the home of the Covel and the Malibu residence at or about the time that these awful incidents had occurred, about ten days before.

Kane wasn't even involved in these cases. He went down there not to interfere with George Perrot's Sixth Amendment right, but for the sole and simple purpose of trying to maintain the chain of custody, and then this man decided on his own, which I believe is still the status of the law in the state of Massachusetts, to waive his Fifth Amendmen right.

Judge, I really don't believe, if you look at the factual distinctions, that what I said to you yesterday

to his lawyer and, secondly, there is no police-initiated interrogation, you have a very proper function on behalf of the police department going down to watch blood come out of the arm of Mr. Perrot, and then him deciding on his own to blurt out certain statements.

THE COURT: Well, first of all, as far as the knowledge of Officer Kane goes, I think that the knowledge has to be imputed to him, that he did know that he was arraigned and --

MR. BLOOM: I agree to that, I don't dispute that.

THE COURT: I agree with you that he was there for a legitimate purpose, that the chain of custody on the blood sample was a legitimate purpose for him to be there, and I think his injunctions were that was the purpose of him going there, and I don't think that Jackson says that a defendant cannot initiate a desire to talk to police without the