**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **GEORGE PERROT,**<br>**Plaintiff,**<br>**v.**<br><br>**Judith Kelly, as administrator for the Estate of THOMAS KELLY, et al,**<br>**Defendants** | : | **C.A. No.: 18-CV-10147**<br>**LEAVE FOR EXCESS PAGES GRANTED MAY 30, 2024** |

**MUNICIPAL DEFENDANTS', CITY OF SPRINGFIELD, CHERYL CLAPPROOD, THOMAS KENNEDY, MARIANNE POPKO, JUDITH KELLY AS THE ADMINISTRATOR FOR THE ESTATE OF THOMAS KELLY, ANDREW CANEVARI, PAUL GLANTZ, THOMAS JARVIS, RICHARD KANE, CHARLES APRIN AND RONALD ST. GERMAIN, REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

## I. Introduction

The Defendants Thomas Kelly (through his estate), Thomas Jarvis, Marianne Popko, Thomas Kennedy, Paul Glantz, Ronald St. Germain[1], Andrew Canevari and Cheryl Clapprood (*collectively* "municipal employees") as well as the City of Springfield ("Springfield") file this reply brief in support of their previously filed Motion for Summary Judgment and in response to the Opposition filed by the Plaintiff in this matter[2].

The municipal employees and Springfield assert that they have established that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The opposition filed by the Plaintiff fails to identify any material facts in dispute, asserts facts that are not supported by record citation, misstates the applicable

[1]Defendant St. Germain passed away during the pendency of this action. To date the Plaintiff has failed to perfect a claim against his estate.
[2] The Defendants Richard Kane and Charles Arpin are filing their responses to the opposition separately.

law, raises heretofore non-disclosed contentions, fails to articulate acts by individual defendants which support allegations of wrongdoing and requests that this Court allow the matter to proceed to trial based upon rank speculation. Most concerningly, Plaintiff misrepresents that the original of this statement was not put into evidence, when his own counsel states in a sidebar that the statement offered was the original.

As is well established, to defeat summary judgment the nonmovant must provide more than a scintilla of evidence, and not merely conclusory allegations or speculation, upon which a jury could properly find in its favor. Fed. R. Civ. P. 56(a). *United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.*, 960 F.2d 200, 204 (1st Cir. 1992) (internal citations omitted).

A party cannot survive summary judgment simply by articulating conclusions the jury might or possibly could imaginably reach; it must point to evidence that would support those conclusions. *See Miss. Pub. Emps.' Ret. Sys. v. Bos. Scientific Corp.,* 649 F.3d 5, 28 (1st Cir.2011) ("With respect to each issue on which [a] plaintiff has the burden of proof at trial, it must present definite, competent evidence to rebut the motion....") (internal quotation marks omitted). *Packgen v. BP Exploration, Inc.*, 754 F.3d 61, 67 (1st Cir., 2014). "(U)nsupported allegations need not be credited and the Court has not relied on any purported facts that are not supported by materials in the record when ruling on the pending motions. " *Cochran v. Quest Software, Inc.,* 328 F.3d 1, 6 (1st Cir. 2003)

## II. THE PLAINTIFF HAS MADE SIGNIFICANT MISREPRESENTATIONS OF THE RECORD IN AN ATTEMPT TO CREATE A MATERIAL QUESTION OF FACT

### A. Statement Signed by Perrot on December 7, 1985

Central to this case is a statement made by Perrot on December 7, 1985 regarding his break in and robbery at Lichwala's house and his break in at Prekop's house. *(Plaintiff's Ex. 6)*

For the first time in this filing Perrot now alleges ***with absolutely no proof or evidence at all*** that the statement Perrot signed on December 7, 1985 was not the same statement that was later presented at the trial, that he was denied access to the original statement that he signed on December 7, 1985, and that Jarvis altered the original statement, and covered up the alterations by using a photocopied falsified document. Specifically, Perrot alleges in his statement of additional facts:

