IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GEGE PERROT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-cv-10147 |
| v. ) | |
| ) | |
| ESTATE OF THOMAS KELLY, ) | Honorable M. Page Kelley, |
| THOMAS JARVIS, RICHARD KANE, ) | Magistrate Judge |
| CHARLES ARPIN, THOMAS KENNEDY, ) | |
| MARIANNE POPKO, PAUL GLANTZ, ) | |
| ANDREW CANEVARI, CHERYL ) | JURY TRIAL DEMANDED |
| CLAPPROOD, FRANCIS BLOOM, ) | |
| THE CITY OF SPRINGFIELD, ) | |
| MASSACHUSETTS, ) | Leave to file granted on October 22, 2024 |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF FROM PURSUING CLAIMS UNDER THEORY OF RESPONDEAT SUPERIOR (Dkt. Nos. 402, 409, & 459)**

Defendant City of Springfield's motion fails on two levels. First, as explained below, the motion is wrong on the merits. The Massachusetts Civil Rights Act, G.L. c. 12, §§ 11H, 11I (MCRA), properly interpreted, provides a path for municipal liability, and Plaintiff's Complaint adequately pled *respondeat superior* against the City. Second, regardless the City has plainly forfeited any defense to liability for the MCRA claim. Despite asserting many other affirmative defenses, the defense belatedly raised in this motion *in limine* was not among them. The Massachusetts Supreme Judicial Court (SJC) has consistently held parties to their forfeiture—indeed it has held municipalities to their forfeiture of this exact defense—and this case does not justify an exception.

## Discussion

### I. Defendants Have Forfeited This Argument By Failing To Raise It Until The Eve Of Trial

As Defendants themselves strongly insist, the proper result where a party fails to preserve arguments is forfeiture. Here, Defendants waited until after summary judgment had already been resolved before asserting any affirmative defense along the lines argued in this motion *in limine*. Under applicable law, they have forfeited the argument.

#### A. Plaintiff Adequately Pled And Has Consistently Pursued This Theory Of Liability Against The City

The City's entire argument rests on the false premise that Plaintiff did not allege a MCRA claim against the City. That is inaccurate. Since the start of this case he has been pursuing a MCRA claim against the City on the basis of *respondeat superior*.

Taking a step back, the First Circuit "has held that there are no heightened pleading standards for civil rights cases and that, therefore, notice pleading rules apply to such actions." *Calvi v. Knox Cnty.*, 470 F.3d 422, 430 (1st Cir. 2006). "Thus, a plaintiff's complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66 (1st Cir. 2004)); *see also* Fed. R. Civ. P. 8(a). "The purpose of [this rule] is to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Phelps v. Loc. 0222,* No. 09-cv-11218-JLT, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotations and citations omitted)).

Applying this standard, Plaintiff clearly put the Defendants on notice of his theory that the City is liable for a violation of the MCRA under the doctrine of *respondeat superior*. As the City

acknowledges, paragraph 19 of Plaintiff's operative Amended Complaint specifically alleges:

> The City of Springfield, Massachusetts, is a municipality of the Commonwealth of Massachusetts, which oversees the Springfield Police Department. Each of the Springfield Defendants was either employed by the City of Springfield or was acting as an agent of the City of Springfield or the Springfield Police Department while conducting the investigation described in this Complaint. Defendant City of Springfield is therefore liable for <u>all torts</u> committed by the Defendants pursuant to the doctrine of *respondeat superior.*

Dkt. No. 126, ¶ 19 (emphasis added).

The City contends this pleading did not sufficiently put it on notice that Plaintiff had pled an MCRA claim against it because "*respondeat superior* was plead [sic] solely in connection to common law tort claims." Dkt. No. 402 at 3. The City offers no support for this unduly limited reading of the complaint. Paragraph 19 clearly informed the Defendants that Plaintiff sought to hold the City liable for "all torts" committed by the individual Defendants pursuant to the doctrine of respondeat superior.