> "Fact-43. To make the statement appear legitimate, Jarvis elicited facts from Perrot about his whereabouts prior to the attack on Prekop, and then had Perrot sign the statement with only the information he provided in the first paragraph. (Defs.' Ex. EE, Mot. Suppress Hr'g, 9/2/86, pp. 66-67, 96-104) (Pl.'s Ex. 6, False Confession Statement, 12/7/85).
> Fact-44. Subsequently, Jarvis inserted the confession to the Prekop Crimes into the original document, photocopied it, and then provided the copy of the Statement to the prosecutor. (Pl.'s Ex. 6, False Confession Statement, 12/7/85). (Defs.' Ex. EE, Mot. Suppress Hr'g, 9/2/86, pp. 66-67, 96-104) (Pl.'s Ex. 6, False Confession Statement, 12/7/85).
> Fact-45. Jarvis confronted Perrot with a pair of sneakers during one of the interrogation sessions. (Defs.' Ex. EE, Mot. Suppress Hr'g, 9/2/86, pp. 169-70) (Pl.'s Ex. 1, Declaration of George Perrot, 5/9/24, ¶4).
> Fact-58. During Perrot's first trial, Jarvis testified on direct examination about the Statement concerning the Lichwala and Prekop Crimes, and the court admitted the Statement into evidence. Only the photocopied version was introduced at trial. (Pl.'s Ex. 10, Trial 1 Test. 12/9/87, pp. 149-151, 160-62)."[3]

This entire argument has been manufactured this late in the litigation, purportedly based upon a sidebar discussion that took place during the first of Perrot's two criminal trials.

---

[3] As set out in the response to Plaintiff's Statement of Additional Material Facts, filed contemporaneously with this document, the citations to the record included by the Plaintiff do not support the facts alleged, in violation of Rule 56.

The sidebar conference is included in Plaintiff's opposition *(Dkt. 362, p. 31)*, and in turn references Plaintiff's Ex. 10, p. 41. During that portion of the trial Perrot's counsel asks for the original statement. ADA Bloom states that the document being entered "may" be the original statement, but that he was sure the original had been used at the motion to suppress. The Court asks Perrot's counsel if he is questioning whether the statement is an exact copy, and he indicates he is not sure if it is an exact copy. The Court thereafter breaks for lunch.

Disingenuously, Plaintiff then fails to draw the Court's attention to pages 158-159 of Plaintiff's Ex. 10 that after the lunch break Perrot's counsel approaches sidebar and states "(t)his is the original" when the statement was being put into evidence. He then goes on to state he is reserving his right to argue the voluntariness of the statement.

There is no evidence that the original document was manipulated in any way. The only evidence is that Perrot and his counsel had access to the original statement. The entire argument advanced in opposition to the motion for summary judgment about the statement and Jarvis fabricating, manipulating or otherwise altering the statement is advanced with no record support, and in a bad faith attempt to survive summary judgment.

**B. Use of Sneakers During Interrogation**

In his statement of additional facts Perrot alleges "Jarvis confronted Perrot with a pair of sneakers during one of the interrogation sessions." *(Defendants Ex. ee, pp. 169-70) (Plaintiff's Ex. 1, ¶4)* The cited portions of the motion to suppress transcript merely state that Officer Jarvis had a pair of sneakers with him when he interviewed Perrot, and no explanation of if or whether they were used in the interview.

Perrot has now come forward for the very first time and provided a wholly self-serving affidavit in which he states that "one of the officers" during his interviews on December 7, 1985 showed Perrot his shoes and stated they "matched" a shoe print on the door of Mary Prekop's home. *(Plaintiffs' Ex. 1, ¶4)*

In answers to contention interrogatories George Perrot has never disclosed this allegation. Neither did he testify to this in the motion to suppress *(Defendants Ex. ee)* nor did he testify to this in his two (2) days of deposition, in spite of being repeatedly asked. *(Plaintiff's Ex. 41, pp. 57-63; 73-79* When questioned by Jarvis' attorney at deposition, he stated the only fact he was alleging was coercive about the interrogation was the officers continually told him they knew he was the person who broke into Lichwala and Prekop's houses. *(Plaintiff's Ex. 41, p. 298)*