Black's Law Dictionary defines "tort" as "[a] civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages." *See* Black's Law Dictionary (12th ed. 2024) (first definition).[1] Plaintiff's claim under the MCRA asserts a "civil wrong . . . for which a remedy may be obtained." *Id.* Massachusetts courts routinely refer to MCRA claims as "statutory torts." *Pettiford v. Branded Mgmt. Grp.*, 237 N.E.3d 1191, 1197-98 (Mass. App. Ct. 2024) (stating that the MCRA "establishes duties that private persons owe to others, as to which civil penalties may arise for their violation. *They are statutory torts*—or 'tort-like'—and an employer can be liable if its employee violates those statutes while acting within the scope of employment.") (emphasis

---

[1] Similarly, the term "quasi-tort" is defined as: "A wrong for which a nonperpetrator is held responsible; a tort for which one who did not directly commit it can nonetheless be found liable, as when an employer is held liable for a tort committed by an employee." *See* Black's Law Dictionary (12th ed. 2024).

added).

Given the common understanding within the Massachusetts legal community that a claim under the MCRA can be referred to as a "tort," the pleadings in paragraph 19 alongside the substantive MCRA pleadings in the complaint, put the City on notice that Plaintiff was pursuing a tort claim against it under the MCRA via the doctrine of *respondeat superior*. This is sufficient. The Amended Complaint may not be "a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, [Plaintiff] need not pin [each] claim for relief to a precise legal theory" in order to put the Defendants on notice in compliance with the strictures of the pleading rules. *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

Moreover, the Defendants' own briefing at the motion to dismiss and summary judgment stages shows that they understood that the MCRA claim had been brought against all the municipal defendants, including the City. At times, the Defendants separated out arguments for dismissal of claims that were only relevant to individual defendants or only relevant to the City, but otherwise the Defendants raised arguments for dismissal of claims as to all "municipal defendants." *See, e.g.,* Dkt. No. 37 (Memorandum in Support of Individual Municipal Defendants' Motion to Dismiss Based on Qualified Immunity); Dkt. No. 141 (Memorandum in Support of Motion to Dismiss by Defendant City of Springfield); Dkt. No. 340 at 8 (Joint Memorandum in Support of Summary Judgment) (collectively referring to individual municipal defendants and City as "municipal defendants").

Indeed, Defendants' Memorandum in Support of Summary Judgment urged the Court to grant summary judgment on all of Plaintiff's state law claims, including his MCRA claim, Dkt. No. 340 at 43, but then Defendants made certain specific arguments as to some state law claims that

were specifically pertinent to the claims against the individuals or the City, *see, e.g., id.* at 44-45 (arguing first that "the individually named defendants are each entitled to summary judgment for any claims sounding in negligence," and then that "Perrot's failure to comply with the compulsory notice requirements entitles Springfield to judgment in its favor for any negligence claims"). However, when the Defendants reached Plaintiff's MCRA claim, they first acknowledged that "Plaintiff claims <u>the defendants</u> violated his civil rights under the [MCRA]" and then argued that "summary judgment [must] enter <u>for the defendants</u> on any claim arising under such statute." *Id.* at 47-49 (emphasis added). This language is identical to the language Defendants used regarding intentional common law torts like malicious prosecution, which Defendants acknowledge were pled against the City under a *respondeat superior* theory. *See id.* at 46. The only fair inference is that the City understood it was facing a claim under the MCRA.[2]

In sum, Plaintiff adequately pled a MCRA claim alleging liability on the part of the City for the actions of its agents. In response, the City made a choice—strategic or otherwise—to defend against the claim on grounds that did not include an asserted immunity to *respondeat superior* liability under the MCRA. As further described below in Subsection C, it would be unfair and unjust to allow the City to belatedly raise such a defense on the eve of trial.

---

[2] Plaintiff understands the Court's order granting summary judgment on Plaintiff's "intentional tort" claims against the City not to encompass dismissal of his MCRA claim, which no Massachusetts court has concluded falls within the Massachusetts Tort Claims Act's (MTCA) immunity for municipalities against suit for employees' intentional torts. See Dkt. No. 401 at 54, (citing *Mercurio v. Town of Sherborn*, 287 F. Supp. 3d 109, 125 (D. Mass. 2017) ("[T]he Town is immune from suit under the MTCA for the intentional torts of its employees."); *Pheasant Ridge Assocs. Ltd. Partnership v. Town of Burlington*, 506 N.E.2d 1152, 1159 n.13 (Mass. 1987) (noting that there was no suggestion by the parties that the MTCA barred MCRA claims against a municipality); *cf. Perkins v. Com.*, 752 N.E.2d 761, 766 (Mass. App. Ct. 2001) ("Claims under the [MCRA] are not barred by the exclusivity provisions of the [Massachusetts state] workers' compensation act.").