The law in the First Circuit prohibits the use of self-serving affidavits at the summary judgment stage that conflict with prior discovery requests. "[W]here a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony [has] changed.' " *Hernandez–Loring v. Universidad Metropolitana,* 233 F.3d 49, 54 (1st Cir.2000) (second alteration in original)" *Escribano-Reyes v. Professional Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir., 2016) (internal citations omitted). A *see also Torres v. E.I. DuPont de Nemours & Co.,* 219 F.3d 13, 20 (1st Cir.2000). As is evident from the answers to contention interrogatories produced by the Plaintiff, and the inadequacy of the supplementation even after the matter had been reviewed by this Court, Perrot has been resistant since the initiation of this case to provide a clear statement of his

legal theories and the factual record supporting such theories. He now attempts to create a factual controversy at the 11th hour in an attempt to avoid summary judgment. The First Circuit has held that it is appropriate for the Court to consider the timing of this disclosure. Specifically, the Court has stated:

> "The timing of the sworn statement—signed one day before Escribano's opposition to HEPA's motion for summary judgment was filed—also supports the district court's conclusion that Escribano's sworn statement was an inappropriate attempt to manufacture issues of fact and should be stricken. *See Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc.,* 447 F.3d 105, 110 & n. 2 (1st Cir.2006) ('[T]he Statement was executed only after [the defendant] had filed its motion for summary judgment, thus suggesting that the Statement was made solely to create an issue of fact for the purpose of surviving summary judgment,' *id.* at 110.); *Torres,* 219 F.3d at 20–21 (affirming district court's decision to strike affidavits that were offered after defendants had filed motions for summary judgment); *Colantuoni,* 44 F.3d at 5 ('[W]e think it significant that the affidavit was offered only after defendants had filed motions for summary judgment. In these circumstances, we are persuaded that plaintiff's affidavit should be disregarded in considering the propriety of summary judgment.')."

*Escribano,* supra at 387. It is clear that Perrot's, like the plaintiff's in the cases cited above, allegation and averment were made only for purposes of surviving summary judgment, and should be wholly disregarded.

## III. ATTEMPT TO DISTINGUISH *JOHNSON V. MAHONEY* BY ASSERTING JOHNSON'S CONVICTION WAS NOT VACATED LIKE THE PLAINTIFF'S IS INCORRECT

As fully briefed in the original memorandum of law, the Municipal Defendants are entitled to rely upon the findings made by the Superior Court in 1987, and affirmed by the Massachusetts Supreme Judicial Court (SJC) that the Statement was made by Perrot freely and voluntarily, and Perrot is at collaterally estopped from contesting those issues. The federal

courts "must give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgments emerged." *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005). Massachusetts courts have abandoned the requirement of mutuality. *See Aetna Cas. & Sur. Co. v. Niziolek*, 395 Mass. 737, 481 N.E.2d 1356, 1360 (1985) ("[A] party to a civil action against a former criminal defendant may invoke the doctrine of collateral estoppel to preclude the criminal defendant from relitigating an issue decided in the criminal prosecution.").

"The guiding principle in determining whether to allow defensive use of collateral estoppel is whether the party against whom it is asserted 'lacked full and fair opportunity to litigate the issue in the first action or [whether] other circumstances justify affording him an opportunity to relitigate the issue.'"). *Martin v. Ring*, 401 Mass. 59, 514 N.E.2d 663, 665 (1987); *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005). "It is 'well-established' that the doctrine of issue preclusion applies to civil rights claims brought under § 1983. *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005) (citing *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). 'Federal courts must give to state-court judgments the same preclusive effect as would be given by the courts of the state from which the judgments emerged.' Id. (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) and *Allen*, 449 U.S. at 96)." Echavarria v. Roach, 2017 WL 3928270, at *9 (D.Mass., 2017) (not reported.) In Massachusetts, the "doctrine of issue preclusion provides that when an issue has been actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or different claim*." Jarosz v. Palmer, 766 N.E.2d 482, 487–88 (Mass. 2002)* (quotation marks and citation omitted).

In his opposition memorandum *(Dkt. 362, p. 12)*, plaintiff asserts that Donnell Johnson's criminal case is materially distinguishable from the current case, erroneously and recklessly averring that Johnson's conviction was not vacated by a court, as was the Plaintiff's. *Johnson v. Mahoney*, 424 F.3d 83, 85 & 88 (1st Cir. 2005). A simple review of the district court's docket in the case, Docket No. 1:02-cv-10730, reveals the underling criminal conviction was vacated and thereafter a nolle prosequi entered. Judge Lasker's decision on the summary judgment motions stated that, upon the discovery of new evidence, Johnson's convictions were vacated. (*Id. at #90, p. 4)* Finally, in Massachusetts, a district attorney is unable to nolle prosequi a case once sentence has been imposed, as it had in Johnson's case. Mass Crim P. R. 16. *See Commonwealth v. Dascalakis*, 246 Mass. 12, 19, (1923) (abrogated on other grounds by, *Commonwealth v. Bly*, 444 Mass. 640, (2005)). As in Johnson, Perrot had his convictions vacated on the same grounds—new evidence, namely new scientific evidence related to FBI hair science—and the district attorney entered nolle prosequi. There is no difference in the procedure between the two cases. Based upon the law articulated in the First Circuit, Perrot is precluded from relitigating the issue of the voluntariness of the Statement.