B. **Nothing About Plaintiff's Responses To Defendants' Contention Interrogatories Changes The Result**

Defendants spend a substantial amount of time arguing that Plaintiff's responses to their contention interrogatories failed to reference liability under MCRA through *respondeat superior*. The argument is frivolous. The City's contention interrogatories did not address MCRA, or call for any information relating thereto. They were focused exclusively on Plaintiff's *Monell* claims.

To be clear, the contention interrogatories upon which the City relies do not mention *respondeat superior* liability or the MCRA at all, and it would be completely unreasonable to interpret them otherwise. Had the City asked Plaintiff to explain the *respondeat superior* theory alleged in the Complaint and quoted above, Plaintiff would have done so. The City did not make any such request, so there was nothing to which Plaintiff had to respond.[3]

C. **The City Forfeited Any Affirmative Defense By Failing To Timely Assert That The MCRA Does Not Support *Respondeat Superior* Liability Against Municipalities, And Should Not Now Be Allowed To Belatedly Assert This Defense On The Eve Of Trial**

The City, not the Plaintiff, is the party that forfeited its legal theories for failure to plead them. The City's answer asserted no fewer than 48 affirmative defenses. Dkt. No. 206 at 54-60. Despite the plain language of the Complaint invoking *respondeat superior* and stating a claim under the MCRA, municipal immunity from suit under the MCRA was not among them.

As the Defendants' own motion points out, failure to plead legal theories has consequences, which is equally true in the affirmative defense context. "Rule 8(c) is designed to provide plaintiffs

---

[3] Plaintiff did conduct discovery establishing that Defendants Jarvis and Kelly were acting within the scope of their employment when they engaged in misconduct during their investigation of Plaintiff starting in 1985. If the City attempts to dispute that as a factual matter at trial, Plaintiff will prove it.

with adequate notice of a defendant's intention to litigate an affirmative defense, thereby affording an opportunity to develop any evidence and offer responsive arguments relating to the defense." *Davignon v. Clemmey,* 322 F.3d 1, 15 (1st Cir. 2003) (citing *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.,* 15 F.3d 1222, 1226 (1st Cir. 1994)). Accordingly, where, as here, the Defendants fail to plead an affirmative defense, it is forfeited. *See Lawless v. Town of Freetown*, 63 F.4th 61, 65 (1st Cir. 2023) ("This Court has warned practitioners 'that affirmative defenses not included in an appropriate responsive pleading are waived,' and has reversed district courts for failing to observe this maxim." (quoting *Carrasquillo-Serrano v. Mun. of Canovanas*, 991 F.3d 32, 42–43 (1st Cir. 2021)); *Wolf v. Reliance Standard Life Ins. Co.*, 71 F.3d 444, 449 (1st Cir. 1995) ("Failure to plead an affirmative defense generally results in waiver of the defense and its exclusion from the case."); *Knapp Shoes*, 15 F.3d at 1225–26 (reversing district court for failing to enforce forfeiture of affirmative defense).[4]

There is yet another layer of forfeiture, namely, the failure by the Defendants to raise this defense during any earlier phase of this litigation. Even if this Court were willing to look past the City's failure to preserve the defense by pleading it in its Answer, it is far too late to assert it now, on the eve of trial, after summary judgment has been briefed and decided. If anything, what the City has styled a "motion *in limine*" to preclude Plaintiff from pursuing his MCRA claim under *respondeat superior* is effectively a motion to amend the Court's summary judgment decision to

---

[4] Nor can Defendants avail themselves of any of the exceptions to Rule 8(c)'s bar to raising an affirmative defense. *See Davignon v. Clemmey,* 322 F.3d at 15 (noting that "the exceptions to the Rule 8(c) bar [are]*, inter alia,* either where (i) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay; or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed") (internal citations omitted). Neither exception applies here, and Defendants do not contend otherwise.

raise an entirely new (and unpled) affirmative defense in the remaining weeks before trial.

The City makes no argument as to why it should be permitted to raise a new legal argument at this late stage of the case. In analogous contexts, district courts in this Circuit have denied such requests because "advancing new arguments . . . which were otherwise available when the original summary judgment motion was briefed is . . . inappropriate." *Coffin v. Bowater Inc.,* No. 03-cv-227-B-C, 2005 WL 3021979, at *1 (D. Me. Nov. 10, 2005), aff'd, 501 F.3d 80 (1st Cir. 2007) (quotation omitted).