## IV. PLAINTIFF'S ERRONEOUSLY STATE ISSUE PRECLUSION SHOULD NOT APPLY BECAUSE THERE WAS NO APPEAL FROM THE SJC'S AFFIRMATION OF THE VOLUNTARINESS OF THE STATEMENT IS NOT SUPPORTED BY FACT OR LAW

Plaintiff next presents a circular argument that there was no ability to appeal the SJC's affirmation of the motion to suppress, and thus there was no available avenue for review of the prior ruling on the issue, citing *Jarosz v. Palmer*, 49 Mass. App. Ct. 834, 837 (Mass. 2000); *see also*, *Tausevich v. Bd. of Appeals of Stoughton*, 402 Mass. 146, 150 (1988) (declining to apply

issue preclusion where there was no appealable judgment or order). Perrot's reasoning is both factually and legally incorrect.

First, the ruling affirmed by the SJC was the Superior Court's ruling, and was in fact the appeal of the denial of the motion to suppress the statement. See *Commonwealth v. Perrot*, 407 Mass. 539 (1990). Moreover, as noted in the statement of facts, Perrot in fact did attempt repeatedly to have that ruling overturned, without success. *(See, Defts. Statement of Facts, Dkt. 337, ¶¶ 303-313)* Under the prevailing law in the First Circuit the issue of the voluntariness of the Statement has been decided, and the Defendant is precluded from attempting to relitigate that issue in this civil action.

## V. PLAINTIFF IS BARRED FROM CHALLENGING THE STATEMENT SINCE SUCH A CLAIM WOULD IMPLICATE THE VALIDITY OF HIS CONVICTION FOR THE LICHWALA CRIMES, WHICH HAVE NEVER BEEN REVERSED OR VACATED

Plaintiff first suggests that the Defendants did not fully develop the Heck argument in their filing. Any judgment invalidating the statement at issue clearly would implicate the validity of the conviction for the Lichwala crimes, and is thus Heck-barred. *Heck v. Humphrey*, 512 U.S. 477, 486–90 (1994.) The Plaintiff is aware of this, as he suggests that this Court somehow parse the statement to remove all mentions of the Lichwala crimes for which he stands convicted. *Heck* requires that "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction," and if so, the claim may proceed only if the conviction has been vacated. *Id.* at 487

If the court were to allow Plaintiff to relitigate the voluntariness of the statement at issue, even if somehow the statement was parsed to remove all mention of the Lichwala crimes, and the jury found in Perrot's favor, it would necessarily and incontrovertibly implicate

the validity of his conviction for the Lichwala crimes. The Plaintiff cites to no authority that would allow the editing or parsing of the statement as called for. More importantly for the *Heck* analysis Perrot claimed that he did not admit to the break-in or robbery at Lichwala at all times in connection with this case. He claimed that at the motion to suppress *(Defendants Ex. ee, pp. 97-108)*, and at his testimony in the first trial. *(Plaintiff's Ex. 12, pp. 115-119*) The trial judge denied his motion to suppress the statement. The jury did not believe his denial of the break in at Lichwala's house, as evidenced by the jury verdict returned against him for the Lichwala crimes. The only evidence linking him to the Lichwala crimes was his own statement, as opposed to the Prekop rape, for which later discredited forensic evidence was also introduced. Both the issue of the voluntariness of the Statement and the authenticity of the Statement are *Heck*-barred.