Nor does the City even attempt to explain why allowing it to assert a brand new argument at this stage would be in the "interests of justice" as required to prevail on an interlocutory motion for reconsideration. The relevant factors to consider are: "(1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying the tardiness, (4) the character of the omission, (5) the existence *vel non* of cognizable prejudice to the nonmovant in consequence of the omission, (6) the effect of granting (or denying) the motion on the administration of justice, and (7) whether the belated filing would, in any event, be more than an empty exercise." *See United States v. Roberts,* 978 F.2d 17, 21-22 (1st Cir. 1992). None of those factors favors the City here. Other than trying to pretend that Plaintiff did not plead what he plainly pled, the City offers no reason, much less a persuasive reason, for its not having raised this defense sooner. *See Nansamba v. N. Shore Med. Ctr.,* 727 F.3d 33, 39 (1st Cir. 2013) ("[U]nilateral assumptions about the meaning of correspondence, without more, are insufficient to excuse neglect.").

"A motion for reconsideration does 'not provide a vehicle for a party to undo its own procedural failures [or] allow a party [to] advance arguments that could and should have been presented to the district court prior to judgment.'" *In re Salicrup,* No. 22-cv-02714-ESL, 2024 WL

8

4002548, at *5 (Bankr. D.P.R. Aug. 29, 2024), (quoting *Iverson v. City of Bos.,* 452 F.3d 94, 104 (1st Cir. 2006)) (alterations in original). Here, Plaintiff stands to be significantly prejudiced if he secures a verdict against the individual defendants in the upcoming bifurcated trial that the City then refuses to indemnify (as the City has indicated it may). To address that possibility, Plaintiff has consistently sought to hold the City directly liable for the torts its officers committed against him to the fullest extent allowed by the law. The City should not, at this late hour, be allowed to undermine the Plaintiff's efforts secure meaningful compensation. Finally, as discussed in more detail below, the City's argument regarding the absence of municipal liability under the MCRA has never been endorsed by the SJC, the only court whose opinion on the issue is dispositive.

Were this Court to hold the City to its forfeiture of an argument for immunity from suit under the MCRA, the Court would be doing exactly what the SJC has done in this circumstance. *See Pheasant Ridge Assocs.*, 506 N.E.2d at 1159 (allowing MCRA claim to proceed past summary judgment against a municipality and noting that "[t]he town does not argue that it is entitled to the same immunity as to acts of its agents, and it may well be right in not making that claim"); *see also Swanset Dev. Corp. v. City of Taunton*, 668 N.E.2d 333, 337 (Mass. 1996) (assuming that municipalities may be held liable under the MCRA).

For the reasons stated, the Court should deny Defendants' motion on the basis of forfeiture. However, should the Court decide to excuse Defendants' forfeiture, it should nonetheless deny Defendants' motion *in limine* on the merits.

## II. The MCRA, Properly Interpreted, Provides For *Respondeat Superior* Liability Against Municipalities

As the City properly acknowledges, *see* Dkt. No. 402 at 4-5, unlike under § 1983, there is

9

*respondeat superior* liability under the MCRA. *Sarvis v. Boston Safe Deposit and Trust Co.*, 711 N.E.2d 911, 919-21 (Mass. App. Ct. 1999) (rejecting the First Circuit's prediction in *Lyons v. National Car Rental Sys., Inc.*, 30 F.3d 240 (1st Cir. 1994) and holding that "a plaintiff may state a cause of action under the MCRA against a private employer based on *respondeat superior*"). The only question is whether municipalities are liable under the MCRA, a question the SJC has never definitively decided. *See Swanset Dev. Corp.,* 668 N.E.2d at 335, 337-38 (assuming the answer is "yes" despite having taken the case "principally to consider" that question); *Pheasant Ridge Assocs.*, 506 N.E.2d at 1159 & 1159 n.13 (allowing MCRA claim against municipality to proceed past summary judgment); *Rodriques v. Furtado*, 575 N.E.2d 1124, 1131 (Mass. 1991) (not suggesting that a city is not suable under the MCRA while affirming, on the merits, a grant of summary judgment on an MCRA claim against a municipality); *see also Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 272-73 (D. Mass. 2018) ("The SJC has not yet decided whether municipalities may be liable under the MCRA."). To the extent the SJC has been confronted with this question, it has repeatedly avoided endorsing the argument the City is belatedly making.