## VI. THERE IS NO FACTUAL BASIS UPON WHICH A REASONABLE JURY COULD FIND INDIVIDUALLY NAMED DEFENDANTS LIABLE UNDER ANY OF PLAINTIFF'S LEGAL THEORIES, AND THUS THEY ARE ENTITLED TO JUDGEMENT IN THEIR FAVOR AS A MATTER OF LAW

In spite of the extensive discovery and the voluminous documentary record, the Plaintiff has failed to identify any material facts that could possibly implicate any of the named defendants in this matter.[4]

### A. Cheryl Clapprood, Paul Glantz, Ronald St. Germain, Thomas Kennedy, and Andrew Canevari

Within the Plaintiff's statement of additional facts and the memorandum filed in opposition to the summary judgment, the Plaintiff alleges no facts whatsoever that would allow

[4] Richard Kane and Charles Arpin are filing individual replies, and their arguments over the lack of factual basis to support any claim against them are incorporated herein by reference.

a reasonable jury to find that Defendants Clapprood, Glantz, St. Germain, Kennedy and Canevari violated any constitutional rights of Perrot, and they are entitled to summary judgment as a matter of law. Municipal defendants rely on the sections in their original memorandum in support of summary judgment for further factual support.

**B. <u>Marianne Popko</u>**

With no support and based upon speculation Perrot now alleges that Popko failed to accurately record Prekop's statement on November 30, 1985 regarding the break-in and sexual assault she endured on that night. *(Dkt. 362, p. 7)* Prekop testified during the 1992 trial and claimed the gloves had been discovered by her after she was taken to the hospital that day, and after she had given the statement to Popko. Ms. Prekop was 78 years old in 1985 and had been the victim of multiple sexual assaults nearly eight years earlier. The statement was exculpatory for Perrot, the description given by Prekop did not match the Perrot. Perrot had not been arrested. There is no logical or possible reason why Popko would have misstated the time the gloves were discovered, and this is rank speculation. Based on a fair review of the summary judgment record this allegation is rank speculation and cannot be used to defeat summary judgment. Moreover, Perrot failed to identify this allegation in answer to the contention interrogatories propounded in this matter. *(Plaintiff's Ex. 58)*

**C. <u>Thomas Jarvis</u>**

As noted above, Perrot has made a completely unsupported allegation against Jarvis regarding alleged manipulation and falsification of the Statement. This argument is demonstrably false. Similarly, the completely speculative and undisclosed allegations about the use of sneakers during the interrogation has been addressed above.

All other facts alleged against Jarvis do not support any claim of misconduct, and in fact are routine and lawful police practice. Perrot was read his Miranda rights multiple times, was offered and finally used the phone, was given access to his family when they visited, knew of his right to have an attorney present and to decline to answer questions, was given food and drink, and was given the type written statements to review before signing. Perrot gave permission in writing to Jarvis to obtain hair and blood samples to determine his involvement in the sexual assaults.

There are no facts in the summary judgment record from which a reasonable jury could return a verdict against Jarvis for violating Perrot's constitutional rights, and Jarvis is entitled to judgment in his favor as a matter of law.

**D. <u>Thomas Kelley</u>**

There are no facts in the summary judgment record sufficient for a reasonable jury to return a judgment against Thomas Kelley for civil rights violations in connection with the investigation and prosecution of George Perrot. As stated above and in the original summary judgment motion the interrogation of Perrot was lawful, and he is precluded from relitigating the voluntariness of the Statement.

Kelley testified that he had brought the gloves recovered from Prekop's home in the early morning hours of November 30, 1985 to Perrot's home when executing the search warrant on December 7, 1985. He testified he showed the gloves to Perrot's sister, Westcott, who stated they looked like a pair she owned. When she then went to look for the gloves they were missing. *(Dkt. 337, ¶¶178-179)* Westcott also testified at the trial, and stated that she had not had the conversation with Kelly on December 7, 1985 that he recalled. *(Dkt. 337, ¶¶191-*

*192)* She testified that when shown the gloves she said they looked familiar, and may have belonged to Perrot's girlfriend, Eldridge. *(Dkt. 337, ¶192)* Kelley and Westcott both also testified at the second trial, in substantial conformity with their testimony at the first.