The City points out that the Massachusetts Appeals Court has held that the MCRA's use of the word "person," G.L. c. 12, § 11H, precludes direct suits against municipalities under the Act. *Howcroft v. City of Peabody*, 747 N.E.2d 729, 744-45 (Mass. App. Ct. 2001). Defendants also filed a Supplemental Motion, relying on *Kelley v. LaForce*, 288 F.3d 1, 11 n.9 (1st Cir. 2002), where the First Circuit noted in a single unreasoned footnote that its affirmance of a grant of summary judgment on a *Monell*-type claim against a municipality under the MCRA was supported by *Howcroft*. *See Kelley*, 288 F.3d at 11 n.9 (citing *Howcroft,* 747 N.E.2d at 744). The appellate briefs in *Kelley* (available on Westlaw) show that this point of law was not discussed by either side. The

10

defendants there did not even cite *Howcroft*, and instead argued for affirmance on the basis of the plaintiff's failure to show the *Monell* standard had been met. This *Monell*–based argument was the primary basis for the court's decision in *Kelley* to dismiss the federal and state *Monell*–type claims against the town. *See id.* at 9-11. The offhand *dictum* from *Kelley* thus does settle the issue in federal court.

It is also true that federal courts in this District, including in *Chaabouni v. City of Boston*, have concluded that municipalities may not be sued under the MCRA based on a theory of *respondeat superior.* 133 F. Supp.2d 93, 100-103 (2001). However, insofar as *Chaabouni* and decisions following it have relied on the Massachusetts legislature's intent in passing the MCRA to incorporate the holdings of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), that reasoning is inconsistent with the holding of *Howcroft* that, contrary to the primary holding of *Monell,* "person" does not include municipalities. *See Chaabouni*, 133 F.Supp.2d at 103 (so reasoning); *compare Howcroft*, 747 N.E.2d at 744-45 (rejecting applicability of *Monell* to interpretation of "person" under MCRA) *with Monell,* 436 U.S. at 690 (holding that "municipalities and other local government units [are] included among those persons to whom § 1983 applies").

More to the point, the text, structure, and existing application of the MCRA all undermine the conclusion that "persons" under the MCRA does not include municipalities. The SJC has repeatedly emphasized that there are two touchstones for interpretation of the MCRA. The first is that, in enacting the MCRA, "[t]he Legislature is presumed to have been aware of the use and meaning of . . . term[s] in" § 1983 and to have intended those terms to be "coextensive" with those in the federal statute. *Batchelder v. Allied Stores Corp.*, 473 N.E.2d 1128, 1130 (1985). For example in *Duarte v. Healy*, the SJC noted that "[b]y the time the Legislature enacted the [MCRA in 1979]

11

the Supreme Court already had interpreted § 1983 to provide qualified immunity for discretionary functions." 537 N.E.2d 1230, 1232 (Mass. 1989). Thus, citing *Wood v. Strickland*, 420 U.S. 308 (1975), a Supreme Court qualified immunity case from 1975, the SJC "presume[d] that the Legislature was aware of this case law when it chose to pattern the Massachusetts Civil Rights Act after § 1983." *Duarte*, 537 N.E.2d at 1232. There is no reason to think that the legislature intended to incorporate the holding of *Wood* from 1975 into the MCRA, but not the statutory holding of *Monell,* a highly publicized case from 1978, the year immediately preceding the MCRA's enactment.

The second touchstone for interpreting the MCRA is that "it, like other civil rights statutes, is remedial. As such, it is entitled to liberal construction of its terms." *Batchelder*, 473 N.E.2d at 1130-31. "The rule for the construction of remedial statutes [like MCRA] is that cases within the reason, though not within the letter, of a statute shall be embraced by its provisions." *Id.* The legislature's remedial purpose in enacting the MCRA was summarized by Attorney General Francis X. Bellotti, the Act's principal champion, as "provid[ing] needed access to the courts and effective remedies in matters involving deprivation of constitutional and statutory rights by persons acting under color of state law or otherwise." *See* Margaret R. Solis, Municipal Law-How Broad a Remedy? Municipal Liability and the Massachusetts Civil Rights Act, 29 W.N.E.L. Rev. 841, 864-65 (2007) (quoting Letter from Francis X. Bellotti, Att'y Gen. of the Commonwealth of Mass., to Sen. Alan D. Sisitsky & Rep. Michael Flaherty, Joint Comm. on the Judiciary (Mar. 7, 1979) (on file at the Massachusetts Archives in the Governor's File for 1979 Mass. Acts 915)). This purpose of providing for deterrence and liability on all those who violate constitutional rights is manifest in the ultimate statutory language that the Legislature approved, which encompasses "any person or