We do not know which version of the story the juries believed. First, while different, Westcott's version is not wholly exculpatory, since whether they were hers or Lisa Eldridge's gloves, Perrot had access to them. Further, as set out fully in Arpin's reply brief (such argument incorporated herein by reference) Perrot confuses the standard for Court's employ when assessing the validity of a criminal conviction in the face of admittedly false testimony and the absolute immunity for testimony in a § 1983 claim where there is absolute immunity for testimony. No liability can lie against Kelley for his testimony at the trials regarding his recollection of his conversation with Nancy Westcott. Witnesses are immune "from subsequent damages liability for their testimony in judicial proceedings*."* *Briscoe v. LaHue*, 460 U.S. 325, 330-31, 35 (1983) (police officers testifying at trial are immune from liability under § 1983); *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012); *Watterson v. Page*, 987 F.2d 1, 9 (1st Cir.1993) ("immunity applies even to public officials who knowingly give false testimony.")

Absolute immunity also protects Kelley from any liability for testimony given at the hearing on the motion to suppress. *McGrath v. Town of Sandwich*, 22 F. Supp. 3d 58, 71 (D. Mass. 2014) (Court will follow other courts that have extended the holding of Rehberg to testimony provided under oath at other pre-trial proceedings); *Williams v. City of Boston*, 974 F.Supp.2d 13, 15-16 (D.Mass.2013) (finding police officer entitled to absolute immunity for

testimony provided under oath at a hearing on a motion in limine).[5] There is no constitutional violation by Kelley supported by the summary judgment record, and he is entitled to judgment in his favor as a matter of law.

## VII. THE SUMMARY JUDGMENT RECORD FAILS TO SUPPORT AN ALLEGATION OF ANY FAILURE TO PRODUCE TO THE PROSECUTION ANY EXCULPATORY EVIDENCE

As set out in the reply filed on behalf of Defendant Arpin, and incorporated herein by reference, Plaintiff has misstated the law relating to police officer's obligations exculpatory evidence to prosecutors. While the duty of prosecutors to turn over such evidence to the defense was established by 1972 (see *Giglio v. United States*, 405 U.S. 150, 154 (1972); *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963)) it was not until 1995 that the prosecutor's disclosure obligation was extended to include evidence that was known only to police officers. *Kyles v. Whitney*, 514 U.S. 419 (1995). (Holding the prosecutor must obtain and disclose that evidence. *Id*. at 437-38. ) "The holding in *Kyles* is antithetic to any suggestion that [before 1995], *Brady's* affirmative disclosure obligation reached unreservedly to no-fault nondisclosure of *Brady* materials known only to police officers. A fortiori, it was not then clearly established that police officers owed any affirmative no-fault obligation to criminal defendants. Consequently, the detectives are entitled to qualified immunity." *Haley v. City of Boston*, 657 F.3d 39, 49 (1st Cir. 2011). Insofar as the Plaintiff is relying on this no-fault aspect of the *Brady* disclosure doctrine, his claim falls to the qualified immunity of the defendants.

[5] Perrot's attempts to malign Mr. Kelley's character by repeating Defendant Bloom's outrageous claims about Kelley from his deposition are inadmissible, irrelevant and a salacious recounting of rank hearsay for no reason other than to distract from the lack of support in the record for Perrot's claims, and must be ignored by this Court. See Plaintiff's Statement of additional facts at Fact 132.

Again, as noted in Arpin's reply brief what was well established in 1985 related to the knowing use of perjured testimony or the deliberate suppression of material evidence leading to the conviction. *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). To succeed, the Plaintiff must show that "the withholding of evidence was a necessary condition for the conviction." *Drumgold v. Callahan*, 707 F.3d at 49. The "reasonable probability standard" required to make out a *Brady* violation does not establish recovery under § 1983, however. The Plaintiff must also establish "a stronger causal link than is inherent in *Brady's* materiality standard," which is akin to the same materiality inquiry with a heightened proof requirement. *Id*. at 49, n. 13. Examining the Plaintiff's discussion of each "suppressed" item will expose the Plaintiff's inability to prove any "suppression" of material evidence.