persons, whether or not acting under color of law." G.L. c. 12. § 11H. The legislature's intent in providing this remedy "compels the conclusion that [the Legislature] did intend municipalities and other local government units to be included among those persons to whom [the MCRA] applies." *Monell,* 436 U.S. at 690 (reaching this conclusion as to Congress' intent in enacting § 1983).

The SJC has also shown a willingness to depart from the presumption against interpreting general terms in a statute to apply to municipalities and other organs of government (the presumption upon which the holding of *Howcroft* rests) where a "statute read as a whole manifests an intention to include municipalities within . . . its nonpenal provisions." *Att'y Gen. v. City of Woburn*, 79 N.E.2d 187, 189 (Mass. 1948) (observing that, as is the case regarding the MCRA, "towns are quite as capable of causing the mischief which the statute is designed to prevent as are private persons and corporations" and that the "attainment" of the legislature's purpose to protect public health "would hardly be possible if cities and towns were free to discharge sewage and other objectionable matter into the river."). This sort of intention is manifested in the text and history of the MCRA, and therefore non-binding decisions not giving it effect should be discounted.

### III. Alternatively, The Court Should Certify The Question Of Municipal Liability For MCRA Claims, And / Or Bifurcate Resolution Of This Issue

If this Court does decide to excuse Defendants' forfeiture and reach the merits, to the extent the Court views this as an important and unresolved question of Massachusetts law that would be dispositive of Plaintiff's MCRA claim against the City, it can and should certify the question to the SJC. *See* SJC Rule 1:03. The SJC has never addressed it, and as for those lower Massachusetts courts and federal courts that have, none have squarely addressed any of the arguments raised above. Federal courts can certify questions to the SJC in cases where there is no controlling precedent and where the questions may be determinative of the pending cause of action." *Perez v.*

*Greater New Bedford Vocational Tech. Sch. Dist.*, 988 F. Supp. 2d 105, 110 (D. Mass. 2013). Here, Clarity from the SJC would greatly assist the inquiry. *Stormo v. State Nat'l Ins. Co.*, 116 F.4th 39, 59 (1st Cir. 2024) (Barron, C.J., concurring in part) ("Here, however, we have come to a fork in the road, and the plaintiff is merely asking us to choose one as–yet untrod state-law path over another. Thus, rather than make that choice unaided, I think it sensible to do what any prudent trekker would: ask for directions from an unusually reliable guide, especially when that guide's own map suggests reasons to be wary of opting for the road less traveled.").

Alternatively, given that the Court has already decided to bifurcate the *Monell* claim against the City, it might make the most sense to do the same for the MCRA claims too. That way, all claims against the City of Springfield can be addressed, if necessary, at the conclusion of the trial against the individual Defendants.

WHEREFORE, Plaintiff requests the Court deny Defendants' motions regarding *respondeat superior* liability under the MCRA.

RESPECTFULLY SUBMITTED,

**GEORGE PERROT**

BY:  /s/ Isaac Green
     *One of Plaintiff's Attorneys*

     Debra Loevy, BBO No. 569212
     Mark Loevy-Reyes, BBO No. 707974
     Loevy & Loevy
     398 Columbus Avenue, #294
     Boston, MA 02116
     P: (312) 243-5900
     F: (312) 243-5902

     Jon Loevy*
     Steven Art*
     Gayle Horn*

14

>Gianna Gizzi*
>Isaac Green*
>Loevy & Loevy
>311 N. Aberdeen St., 3rd Floor
>Chicago, IL 60607
>P: (312) 243-5900
>F: (312) 243-5902
>green@loevy.com
>*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Isaac Green, an attorney, hereby certify that on October 22, 2024, I filed the foregoing response using the Court's CM/ECF system, which effected service on all counsel of record.

>/s/ Isaac Green
>*One of Plaintiff's Attorneys*