A. **Jarvis' his handwritten notes**

The only description in the record for the contents of Jarvis' handwritten notes is his recollection that he took contemporaneous notes during the interviews on December 7, 1984. With no factual support, plaintiff now alleges Jarvis's destruction of all his notes when he cleaned out his desk upon retirement into some sort of bad faith destruction of evidence "potentially" exculpatory for the Plaintiff. *(Dkt. 362, pp. 33-34)* This is woefully short of the obligation imposed by the Court to pursue this claim. "We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Youngblood v. Arizona*, 488 U.S. 51, 58 (1988). Notably, the criminal defendant failed in *Youngblood* to show a due process violation when the police failed to refrigerate and test semen samples taken on the night of the crime. The criminal defendant in *California v. Trombetta*, 467 U.S. 479, 488 (1984), also failed

when challenging the police failure to preserve the breath samples used in alcohol breath tests. In *Illinois v. Fisher*, 540 U.S. 544, 545-46 (2004) (per curiam), the state destroyed the seized drugs according to its usual procedures approximately eleven years after the defendant's arrest. He failed because he could not show bad faith by the police. *Id*. at 548-49.

Further illuminating the paucity of evidence suggesting any exculpatory information was included in any handwritten notes is Perrot's own testimony at deposition. He described the process during his interviews on December 7, 1985 as follows: The officers asked him questions, he answered the questions, and they typed up the answers. *(Plaintiff's Ex. 41, p. 301)* In answer to Jarvis' contention interrogatories Perrot fails to raise any issue with regard to the use of any sneakers *(Defendants' Ex. aaa, Plaintiff's Answers to Interrogatories Propounded by Thomas Jarvis),* and failed to include any such information in the answer and supplementation to the City's contention interrogatories. *(Defendants Ex. rr; Ex. bbb, Plaintiff's First Supplemental Answer to Interrogatories)*

**B. Kelly's Interviews of Adkins and Timmerman**

Municipal Defendants rely upon and incorporate herein by reference Arpin's arguments regarding the interviews of Adkins and Timmerman.

**C. Other Suspects**

Plaintiff argues without any factual support that the alleged failure to disclose other suspects resulted in harm to Perrot. He then lists seven alleged suspects, to wit: Todd Swenor, Jeffrey Adkins, Andy Sotiropoulous, and Robert Timmerman were suspects in the Marchand assault; William Geagan was a suspect for the Prekop Crimes; and John Mezzetti Jr. and John P. Roy were suspects in Emily Lichwala's assault that occurred on October 24, 1985. Notably 6 of

the 7 listed have nothing at all to do with the crimes germane to this civil case; i.e. the Marchand assault and the Lichwala sexual assault on October 24, 1985. There has never been a conviction in either of those crimes.

In support of Geagan being a "suspect" in the Prekop assault Perrot offers an inadmissible and unattributed handwritten note stating that Geagan was seen in a grocery store buying gardening gloves and "acting suspicious", and a wholly unrelated police report regarding Geagan being picked up on outstanding warrants in 1981. *(Plaintiff's Ex. 28)* There is no credible or even understandable evidence offered to sustain the claim that a.) Geagan was a suspect in the Prekop crimes; or b.) any exculpatory evidence relating to Geagan was withheld. This argument is without merit and should be disregarded by the Court.

D. **Prekop Medical Records**

As argued by Perrot, to the extent that any constitutional violation occurred with regard to disclosure of Prekop's medical records, such fault lay solely with ADA Bloom, and there are no facts alleged from which a reasonable jury could return a verdict in this matter against any of the Municipal Defendants.

**VIII. Qualified Immunity**

The Plaintiff continues to put forth the unsupported allegations that Jarvis falsified the Statement, that exculpatory evidence was withheld, and that the SPD officers attempted to "frame" Perrot. The municipal defendants rely upon the arguments and law put forth in their memorandum in support of Summary Judgment relative to the application of the doctrine of qualified immunity.

## IX. MONELL CLAIMS

The Plaintiff has misstated both the record in this matter and the law in an attempt to create a Monell issue that could survive summary judgment. Springfield relies upon its arguments and law as set out in the original memorandum in support of summary judgment on this issue. As a supplement to those arguments, and in response to the claims made in Plaintiff's opposition, Springfield argues a closer examination of the arguments raised by Plaintiff in his opposition underscores the lack of credible evidence of a *Monell* violation by Springfield.

### A. Since Plaintiff Cannot Establish A Constitutional Violation By Any Individual SPD Member, not Monell Liability Can Lie

A § 1983 action against a municipality is separate and distinct from a § 1983 against individual defendants. The Supreme Court has stated that a municipality can only be liable for its actions in the creation of policy and training or the lack thereof; a municipality cannot be held vicariously liable for the constitutional violations of its employees. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, (1978). Since there are insufficient facts to support a finding of a constitutional violation by any member of the SPD, any Monell claim must fail as a matter of law.

### B. Alleged Lack of *Brady* training, protocols and procedures

As set out at length, above, Plaintiff misapprehends that status of the law in 1985 relating to police officer's obligations involving turning over exculpatory evidence to prosecutors. Perrot's arguments on Monell repeatedly claim that Springfield deficiently failed to have policies, procedures and trainings on so-called "Brady" obligations. *(Dkt. 362, pp. 53-54,56 and 59)*

Further, as noted above, the SPD were aware of their obligation to not suppress any "material" evidence. See . *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935). *(Dkt. 337, ¶* 329-331.*)* Training was provided regarding their obligations. Further, during the relevant years the academy trained officers it was an obligation of the state in a criminal case to turn over all exculpatory evidence to the prosecution. *(Dkt. 337, ¶* 329*)* There is no evidence that any material evidence in this matter was suppressed by any member of the SPD.

**C. Falsifying Records or Tampering With Evidence Violated SPD Written Policies**

Falsifying and tampering with evidence as well as false testimony would be a violation of law and therefore covered under Rule 29 of the SPD rules and regulations. *(Dkt. 337, ¶330)*. All SPD officers were trained in these obligations.

**D. It Is Uncontroverted That SPD Training Comported with State Standards**

As set out in the MDSOF the training which all officers at the SPD were required to undertake was dictated by and in conformity with Massachusetts State Law. *(Dkt. 337, ¶327, 328).* Given the state law oversight, even if the training was in some way deficient, it cannot reasonably be found to be as a result of deliberate indifference.

**X. STATE LAW CLAIMS**

For the reasons set out in the Plaintiff's memorandum of law submitted at the time of the filing of the motion for summary judgment, the Municipal Defendants respectfully request summary judgment enter in their favor on all state law claims.

Respectfully submitted,
The Defendants, City of Springfield,
Cheryl Clapprood, Thomas Kennedy, and
Marianne Popko (n/k/a Moriarty), Kelley
Estate, By their attorneys,

Dated: June 7, 2024

*/s/ Lisa C. DeSousa*

Lisa C. deSousa, Esq. BBO#546115
Tyler J. Kenefick, Esq. BBO#696304
Robert A. Schmidt, Esq. BBO#666905
Phil Ciccarelli, Esq. BBO#678452
City of Springfield Law Department
1600 E. Columbus Ave., 2nd Floor
Springfield, MA 01103
Tel: (413) 886-5205
ldesousa@springfielcityhall.com
tkenefick@springfieldcityhall.com
attyschmidt@gmail.com
phil@ciccarelli.law

Defendant City of Springfield
by its attorneys,

*/s/ Thomas P. Campbell*

Thomas P. Campbell, Esq. BBO#564124
Paul Tellier, Esq. BBO#676203
Joshua Loveall, Esq. BBO#692161
Nathan Y. Pak, Esq. BBO#70573
D'Ambrosio LLP
185 Devonshire Street, 10th Fl.
Boston, MA 02110
Tel: (617) 720-5657
tcampbell@dambrosiollp.com
ptellier@dambrosiollp.com
jloveall@dambrosiollp.com
npak@dambrosiollp.com

Defendant, Charles Arpin,
by his attorney,

*/s/ Austin M. Joyce*
Austin M. Joyce, Esq.
BBO #255040
Reardon, Joyce & Akerson, P.C.
4 Lancaster Terrace
Worcester, MA 01609
Tel: (508) 754-7284
ajoyce@rja-law.com

Defendants, Thomas Jarvis, Charles Arpin,
Paul Glantz, Ronald St. Germain and Andrew
Canevari, by their attorney,

*/s/ Kevin B. Coyle*
Kevin B. Coyle, Esq. BBO #103540
1299 Page Boulevard
Springfield, MA 01104
Tel: (413) 787-1524
attycoyle@aol.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a true copy of the within was this day served upon the parties via the Federal Court's ECF Notice and Delivery System. I am not aware of any party who is a non-registered participant, and therefore electronic filing is the sole means of service of this document.

Signed under the pains and penalties of perjury.

Dated: June 7, 2024 /s/ Lisa C. DeSousa
Lisa C. deSousa, Esq.